UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PRISCILLA CHAVOUS,

                              Plaintiff,

v.                                                          5:25-cv-0935 (AMN/TWD)

HOUSING VISIONS UNLIMITED, INC.,

                              Defendant.

_____

APPEARANCES:

PRISCILLA CHAVOUS
Plaintiff, *pro se*
139 Maple Ter.
Syracuse, NY 13210

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

**I.      INTRODUCTION**

        Priscilla Chavous ("Plaintiff") commenced this action *pro se* on July 16, 2025, by the filing of a complaint against Housing Visions Unlimited, Inc. ("Defendant").  Dkt. No. 1.  In lieu of paying this Court's filing fee, she submitted an application for leave to proceed *in forma pauperis* ("IFP").  Dkt. No. 2.  Plaintiff then filed an amended complaint on October 2, 2025, which is currently before the Court for initial review.  Dkt. No. 7; *see also* Dkt. No. 6.

**II.     IFP APPLICATION**

        Upon review, Plaintiff's IFP application demonstrates economic need.  Dkt. No. 2.  Therefore, she is granted permission to proceed IFP.  Plaintiff is advised, however, that she will be required to pay fees she may incur in this action, including copying and/or witness fees.

## III.    STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.  *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible."); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, the Court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense

and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189

F.R.D. 54, 55 (N.D.N.Y. 1999) (citations omitted).

This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550

U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the

court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)

(citations omitted). However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*.

## IV.    BACKGROUND [1]

This is the second action Plaintiff has filed against Defendant in this Court. *See Chavous*

*v. Housing Visions Unlimited Inc. et al.*, No. 5:22-cv-00811 (AMN/TWD) ("*Chavous I*"). On

August 1, 2022, Plaintiff filed the complaint in *Chavous I*, alleging violations of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., that stemmed from the following

conduct: "failure to make alterations to accommodate disability," "retaliation," and "other acts"

including that "Housing Visions and its staff harass and intimidate. They want the apartment to

---

[1] Citations to Plaintiff's submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

get more rent.  They are trying to evict me from the apartment.  They do not identify themselves." *Chavous I*, Dkt. No. 1 at 4.  Plaintiff stated her disability was glaucoma and cancer.  *Id*. at 2.

Plaintiff further alleged that in December of 2009, she "moved from (SHA) Syracuse Housing Authority" into "Housing Visions . . . because they were offering incentives for rent to own."  *Id*. at 5.  Specifically, "[t]he offer was if you pay rent consecutively for 10 years you will be able to own your 1st home with the security deposit interest as a down payment and Housing Vision will help with the process."  *Id*.  Plaintiff also claimed that "they don't make repairs" and there was "mold in the ceiling."  *Id*. at 4-5.

By Report-Recommendation filed October 17, 2022, the undersigned reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B), and recommended that Plaintiff's complaint be dismissed for failure to state a claim, with leave to amend.  *Chavous I*, Dkt. No. 3.  On February 6, 2023, the Hon. Anne M. Nardacci, U.S. District Court Judge, adopted the Report-Recommendation in its entirety and dismissed Plaintiff's complaint without prejudice and with leave to amend.  *Chavous I*, Dkt. No. 5.

On February 23, 2023, Plaintiff timely filed an amended complaint, also pursuant to the ADA, which was referred to the undersigned for initial review.  *Chavous I*, Dkt. No. 6.  Upon review, the undersigned noted the factual allegations asserted against the defendants were substantially the same as those in the original complaint.  Dkt. No. 7 at 4.  To that end, Plaintiff identified her disability as glaucoma and cancer and again complained of the following conduct: "failure to make alterations to accommodate disability," "retaliation," and "other acts" of harassment, intimidation, and "created hostile environment."  *Id*.  Plaintiff alleged the defendants offered Plaintiff a "UCC binding" rent to own contract for the property, and they "were suppose

to help with the process." *Id*. at 5-6.  Plaintiff again claimed the defendants were creating a "hostile environment" so Plaintiff "would voluntarily leave" and they could "get more rent for the house." *Id*. at 8.  Plaintiff requested a permanent injunction and damages.  *Id*. at 9.

By Report-Recommendation filed March 28, 2023, the undersigned recommended dismissal of the amended complaint for failure to state a claim and for lack of subject matter jurisdiction, without leave to amend. *Chavous I*, Dkt. No. 7.  Specifically, the undesigned found Plaintiff had not plausibly alleged a claim under the ADA and Plaintiff had not alleged any other basis for the Court's jurisdiction nor was original jurisdiction otherwise apparent. *Id.* at 4.  On June 23, 2023, District Judge Nardacci adopted the second Report-Recommendation in its entirety and dismissed Plaintiff's amended complaint without leave to amend. *Chavous I*, Dkt. No. 8 at 3-4.  Judgement was entered and the case was closed. *Chavous I*, Dkt. No. 9.

More than two years later, Plaintiff commenced the instant action, No. 5:25-cv-0935 (AMN/TWD) against Defendant.  Dkt No. 1.  The following facts are set forth as alleged by Plaintiff in her amended complaint.  Dkt. No. 7.

"On or about March 30, 2009, Plaintiff entered into a rent-to-own agreement with Defendant regarding the Property." *Id*. at 1. "Under HUD-sponsored program guidelines, the agreement provided that after 15 years of consistent tenancy and timely rent payments, Plaintiff would have the opportunity to purchase the Property." *Id*.  "Plaintiff continuously resided at the Property, paid rent, and complied with all tenancy obligations for more than 15 years." *Id*. Despite Plaintiff's full compliance, Defendant refused to honor the purchase option and denied Plaintiff the opportunity to buy the Property." *Id.*

Plaintiff also alleges "Defendant failed to maintain the Property in a habitable condition in violation of New York Real Property Law § 235-b, disregarded numerous requests for repairs,

and exposed Plaintiff to unsafe conditions." *Id*. at 1-2.  As such, "Plaintiff, who is disabled,

lawfully withheld rent for a limited time due to habitability issues, as permitted under New York

law." *Id*.  "Plaintiff reported Defendant's breach of contract to the New York Attorney General,

who issued a confirmation letter and number, corroborating Plaintiff's good-faith efforts to

resolve the matter." *Id*. at 2.  According to Plaintiff, "Defendant's misrepresentations about the

rent-to-own program, including promises of ownership after 15 years, induced Plaintiff to remain

in the Property and forego other housing opportunities." *Id*.

Plaintiff alleges that "Defendant's actions not only breached the contract but also

undermined federal policies designed to protect tenants in HUD-subsidized housing." *Id*.

Moreover, "Defendant knowingly or recklessly used and maintained building materials and

piping that contain carcinogenic or otherwise hazardous substances, creating unsafe and

dangerous living conditions.  These conditions posed serious health risks to Plaintiff and her

household, further evidencing Defendant's disregard of its legal duties under state law and

federal housing regulations." *Id*.

The amended complaint lists the following causes of action: (1) "Breach of Contract"; (2)

"Promissory Estoppel"; (3) "Breach of Implied Warranty of Habitability (N.Y. RPL § 235-b)";

(4) "Retaliatory Eviction (N.Y. RPL § 223-b)"; (5) "Fraud and Misrepresentation"; (6)

"Deceptive Acts and False Advertising (GBL §§ 349-350)"; (7) "Truth in Lending Act (TILA),

15 U.S.C. § 1601 et seq."; (8) "Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §

2601 et seq."; (9) "Fair Housing Act (FHA), 42 U.S.C. § 3604)"; (10) "Violation of Federal

Housing Regulations (42 U.S.C. § 1437 et seq.)"; and (11) "Unjust Enrichment".  *Id*. at 2-3.

Plaintiff seeks damages and other relief.  *Id*. at 3.

V.     **ANALYSIS**

A.     **Res Judicata**

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). The doctrine precludes a party from asserting a claim in subsequent litigation where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id*. at 285. "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002); *see also Magi XXI, Inc. v. Stato Della Cita Del Vaticano*, 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014) ("Res judicata acts as a bar 'not only as to what was pleaded, but also as to what could have been pleaded.'") (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985)).

"A district court may dismiss an action *sua sponte* on res judicata grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed." *Vance v. ACCO Brands, Corp.*, No. 6:17-CV-0957 (GTS/TWD), 2017 WL 8751936, at *5 (N.D.N.Y. Nov. 1, 2017) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)) (additional citations omitted), *report and recommendation adopted*, 2018 WL 1631312 (N.D.N.Y. Apr. 2, 2018), *aff'd*, No. 18-1258, 2018 WL 5603578 (2d Cir. Oct. 3, 2018).

The instant action satisfies the three elements of res judicata. First, *Chavous I* was adjudicated on the merits because "a dismissal for failure to state a claim operates as a final

judgment on the merits . . . ."  *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841

F.3d 581, 583 (2d Cir. 2016) (internal quotations and citation omitted); *see also Cieszkowska*,

295 F.3d at 205-06 (holding dismissal under 28 U.S.C. § 1915(e) has preclusive effect on

subsequent litigations); *see, e.g.*, *DeFreitas v. Toulon*, No. 2:23-CV-5933, 2024 WL 3392859, at

*13 (E.D.N.Y. June 7, 2024) ("A *sua sponte* dismissal of an IFP complaint is a 'final judgment

on the merits' for the purposes of res judicata.") (citation omitted).  Furthermore, Plaintiff's prior

action, *Chavous I*, also was brought against Defendant thus satisfying the second element.

Finally, Plaintiff's alleged federal claims in this action could have been raised in *Chavous

I*.  *See Horti Americas, LLC v. Jacob's Vill. Farm Corp.*, No. 21-00915-CV, 2022 WL 38719, at

*2 (2d Cir. Jan. 5, 2022) (courts "look to whether both lawsuits 'arise from the same transaction,

or involve a common nucleus of operative facts.'"); *Williams v. Perry*, 229 F.3d 1136 (2d Cir.

2000) (explaining the plaintiff's "current . . . claim could have been raised in [the prior action] if

it is part of the same 'nucleus of operative fact' or involves the same factual predicate as the

claims raised in" the prior action) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108

(2d Cir. 2000)).  The facts "essential to the barred second suit" do not have to be identical to the

earlier action, but instead, must only have been "present" in the first suit.  *Id*. (internal quotation

marks omitted); *see also Lee v. Delta Air Lines, Inc.*, No. 22-CV-08618, 2023 WL 3592153, at

*7 (S.D.N.Y. Apr. 26, 2023) ("Claims need not be identical to be duplicative for res judicata

purposes.").

Here, liberally construed, Plaintiff's alleged federal claims arise from the same events

that were at issue in her prior litigation, namely Defendant's alleged discrimination based on

Plaintiff's disability, Defendant's failure to honor the rent-to-own contract, Defendant's attempts

to evict Plaintiff from the property, and Defendant's failure to maintain the property among other things. *Compare* Dkt. No. 7 *with Chavous I*, Dkt. Nos. 1, 6.

Because Plaintiff's claims in both actions are derived from the same facts, even those claims which were not raised in *Chavous I could have been*, therefore, the claims are barred here. *L-Tec Electronics Corp. v. Cougar Electronic Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (holding the plaintiff's claims in a second action were "plainly barred by res judicata" explaining, plaintiff's "new claims are *based on different legal theories rather than different facts* and, accordingly, could have been raised in the original complaint") (emphasis added); *see also Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009) (affirming the "dismissal of an *in forma pauperis* complaint on the ground of res judicata where the plaintiff's prior complaint arising out of the same events, albeit raising a different legal theory, had been dismissed pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim"); *see, e.g.*, *Guess v. Jahromi*, No. 6:17-CV-06121, 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017) ("To the extent that plaintiff attempts to frame her former ADA claim now as a Title VII claim, such a claim cannot go forward because principles of res judicata, or claim preclusion, bar such a claim.").

In sum, res judicata bars this action. "When an *in forma pauperis* action is *res judicata*, it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Orr v. U.S. Air Force*, No. 6:15-CV-1132 (GTS/TWD), 2015 WL 6671559, at *5 (N.D.N.Y. Oct. 30, 2015) (internal quotations and citation omitted) (dismissing plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that his claim was barred under the doctrine of res judicata).

Accordingly, the Court recommends that Plaintiff's amended complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.        Failure to State a Claim

Even assuming the doctrine of res judicata does not bar this action, Plaintiff's amended complaint is nonetheless subject to dismissal because Plaintiff fails to state a claim under the federal statutes she invokes.  *See generally* Dkt. No. 7.  As set forth in *Iqbal*:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks, and alteration omitted).

Here, Plaintiff alleges violations of the various statutes in a wholly conclusory fashion and thus her amended complaint is subject to dismissal under Rule 8 of the Federal Rules of Civil Procedure.

To that end, Plaintiff alleges "Defendant failed to provide required disclosures regarding financing and ownership terms, depriving Plaintiff of informed consent, in violation of TILA." Dkt. No. 7 at 3.  She claims, "Defendant failed to provide proper disclosures and engaged in deceptive practices in connection with the rent-to-own arrangement, violating RESPA."  *Id*. Plaintiff claims that "Defendant discriminated against Plaintiff, a disabled tenant, by denying her the promised ownership, maintaining unsafe conditions, and retaliating against her, violating the FHA."  *Id*.  Lastly, Plaintiff alleges a violation of the Federal Housing Regulations.  *Id*.  She claims, "Defendant's refusal to honor rent-to-own obligations and failure to provide safe housing violated HUD program requirements and undermined federal housing policy.  Defendant's maintenance of carcinogenic piping and unsafe building material violates HUD's mandate that

federally assisted housing be 'safe, decent, and sanitary,' further undermines federal housing policy." *Id*.

  **1.**  **TILA**

  Congress enacted the TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." 15 U.S.C. § 1601(a). For example, TILA requires "lenders to disclose to consumers certain material terms clearly and conspicuously in writing, in a form that consumers may examine and retain for reference." *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332, 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001), *aff'd*, 29 F. App'x 780 (2d Cir. Mar. 15, 2002).

  Actions for damages under the TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). For actions under Sections 1639, 1639b, and 1639c, the period is three years. *Id*. For closed-ended transactions like mortgages, the "date of the occurrence of the violation" is the date that the plaintiff enters into the loan agreement. *See Ledgerwood v. Ocwen Servicing LLC*, No. 15-CV-1944, 2015 WL 7455505, at *2 (E.D.N.Y. Nov. 21, 2015).

  Here, Plaintiff fails to plausibly allege Defendant qualifies as a "lender" for purposes of TILA. Plaintiff also fails to identify any deficiencies in the disclosure of loan terms that violated the TILA. Plaintiff's amended complaint offers a legal conclusion that Defendant violated the TILA, without providing any factual support or detail about what occurred and how this violated the TILA. Plaintiff's allegations thus fail to state a claim under the TILA. 28 U.S.C. § 1915(e)(2)(B)(ii). Additionally, any claim under TILA appears to be time-barred.

### 2.      RESPA

RESPA is a consumer protection statute that regulates the real estate settlement process and "provides a framework for borrowers to remedy errors relating to the servicing of their mortgage loans." *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 379 (2d Cir. 2022). RESPA imposes duties upon a loan servicer who receives a Qualified Written Request ("QWR") from a mortgagee. *See Roth v. CitiMortgage, Inc.*, 756 F. 3d 178, 181 (2d Cir. 2014).  A QWR is defined as correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* (citing 12 U.S.C. § 2605(e)(1)(B)(ii)).  A QWR must be sent to an address designated by the loan servicer for the receipt of QWRs to be considered effective.  *See Mack v. ResCorp. Borrower Claims Trust*, 678 F. App'x 10, 14-15 (2d Cir. 2017); *Roth*, 756 F.3d at 181 ("[I]f a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'").

Here, the amended complaint is void of any suggestion that Defendant is a "loan servicer" within the meaning of RESPA, nor is there any indication Plaintiff notified Defendant of any alleged error by sending a QWR to the proper address.  Thus, Plaintiff's amended complaint offers a legal conclusion that Defendant violated RESPA, without providing any factual support or detail about what occurred and how this violated RESPA.  Thus, Plaintiff's allegations fail to state a claim under RESPA.  28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.      FHA

The FHA "broadly prohibits discrimination in housing."  *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979).  Specifically, it prohibits discrimination "against any person

in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status . . . national origin," or disability.  42 U.S.C.§ 3604(b), (f).

Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that she is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [she must sustain] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'"  *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original, footnote omitted)).  "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage."  *Id*. at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).  Thus, "a plaintiff may not need to prove that [her] protected status was a but-for cause of the adverse action [she] suffered, but only a motivating factor."  *Id*. at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g.*, *Sykes v. NYC Hous. Auth.*, No. 1:22-CV-2127, 2022 WL 875902, at *2 (S.D.N.Y. Mar. 24, 2022).  A civil action under the FHA must be brought no "later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a).

Here, Plaintiff alleges no facts showing that her "disability" was at least a motivating factor with regard to her allegations of discrimination by Defendant.  Thus, Plaintiff has failed to state a claim of discrimination under the FHA.  28 U.S.C. § 1915(e)(2)(B)(ii).  Additionally, any claim under the FHA appears to be time-barred.

## C.    State Law Claims

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Having recommended dismissal of the claims over which the Court has original jurisdiction, the undersigned also recommends that the District Court decline to exercise supplemental jurisdiction over any state law claims Plaintiff may be asserting.

**D.    Leave to Amend**

Based on the foregoing, the Court recommends dismissal of the amended complaint in its entirety.  Generally, "the court should not dismiss a *pro se* [complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation and citation omitted).  However, denial of leave to amend is appropriate where "amendment would be futile."  *Jackson v. Wells Fargo Home Mortg.*, 811 F. App'x 27, 30 (2d Cir. 2020) (summary order) (quotation omitted).

Such is the case here.  Plaintiff's amended complaint, which was filed as a matter of right in the case at bar, represents Plaintiff's fourth unsuccessful attempt to articulate legally cognizable federal claims against Defendant.  As set forth above, Plaintiff was afforded a fair and reasonable opportunity to amend her complaint in *Chavous I* to set forth cognizable claims against Defendant and failed to do so.

Because Plaintiff's federal claims are barred by res judicata, to permit Plaintiff leave to amend would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile."); *see, e.g.*, *Marcelin v. Cortes-Vazquez*, No. 09 Civ. 4303, 2011 WL

14

346682, at *2 (E.D.N.Y. Jan. 28, 2011) (denying *pro se* plaintiff leave to amend where claims were barred by res judicata); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 519 (S.D.N.Y. 2018) (denying leave to re-plead where claims were barred by res judicata); *Baptiste v. Doe*, 680 F. Supp. 3d 186, 193 (N.D.N.Y. 2023) (*sua sponte* dismissing the *pro se* plaintiff's complaint without leave to amend as barred by res judicata and failure to state a claim); *see also Herschaft v. New York City Campaign Fin. Bd.*, No. 22-CV-2025, 2022 WL 19367051, at *4 (E.D.N.Y. Sept. 28, 2022) ("Because Plaintiff's claims are barred by res judicata, 'the problem with his complaint is substantive; better pleading will not cure it.'") (quoting, *inter alia*, *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014)), *aff'd*, No. 22-2822-CV, 2023 WL 2770146 (2d Cir. Apr. 4, 2023).

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 7) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[2]  Such objections shall be filed with the Clerk of the Court.

---

[2] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

       **IT IS SO ORDERED.**

Dated: October 14, 2025
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 17 of 93

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

2017 WL 8751936
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert M. VANCE, Plaintiff,

v.

ACCO BRANDS, CORPORATION, Defendants.

6:17-CV-00957 (GTS/TWD)

|

Signed 11/01/2017

**Attorneys and Law Firms**

ROBERT M. VANCE, pro se, 3 West Street, Apt. 1, Oneonta,
New York 13820.

**ORDER AND REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for review under
28 U.S.C. § 1915(e)(2)(B)(i)-(iii) the *pro se* complaint and
amended complaint in this action in which Plaintiff Robert
M. Vance has sued Defendant ACCO Brands, Corporation
("ACCO") for employment discrimination in violation of
the Americans with Disabilities Act of 1990, as amended
("ADA"), 42 U.S.C. § 12111, *et seq.*, based upon a hearing
impairment; breach of a collective bargaining agreement;
violation of discharge and attendance guideline agreements;
wrongful termination; defamation; and harassment. [1] (Dkt.
Nos. 1, 17.) Also before the Court is Plaintiff's application for
leave to proceed *in forma pauperis* ("IFP application"). (Dkt.
No. 2.)

[1]     Plaintiff's amended complaint is not so much a
       pleading as a list of the exhibits attached to it. (Dkt.
       No. 17.) Therefore, rather than treat the amended
       complaint as a superseding pleading, the Court
       will consider Plaintiff's amended complaint as a
       supplement to his original complaint and consider
       them as a single pleading for purposes of initial
       review.

For reasons explained below, the Court finds that the
claims alleged by Plaintiff in his complaint, as supplemented
by his amended complaint, are barred under the doctrine
of *res judicata*, and recommends that the complaint as

supplemented be *sua sponte* dismissed with prejudice on
initial review for failure to state a claim. (Dkt. Nos. 1, 17.)

**I. IFP APPLICATION**

A court may grant *in forma pauperis* status if a party
"is unable to pay" the standard fee for commencing an
action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's
IP application, the Court finds that he meets this standard.
Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted.

**II. LEGAL STANDARDS FOR INITIAL REVIEW**

Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims
are the product of delusion or fantasy; or (2) the claim is
based on an indisputably meritless legal theory." *Livingston
v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a
complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 18 of 93

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. RELEVANT BACKGROUND

#### A. Plaintiff's First ADA Lawsuit Against ACCO

On December 9, 2011, Plaintiff, represented by counsel, commenced an employment action alleging violation of the ADA entitled *Vance v. ACCO Brands USA, LLC*, No. 3:11-CV-1443 (NAM/DEP) in the Northern District of New York. ("*Vance I*"). [2] In his second amended complaint in that action, Plaintiff, who was born with a high degree of neural hearing loss and a corresponding speech impediment, alleged he began working at ACCO's Sydney, New York facility in July 2004 as a third shift picker/packer in the shipping department. (*Vance I*, Dkt. No. 47 at ¶¶ 5, 12, 16. [3] ) Plaintiff alleged that ACCO subjected him to disparate treatment and a hostile work environment because of his hearing impairment, retaliated against for complaining about such conduct, and ultimately terminated his employment in or about December 2011 in retaliation for his complaints. *Id.* at ¶¶ 3, 60-61.

[2]    Plaintiff originally named Meadwestvaco Corporation as Defendant in the action. (*See Vance I*, Dkt. No. 1.) However, according to the District

Court, Meadwestvaco Corporation was acquired by ACCO, during Plaintiff's employment. *Id.*, Dkt. No. 83 at 2 n.3.

[3]    Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

According to Plaintiff, while other ACCO employees were being rotated through various tasks at the facility, he worked at the packing station, reach picking, and palletizing in the shipping department from 2004 through 2006. (*Vance I*, Dkt. No. 47 at ¶¶ 16-17.) Plaintiff claimed it was unusual for workers to do the same task for an extended period as he did. *Id.* In 2007, Plaintiff was, at his request, given the opportunity to work as a case thrower but was returned to his original task after one day allegedly because of hearing issues. *Id.* at ¶¶ 18-19. Plaintiff was thereafter trained on materials handling equipment, passed the tests for materials handling, and ultimately was given a materials handler license. *Id.* at ¶¶ 20-29. However, he was still not given the opportunity to perform different tasks or rotated into other departments. *Id.* at ¶ 31.

**\*3** Plaintiff filed his first ADA discrimination complaint against ACCO with the Equal Opportunity Employment Opportunity Commission ("EEOC") on March 10, 2008, and a settlement agreement was reached in a mediation and signed on July 7, 2008. *Id.* at ¶¶ 40-44. Plaintiff alleged in his second amended complaint in *Vance I* that Defendant maintained the exact same course of action continuing to discriminate against him by failing to rotate him to different positions, failing to offer adequate training, and failing to comply with the terms of the mediation agreement. *Id.* at ¶¶ 50-51. In addition, Plaintiff claimed he was the victim of harassment and an escalating course of retaliation because he had filed the discrimination complaint with the EEOC, creating a hostile work environment. *Id.* at ¶¶ 50, 53. The retaliation included continuous "write-ups" for bogus alleged disciplinary violations. *Id.* at ¶ 52.

Plaintiff filed a second EEOC complaint on February 13, 2009, because Defendant had ignored the terms of the mediation agreement and the discrimination against him had intensified. *Id.* at ¶ 54. The EEOC issued a right to sue letter on September 13, 2011. *Id.* at ¶ 58. Plaintiff alleged that his employment was terminated without cause on June 21, 2013, in violation of the ACCO collective bargaining agreement, and solely in retaliation for his discrimination complaints. *Id.* at ¶ 61.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 19 of 93

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

In a Memorandum-Decision and Order, filed in *Vance I* on March 31, 2015, the Hon. Norman A. Mordue, Senior U.S. District Judge, granted Defendant ACCO summary judgment. (*Vance I*, Dkt. No. 83.) The District Court specifically addressed Plaintiff's ADA violation claims, including disparate treatment, retaliation, including his allegedly retaliatory termination, and hostile work environment claims, and found the Defendant entitled to judgment as a matter of law. *Id.*

Plaintiff appealed to the Second Circuit on April 29, 2015. (*Vance I*, Dkt. No. 85.) Plaintiff's motion to vacate the Second Circuit's September 2, 2015, Order dismissing his appeal was denied on September 7, 2016. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.)

**B. Complaint, as Supplemented By the Amended Complaint, Now Under Initial Review**

### 1. Original Complaint

The claims alleged by Plaintiff in the original complaint (Dkt. No. 1) in his new ADA employment discrimination action ("*Vance II*") now under review include, but are not limited to:

> failure to promote, denial of participation in programs, failure to make alterations to accommodate a disability, retaliation, violation of an existing mediation agreement with EEOC, violation of company and union CBA (Collective Bargaining Agreement) on employment discharge, Hostile work environment, Wrongful Termination, failure to notify the union on discharge and waived rights for representation as a union paying member, and defamation of character bogus wrongful termination with assumption of committing future violence in the workplace.

(Dkt. No. 1 at ¶ 5.)

The factual allegations supporting Plaintiff's ADA claim, found in paragraphs 7 through 58 of his complaint in *Vance II* are virtually identical to those alleged in paragraphs 8 through 58 of his second amended complaint in support of the same ADA claim in *Vance I*. (*Vance I*, Dkt. 47 at ¶¶ 8-57; *Vance II*, Dkt. No. 1 at ¶¶ 7-58.) The major distinction between the two pleadings is Plaintiff's elaboration on the facts and circumstances surrounding the termination of his employment and alleged breach of the ACCO collective bargaining agreement in the present action. (*Vance II*, Dkt. No. 1 at ¶¶ 66-102.) In his second amended complaint in *Vance I*, Plaintiff simply alleged that his employment was terminated without cause, in violation of the ACCO collective bargaining agreement. (*Vance I*, Dkt. No. 48 at ¶ 61.) Plaintiff has also added a state law defamation claim in *Vance II*. (*Vance II*, Dkt. No. 1 at ¶¶ 5, 95.)

### 2. Amended Complaint

**\*4** On September 14, 2017, while the Court was undertaking the initial review of Plaintiff's complaint, Plaintiff filed a letter motion requesting additional time to add to the complaint. Plaintiff explained that he was waiting for the case file in his initial action to be delivered to him by his former attorney, and he would need time to review the file and add exhibits to support his claim and add to his original complaint. (Dkt. No. 7.)

The following day, Plaintiff filed a series of exhibits relating to his EEOC proceedings and an affirmation from his counsel in *Vance I* in support of a motion to recall the Second Circuit mandate dismissing the appeal and for reinstatement. (Dkt. Nos. 8, 8-1.) The Court thereafter issued text orders granting Plaintiff's letter motion (Dkt. No. 7) and subsequently giving him an extension of time to submit his amended complaint and exhibits. (Dkt. Nos. 9, 14.) Plaintiff submitted an amended complaint and exhibits on October 27, 2017, after receiving his file from *Vance I* from his former counsel. (Dkt. Nos. 17, 17-1, 17-2.)

In his amended complaint, Plaintiff describes *Vance II* as being brought pursuant to:

> Americans with Disabilities Act, 42 U.S.C. 1201 et seq., Breach of Contract with EECO (sic), CWA, CBA

Vance v. ACCO Brands, Corporation, Not Reported in Fed. Supp. (2017)

2017 WL 8751936

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 20 of 93

(collective bargaining agreements), Violation of Discharge agreement, Violation of Attendance Guideline agreement, Hostile Environment, Retaliation, Wrongful Termination, Slander, Defamation of Character and Harassment, and pursuant to the Constitution of the United States of America, along with the New York State Human Rights Law, and other federal and state anti-discrimination laws and policies in response to the defendants' discrimination based upon a disability, union representation, and the failure to acommodate (sic) the same.

(Dkt. No. 17 at 2-3.)

Plaintiff has submitted 134 pages of exhibits with his amended complaint, including documents from his EEOC complaints; a copy of the collective bargaining agreement between Defendant and a Local of the Communications Workers of America ("CWA"); Plaintiff's employment application and hearing test; Memorandum for Mediation submitted by Defendant in *Vance I*; documentation regarding attendance guidelines; various medical reports, excuses, and other information; correspondence between CWA Local #1416 and Defendant regarding Plaintiff's treatment and grievances; communications between Plaintiff and his attorney in *Vance I*; notes from an investigation on Plaintiff by Defendants; EEOC settlement agreement; and what appears to be Plaintiff's brief to the Second Circuit on his dismissed appeal in *Vance I*.[4] (Dkt. Nos. 17-1, 17-2.)

[4]  The cover letter submitted to the Court by Plaintiff, indicates that the exhibits submitted by Plaintiff were among the papers in the file of his attorney in *Vance I*. (Dkt. No. 17-3.)

## IV. ANALYSIS

The doctrine of *res judicata* applies when "1) the previous action involved an adjudication on the merits; 2) the previous action involved [the same parties or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285

(2d Cir. 2000); *see also Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (under the doctrine of *res judicata*, "once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose").

 **\*5**  A district court may dismiss an action *sua sponte* on *res judicata* grounds provided it has before it all relevant data and legal records or is in the same district where the original action was filed. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (citing *Carbonell v. Louisiana Dep't of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985)); *see also Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (district court may reach the issue of *res judicata sua sponte.*); *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995) ("Nothing ... suggests that an affirmative defense appearing on the face of a complaint may not be the basis for a *sua sponte* dismissal under section 1915(d) [section 1915(e) as amended] prior to the service of the complaint.")

The District Court granted ACCO summary judgment dismissing *Vance I* and judgment was entered in favor of ACCO. (*Vance I*, Dkt. Nos. 83-84.) Plaintiff's appeal to the Second Circuit was dismissed for failure to perfect. (Court of Appeals, 2nd Cir., Docket No. 15-1443, Nos. 45, 62.) "It is well-established that summary judgment is an adjudication on the merits for *res judicata* purposes." *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010) (citing *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 712-15 (2d Cir. 1977)); *Yan Won Liao v. Holder*, 691 F. Supp. 2d 344, 352 n.9 (E.D.N.Y. 2010) ("Summary judgment dismissal is considered a decision on the merits for res judicata purposes."). Therefore, the Court finds that *Vance I* involved an adjudication on the merits for purposes of determining the applicability of *res judicata* to *Vance II.*

*Vance I* and *Vance II* are between the same parties, thereby satisfying the second requirement for the applicability of *res judicata*. Moreover, the claims alleged by Plaintiff in *Vance II* are based on the same transactions involving Plaintiff's employment by Defendant at issue in *Vance I*, and were raised, or could have been raised, in that first action. Plaintiff's discrimination claim against ACCO under the ADA, including that his termination was in retaliation for filing ADA complaints with the EEOC, alleged in this case was clearly raised in *Vance I*. (*Vance* I, Dkt. 47; *Vance* II at 1.) Further, Plaintiff's allegation in his second

2017 WL 8751936

amended complaint in *Vance I* that ACCO breached the collective bargaining agreement reveals that Plaintiff, who was represented by counsel, was aware of the claim when he filed the second amended complaint and could have raised the claim in that prior action. (*Vance I*, Dkt. No. 47 at ¶ 61.) The defamation claim alleged in *Vance II* is based upon transactions related to Plaintiff's employment with Defendant and also could have been raised in *Vance I.*

Based upon the foregoing, the Court finds that this action is barred its entirety under the doctrine of *res judicata* and recommends that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* dismissed with prejudice for failure to state a claim on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1), as supplemented by his amended complaint (Dkt. No. 17), be *sua sponte* **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[5]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 8751936

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1631312

2018 WL 1631312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Robert M. VANCE, Plaintiff,

v.

ACCO BRANDS CORPORATION; and
MeadWestVaco Corporation, Defendants.

6:17-CV-0957 (GTS/TWD)

|

Signed 04/02/2018

**Attorneys and Law Firms**

ROBERT M. VANCE, 3 West Street, Apt. 1, Oneonta, New
York 13820, pro se.

HINMAN, HOWARD & KATTELL LLP, OF COUNSEL:
ALBERT J. MILLUS, JR., ESQ., P.O. Box 5250, 80
Exchange Street, 700 Security Mutual Building, Binghamton,
New York 13902, Counsel for Defendants.

## DECISION and ORDER

HON. GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Currently before the Court, in this employment civil
rights action filed *pro se* by Robert M. Vance ("Plaintiff")
against ACCO Brands Corporation and MeadWestVaco
Corporation ("Defendants"), are the following: (1) United
States Magistrate Judge Thérèse Wiley Dancks' Report-
Recommendation recommending that Plaintiff's Complaint,
as supplemented by his "Amended Complaint," be *sua sponte*
dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)
for failure to state a claim and because Plaintiff's claims
are barred by the doctrine of *res judicata*; and (2) Plaintiff's
Objection to the Report-Recommendation. (Dkt. Nos. 18, 19.)

Even when construed with the utmost of special solicitude,
Plaintiff's Objection fails to assert a specific challenge to
the Report-Recommendation. (*Compare* Dkt. No. 19 *with*
Dkt. No. 18.) As a result, the Court need review the Report-
Recommendation for only clear error. [1] Based upon a careful
review of this matter, the Court can find no clear error

in the Report-Recommendation: Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result, the
Court accepts and adopts the Report-Recommendation for the
reasons stated therein. (Dkt. No. 18.) To those reasons, the
Court would add only that, while generally *pro se* plaintiffs
must be afforded a chance to amend their complaint prior to
the dismissal of their original complaint for failure to state
a claim, such a chance need not be afforded where, as here,
the defects in the original complaint are substantive such that
amendment would not likely cure them.

[1]     When no specific challenge is made to a magistrate
         judge's report-recommendation, the Court subjects
         that report-recommendation to only a *clear error*
         review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P.
         72(b), Advisory Committee Notes: 1983 Addition;
         *see also Brown v. Peters*, 95-CV-1641, 1997 WL
         599355, at \*2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler,
         J.) [collecting cases], *aff'd without opinion*, 175
         F.3d 1007 (2d Cir. 1999). When performing such
         a "clear error" review, "the court need only satisfy
         itself that there is no clear error on the face of
         the record in order to accept the recommendation."
         Fed. R. Civ. P. 72(b), Advisory Committee Notes:
         1983 Addition; *see also Batista v. Walker*, 94-
         CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July
         31, 1995) (Sotomayor, J.) ("I am permitted to adopt
         those sections of [a magistrate judge's] report to
         which no specific objection is made, so long as
         those sections are not facially erroneous.") (internal
         quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Dancks' Report-
Recommendation (Dkt. No. 18) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1), as
supplemented by his "Amended Complaint" (Dkt. No. 17), is
*sua sponte* **DISMISSED** with prejudice for failure to state
a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).

## All Citations

Not Reported in Fed. Supp., 2018 WL 1631312

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Vance v. ACCO Brands, Not Reported in Fed. Rptr. (2018)

2018 WL 5603578

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 23 of 93

2018 WL 5603578
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Robert M. VANCE, Plaintiff-Appellant,

v.

ACCO BRANDS, Headquarters & Corporate
Office, Manufacturing/Office Supply,
MeadWestVaco Corporation, Defendants-Appellees.

18-1258
|
October 3, 2018

N.D. New York, 17-cv-957, Suddaby, C.J., Dancks, M.J.

**Attorneys and Law Firms**

Robert M. Vance, Oneonta, NY, pro se.

Albert John Millus, Jr., Esq., Hinman, Howard & Kattell, LLP, Binghamton, NY, for Defendants-Appellees.

MeadWestVaco Corporation, Sidney, NY.

Present: José A. Cabranes, Robert D. Sack, Barrington D. Parker, Circuit Judges.

**Opinion**

 **\*1** Appellees move for summary affirmance. Upon due consideration, it is hereby ORDERED that the motion is GRANTED. *See United States v. Bonilla*, 618 F.3d 102, 107–08 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Rptr., 2018 WL 5603578

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 24 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)
2024 WL 3392859

🏴 KeyCite Blue-Striped Flag

Appeal Filed by  Defreitas v. Kubetz,  2nd Cir.,  July 11, 2024

2024 WL 3392859
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Russell DEFREITAS, Plaintiff,

v.

Suffolk County Sheriff Errol D.
TOULON, et al., Defendants.
Russell DeFreitas, Plaintiff,

v.

Suffolk County Assistant District
Attorney Jacob Kubetz, et al., Defendants.
Russell DeFreitas, Plaintiff,

v.

Suffolk County Assistant District
Attorney Jacob Kubetz, et al., Defendants.
Russell DeFreitas, Petitioner,

v.

Errol D. Toulon, Jr., and the Attorney General
of the State of New York, Respondents.

2:23-cv-5933 (NJC) (AYS), 2:24-cv-2368 (NJC) (AYS),
2:24-cv-2918 (NJC) (AYS), 2:24-cv-3394 (NJC)
|
Signed June 7, 2024

**Attorneys and Law Firms**

Russell DeFreitas, Riverhead, NY, Pro Se.

**MEMORANDUM AND ORDER** [1]

[1]

> Excerpts from Plaintiff's filings have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

NUSRAT J. CHOUDHURY, United States District Judge:

**\*1**  This Memorandum and Order addresses four civil actions filed by pro se Plaintiff Russell DeFreitas ("DeFreitas"): *DeFreitas v. Suffolk County Sheriff Errol D. Toulon et al.*, No. 2:23-cv-5933 (E.D.N.Y) ("*DeFreitas I*"); *DeFreitas v.*

*Suffolk County Assistant District Attorney Jacob Kubetz, et al.*, No. 24-cv-2368 (E.D.N.Y.) ("*DeFreitas II*"); *DeFreitas v. Suffolk County Assistant District Attorney Jacob Kubetz et al.*, No. 24-cv-2918 (E.D.N.Y.) ("*DeFreitas III*"); and *DeFreitas v. Errol D. Toulon, Jr. et al.*, No. 24-cv-3394 (E.D.N.Y.) ("*DeFreitas IV*"). DeFreitas is currently incarcerated as a pretrial detainee at the Suffolk County Correctional Facility ("SCCF"). His pending civil actions in this Court challenge an upcoming state court criminal prosecution against him as well as certain conditions of confinement in the SCCF. Upon review of DeFreitas's submissions in these cases, the Court grants the applications to proceed *in forma pauperis* ("IFP") in *DeFreitas II, DeFreitas III*, and *DeFreitas IV*, and dismisses the SAC in *DeFreitas I* and the Complaints in *DeFreitas II* and *DeFreitas III* as set forth below pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). In addition, the Court dismisses the Petition filed in *DeFreitas IV* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1). Given the dismissal of the Complaints in *DeFreitas II* and *DeFreitas III* and the Petition in *DeFreitas IV*, the remaining motions are denied as moot.

The allegations in the pleadings addressed in this Memorandum and Order overlap with those made in DeFreitas's original Complaint and First Amended Complaint ("FAC") in *DeFreitas I*. On January 26, 2024, the Court issued a Memorandum and Order (the "M&O") granting DeFreitas's motions to proceed IFP and dismissing the FAC in *DeFreitas I*. (*See* DeFreitas I, M&O, ECF No. 18 (granting DeFreitas I, IFP Mots., ECF Nos. 2, 8, and dismissing DeFreitas I, FAC, ECF No. 7).) The FAC challenged the conditions of DeFreitas's confinement at the SCCF and his pending state court criminal prosecution, seeking, among other relief, the dismissal of the criminal charges against him. (DeFreitas I, FAC at 24–27, 54.) After dismissing the FAC, the Court found that amendment was appropriate only as to DeFreitas's conditions of confinement claims and granted leave to file a Second Amended Complaint ("SAC") relating to the alleged deliberate indifference to his medical needs in the SCCF against a proper defendant within thirty (30) days. (DeFreitas I, M&O at 28–31.)

On February 23, 2024, DeFreitas timely filed a SAC along with a two-page cover letter stating that he had enclosed his "amended complaint as instructed by the Court, including a proposed order to show cause for Preliminary Injunction and Temporary Restraining Order, application for request of counsel and an affidavit of service for all defendants." (DeFreitas I, Ltr., ECF No. 19; DeFreitas I,

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

SAC, ECF No. 20.) The only document included in the filing, however, was the SAC. (DeFreitas I, SAC.) The SAC adds two "John Doe" defendants—"John Doe #1," an alleged SCCF podiatrist, and an unidentified defendant ("Doe"), an alleged "Suffolk County Local Criminal Court Judge"—and continues to name as defendants: Suffolk County Sheriff Errol D. Toulon, Jr. ("Sheriff Toulon"); SCCF Warden Michael Franchi ("Warden Franchi"); New York State Supreme Court, Suffolk County, Judge Anthony Senft ("Judge Senft"); Ian T. Fitzgerald, Esq. ("Fitzgerald"); Roger B. Rothman, Esq. ("Rothman"); Suffolk County District Attorney Raymond A. Tierney ("DA Tierney"); Suffolk County Assistant District Attorney Jake Kubetz ("ADA Kubetz"); [2] and Suffolk County. Like the FAC, the SAC reiterates DeFreitas's challenges to his ongoing state court criminal prosecution and his conditions of confinement. (DeFreitas I, SAC at 6–12.)

[2] The Court notes that this Defendant's sur name was spelled "Kubitz" in the Complaint, FAC, and SAC. (DeFreitas I, Compl. at 1, 3, 21; DeFreitas I, FAC at 2, 6, 18–19; DeFreitas SAC at 3–4, 10–11.) However, in the Complaints filed in *DeFreitas II & DeFreitas III*, this Defendant's surname is spelled "Kubetz." (*See* DeFreitas II, Compl., ECF No. 1 at 1–2, 4–6; DeFreitas III, Compl. at 1–2, 4–5.) The Court uses "Kubetz" in this opinion. *See* N.Y. State Registered Attorney Jacob Thomas Kubetz, OPENGOVNY, https://opengovny.com/attorney/4094629 (last visited May 30, 2024).

**\*2** Further, on March 28, 2024, DeFreitas filed the Complaint initiating *DeFreitas II* against three of the individuals already named as defendants in both the FAC and SAC filed in *DeFreitas I*—namely ADA Kubetz, Judge Senft, and Fitzgerald—and against a "John Doe," identified as a "Foreperson, Suffolk County Grand Jury" ("Foreperson"). (*See* DeFreitas II, Compl., ECF No. 1 at 1–3.) DeFreitas also filed two motions for leave to proceed IFP, a proposed order to show cause seeking a temporary restraining order and a preliminary injunction, and a motion for the appointment of pro bono counsel. (DeFreitas II, IFP Mots., ECF Nos. 6, 12; DeFreitas II, Order to Show Cause, ECF No. 5; DeFreitas II, Mot. for Pro Bono Counsel, ECF No. 7.) Like the pleadings in *DeFreitas I*, the Complaint in *DeFreitas II* challenges DeFreitas's on-going state criminal prosecution. (*Compare* DeFreitas I, SAC at 6–12 *with* DeFreitas II, Compl. at 4–9.)

Then, on April 18, 2024, DeFreitas filed yet another pro se complaint initiating *DeFreitas III* against ADA Kubetz, Judge Senft, Suffolk County—defendants already named in *DeFreitas I* and *DeFreitas II*—and another court appointed attorney alleged to be representing him in the state court prosecution, Christopher Brocato, Esq. ("Brocato"). (DeFreitas III, Compl., ECF No. 1–2.) Along with this Complaint, DeFreitas filed an IFP application and a proposed order to show cause seeking a temporary restraining order and preliminary injunction. (DeFreitas III, IFP Mot., ECF No. 2; DeFreitas III, Order to Show Cause, ECF No. 3.)

Finally, on May 7, 2024, DeFreitas initiated *DeFreitas IV* by filing an IFP application and a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241") against Sheriff Toulon and the New York State Attorney General ("NYAG" and together, "Respondents"). (DeFreitas IV, Pet., ECF No. 1; DeFreitas IV, IFP Mot., ECF No. 2.) On June 3, 2024, DeFreitas filed a proposed order to show cause in *DeFreitas IV* seeking to enjoin the state court from proceeding to trial pending reassignment of counsel. (DeFreitas IV, Order to Show Cause, ECF No. 8.) In the June 3, 2024 filing, DeFreitas includes a document that the Court construes as a motion to amend the Petition. (DeFreitas IV, Mot. to Am., ECF No. 8 at 8–19.) In this document, DeFreitas states: "I refiled my writ of habeas corpus under 28 U.S.C. § 2241 because I did not comply with the providing all the requirement information on my first application." (*Id.* at 8.) The content of this new document is largely repetitive of the original 2241 Petition. (*Compare* DeFreitas IV, Pet., ECF No. 1 *with* DeFreitas IV, Mot. to Am.) DeFreitas also filed a second application to proceed IFP within the June 3, 2024 filing. (DeFreitas IV, Second IFP Mot., ECF No. 8 at 20–21.)

Upon review of DeFreitas's submissions in these four cases, the Court grants the applications to proceed IFP (DeFreitas II, IFP Mots., ECF Nos. 6, 12; DeFreitas III, IFP Mot., ECF No. 2; DeFreitas IV, IFP Mots., ECF Nos. 2, 8), and dismisses the SAC in *DeFreitas I* and the Complaints in *DeFreitas II* and *DeFreitas III* (DeFreitas I, SAC; DeFreitas II, Compl., ECF No. 1; DeFreitas III, Compl., ECF No. 1) as set forth below pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). In addition, the Court denies the motion to amend the habeas petition (DeFreitas IV, Mot. to Am., ECF No. 8) and dismisses the habeas petition filed in *DeFreitas IV* (DeFreitas IV, Pet., ECF No. 1) pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Given the dismissal of the Complaints in *DeFreitas II* and *DeFreitas III*, and the Petition in *DeFreitas IV*, the following remaining motions are denied as moot:

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 26 of 93

(1) the proposed order to show cause seeking a temporary restraining order and a preliminary injunction and a motion for the appointment of pro bono counsel in *DeFreitas II* (DeFreitas II, ECF Nos. 5, 7); (2) the proposed order to show cause seeking a temporary restraining order and preliminary injunction in *DeFreitas III* (DeFreitas III, ECF No. 3); and (3) the proposed order to show cause seeking a temporary restraining order and preliminary injunction in *DeFreitas IV* (DeFreitas IV, ECF No. 8).

## BACKGROUND

**\*3** The Court reviews the background of the four actions filed by DeFreitas in this Court only as is relevant for purposes of addressing the pending pleadings and motions. Familiarity with the prior pleadings and orders in *DeFreitas I* is presumed.

### I. *DeFreitas I*

As relevant here, the Court granted DeFreitas's motions to proceed IFP and to amend the complaint, and dismissed the FAC pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) as follows: (1) the injunctive relief claims that sought this Court's intervention in the pending state criminal prosecution were dismissed without prejudice and without leave to amend at that time; (2) the money damages claims against DA Tierney, ADA Kubetz, Judge Senft, Rothman, and Fitzgerald were dismissed with prejudice; and (3) the claims against Sheriff Toulon and Warden Franchi were dismissed without prejudice. (DeFreitas I, M&O at 30–31.) [3]

[3]      The Court also dismissed the FAC's Section 1983 claims against other individuals and government entities. Those claims are not relevant here because they concern defendants not named in the *DeFreitas I* SAC, the *DeFreitas II* and *DeFreitas III* Complaints, or the *DeFreitas IV* Petition.

With regard to DeFreitas's allegations that he has been deprived of his right to a speedy trial in the pending state criminal prosecution against him, the Court found that DeFreitas failed to properly raise this claim in federal court. More specifically, the Court found that "DeFreitas does not allege any facts suggesting that he has presented his speedy trial claim to the state courts or that he has exhausted this claim." (*Id.* at 11.) Moreover, because DeFreitas sought dismissal of the charges against him, rather than to hasten his prosecution, the Court found that the factors set out in

*Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423 (1982) "weigh strongly in favor of abstention because there is a pending state proceeding implicating New York's important interest in enforcing its criminal laws ... and there has been no showing that the state proceeding cannot afford an adequate opportunity for judicial review of DeFreitas's speedy trial claim." (*Id.* at 11–12.)

In light of DeFreitas's on-going criminal prosecution, the Court stayed amendment at that time of any claims surrounding his arrest and dismissed the malicious prosecution claims without prejudice to amendment upon resolution of the underlying state criminal case. (*Id.* at 26–28.) However, the Court granted DeFreitas leave to file a SAC "against a proper defendant relating to the alleged deliberate indifference to his medical needs" within thirty days from the date of the *DeFreitas I* M&O. (DeFreitas I, M&O at 29.) The Court instructed DeFreitas to use "John Doe" or "Jane Doe" to name any unknown defendants and to "describe such individuals including the date, time, and location of the alleged constitutional violation in which each John or Jane Doe defendant was involved." (*Id.* at 31.) The Court further instructed DeFreitas:

> Any amended complaint shall be clearly title "Second Amended Complaint," bear docket number 23-5933(NJC)(AYS), and contain a short and plain statement of DeFreitas's deliberate indifference claim against each individual or entity named as a defendant. If DeFreitas does not timely file a Second Amended Complaint, absent a showing of good cause, the Court shall administratively close this case with leave to reopen upon conclusion of the underlying state court criminal proceedings.

**\*4** (*Id.* at 31.)

As noted above, on February 23, 2024, DeFreitas timely filed the SAC (DeFreitas I, SAC) [4] together with a cover letter stating that he included "an order to show cause for preliminary injunction and temporary restraining order, application for request of counsel and an affidavit of service for all defendants." (DeFreitas I, Ltr., ECF No. 19.) None

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 27 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

of the referenced documents were included with the letter, however, other than the SAC.

[4]      Although the Court's directive was to "clearly title[ ]" his pleading "Second Amended Complaint" (DeFreitas I, M&O at 31), DeFreitas has not done so. (*See* DeFreitas I, SAC at 1.) Instead, DeFreitas submitted his SAC using the Court's civil rights complaint form and includes no indication that it is a second amended complaint. However, given the Second Circuit's strong policy preference to resolve matters on the merits and not on procedural defects, the Court accepts the filing and turns to its substance. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) ("This Court has held that '[s]trong public policy favors resolving disputes on the merits' and that, '[a]lthough courts have an interest in expediting litigation, abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct.' ") (citing *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).

**A. *DeFreitas I* - The SAC**

As noted above, the SAC continues to name Sheriff Toulon, Warden Franchi, DA Tierney, ADA Kubetz, Judge Senft, Rothman, Fitzgerald,[5] and Suffolk County as defendants, and adds two unnamed defendants: "John Doe #1," an alleged SCCF podiatrist, and another unidentified defendant alleged to be a "Suffolk County Local Criminal Court Judge." (DeFreitas I, SAC at 1–5.) DeFreitas again challenges the procedures surrounding his arraignments on the original and superseding indictments in the underlying state court criminal prosecution and the legal representation provided by his court-appointed defense attorneys, Rothman and Fitzgerald, during those proceedings. (*See id.* at 6–12.)

[5]      Each of these defendants were named in the FAC and the claims against them were dismissed with prejudice in the *DeFreitas I* M&O. (*See* DeFreitas I, M&O at 30.)

With regard to the alleged deliberate indifference to his medical needs in the SCCF, the SAC alleges that: (1) on "March 12, 2023 [I] told the medical staff the county shoes hurt my feet check my medical history with the jail"; (2) Toulon and Franchi are liable for "not providing me with footwear that did not cause pain and denied me outside recreation for ten months"; and (3) John Doe # 1 is liable "for failing to timely order proper footwear and failure to prescribe adequate medical care although I made numerous visits, he gave me two separate Cortisone injections and I've filed 3 separate grievances." (*Id.* at 6, 11–12.)

Based on the foregoing allegations, the SAC in *DeFreitas I* seeks a damages award in the sum of "$100,000.00 from each defendant and an additional $100,000.00 a month for each month of denial of my right to a speedy trial from [Judge] Senft and Suffolk County." (*Id.* at 13.) DeFreitas also seeks the following, indecipherable injunctive relief against Sheriff Toulon and Warden Franchi: "immediately steant issuing writing." (*Id.*)

**II. *DeFreitas II***

**\*5**  On March 28, 2024, DeFreitas commenced a second action relating to his ongoing state court criminal prosecution by filing another Complaint against ADA Kubetz, Judge Senft, and Fitzgerald,[6] and Foreperson Doe. (*See* DeFreitas II, Compl.) DeFreitas has also filed two motions to proceed IFP, a proposed order to show cause for a temporary restraining order and preliminary injunction seeking, among other things, the termination of any further prosecution of him, as well as a motion for the appointment of pro bono counsel to represent him in this case. (DeFreitas II, IFP Mots.; DeFreitas II, Order to Show Cause; DeFreitas II, Mot. for Pro Bono Counsel.) Further, on April 24, 2024, DeFreitas filed a letter dated April 19, 2024, wherein he enclosed a copy of an "application I'm filing in my criminal matter, so I am disclosing a copy to this court." (DeFreitas II, Ltr., ECF No. 15.) In the attached application, DeFreitas seeks the reassignment of Brocato, his current court-appointed attorney in the pending state court prosecution. (*Id.* at 10.) Brocato was appointed after DeFreitas's court-appointed attorney —Fitzgerald—had been relieved at DeFreitas's request, allegedly because Fitzgerald provided ineffective assistance of counsel. (*Id.* at 5–8.) The gravamen of the pending application is that Brocato has failed to file motions in the state court preserving DeFreitas's speedy trial right and relating to transactional immunity and the propriety of the grand jury proceedings. (*Id.* 13–15.)

[6]      Each of these defendants were named in the *DeFreitas I* FAC, and the Court dismissed the claims against them with prejudice in the *DeFreitas I* M&O. (DeFreitas I, M&O at 30.)

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 28 of 93
DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)
2024 WL 3392859

#### A. *DeFreitas II* – The Complaint

Like his earlier pleadings in *DeFreitas I*, the Complaint in *DeFreitas II* also challenges DeFreitas's on-going state court criminal prosecution. (DeFreitas II, Compl.) DeFreitas again alleges that Judge Senft did not relieve his assigned defense counsel, Fitzgerald, even though DeFreitas complained "numerous" times that Fitzgerald was ineffective. (*Id.* at 4.) DeFreitas also repeats his allegation that he did not receive timely notice of the charges or evidence against him, nor did he receive timely notice of the grand jury proceeding because state procedural laws surrounding grand jury witness testimony were not followed. (*Id.* at 4–5.)

DeFreitas also again alleges that Fitzgerald refused to file a motion to dismiss the indictment and waived his speedy trial right by signing "a written waiver of my CPL 180.80, CPL 30.30 and CPL 145.20." (*Id.* at 4–5.) Further, DeFreitas now alleges that he is legally blind and could not read the waiver of immunity himself. (*Id.* at 5.) Accordingly, Fitzgerald allegedly informed the Doe Foreperson and ADA Kubetz that he would read the waiver to DeFreitas. (*Id.*) DeFreitas claims that Fitzgerald stated that the scope of the inquiry would "be related to drug overdoses from March 9, 2023 and my arrest on March 11, 2023" and that ADA Kubetz "never informed me of my right to confer with counsel pursuant to the Rehabilitation Act of 1973, 28 U.S.C. 701 or the Americans with Disabilities Act, 42 U.S.C. 12101 for legally blind people to be provided with accommodations." (*Id.* at 6.)

DeFreitas alleges that ADA Kubetz "inquired if counsel read and discussed the waiver of immunity with me and I stated yes." (*Id.*) According to DeFreitas, ADA Kubetz did not "verify through himself or the foreperson of the grand jury that I was aware of the contents, wording, or scope of the waiver of immunity" nor did they read it out loud to him. (*Id.*) DeFreitas also alleges that Fitzgerald:

> forced me to waive a challenge the the prosecutor's requested protective order on the agreement he would make an application on my behalf pursuant to CPL 30.30(2)(a). I complied with counsel's blackmail and he put the 30.30(2)(a) motion on for August 23, 2023, in which Anthony Senft did not allow me to appear ....

(*Id.* at 7.)

According to the *DeFreitas II* Complaint, on "September 28, 2023, counsel [Fitzgerald] was reassigned and Anthony Senft informed me that this was the last counsel I would receive or I could represent myself [and] [n]ewly assigned counsel was suppose[d] to visit me the next day ... but I did not see or speak to him until January 17, 2023." [7] (*Id.* at 8.) However, DeFreitas alleges that he is "afraid to complain about new counsel's ineffectiveness and then be forced to represent myself" because "I'm being threatened with life incarceration or possible 15 years or more ...." (*Id.*) DeFreitas states that he "hope(s)" to get help from other detainees to "do my own pro se applications for relief to the appellate division because Anthony Senft is not protecting my right to a fair and impartial trial, and protecting my right to effective assistance of counsel; due process of law and equal protection of law." (*Id.* at 8–9.)

[7]     Presumably, DeFreitas intended to allege 2024, not 2023.

**\*6** DeFreitas alleges that he "understand[s] this is still a pending criminal case but I have no wear else to turn for relief. I just want a fair oppurtunity to show that there are midigating circumstance to negate my guilt and that I am innocent of these criminal charges my only crime was being a foolish heroin addict be manipulated by others because of my drug addiction." (*Id.* at 9.) For relief, DeFreitas seeks an:

> [e]xtension of time to file motions or reassignment of counsel. A CPL 190.50(5)(c) motion, transactional immunity motion, both statute speedy trial motions, compliance by the court with CPL 245.75, 245.80, CPL 30.30(5) and (8); CPL 30.30(2)(a) and (1)(a); challenge to the People's C.O.C. and S.O.R. once a week 2 hour visit from counsel, to appear before court and be heard. [8]

(*Id.* at 10.)

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 29 of 93

2024 WL 3392859

8    The Court understands these abbreviations to mean "Certification of Compliance" with discovery obligations and "Statement of Readiness" for trial as is alleged in the *DeFreitas III* Complaint. (*See* DeFreitas III, Compl. at 5.)

### III. *DeFreitas III*

On April 18, 2024, DeFreitas filed a third complaint using the Court's complaint form for actions brought under Section 1983, initiating yet another civil action challenging his on-going state criminal prosecution. (DeFreitas III, Compl.) DeFreitas also filed an IFP motion and a proposed order to show cause seeking the entry of a preliminary injunction and temporary restraining order enjoining ADA Kubetz, Judge Senft, Brocato, and Suffolk County from "proceeding on the criminal charges plaintiff is being held on because the indictment is defective and plaintiff is entitled to transactional immunity ...." (DeFreitas III, IFP Mot.; DeFreitas III, Order to Show Cause at 1–2.) Like DeFreitas's prior pleadings, the *DeFreitas III* Complaint challenges conduct alleged to have occurred during the state court prosecution on May 18, 2023, August 23, 2023, and December 1, 2023. (DeFreitas III, Compl. at 3.) More specifically, DeFreitas alleges:

> Kubetz did not provide a waiver of immunity in large print, bold type, and light blue paper, nor did he or the foreperson of the grand jury read the waiver of immunity to me and the prosecutor instead of the foreperson administer the first question of the oath of the waiver of immunity to conceal that a reasonable accommodation was not provided.

(*Id.* at 4.)

According to the *DeFreitas III* Complaint, DeFreitas was "questioned [ ] outside the scope of the waiver of immunity" and further claims that Fitzgerald, DeFreitas's court-appointed attorney, advised him that DeFreitas would be questioned only "related to drug overdoses that occured in a hotel room I rented on March 9 and charges I was previously arrested on March 11, 2023." (*Id.* at 5.) This Complaint alleges that ADA Kubetz handed to DeFreitas and Brocato certain disclosures, which DeFreitas could not read because

he is legally blind, and failed to "make a reasonable inquiry of any reasonable accommodations I would need to be able to read any of these documents." (*Id.*) DeFreitas further alleges that Judge "Senft has not protected my right to reasonable accommodations." (*Id.*) For relief, DeFreitas seeks:

> Reasonable Accommodations, all written notices in large print, bold type on light blue paper, $100,000.00 from Jacob Kubetz $100,000.00 from Suffolk County and $100,000.00 from Anthony Senft. All defendants must comply with reasonable accommodations Injunctive relief and Temporary Restraining order.

**\*7**  (*Id.* at 6.)

### IV. *DeFreitas IV*

On May 7, 2024, DeFreitas filed a handwritten Petition pursuant to 28 U.S.C. § 2241 against Sheriff Toulon and the NYAG. (DeFreitas IV, Pet.) Like his Complaints, DeFreitas's Petition challenges his indictment pending under No. 71385-23 in the New York State Supreme Court, Suffolk County. (*Id.* ¶ 1.) According to the Petition, DeFreitas was taken into custody on March 11, 2023, and was indicted on May 18, 2023, and May 20, 2023. (*Id.* ¶ 2.) The gravamen of the Petition is that DeFreitas alleges the violation of his right to a speedy trial, that his counsel have been, and are, ineffective, "prosecutorial misconduct" in the grand jury proceeding, and that the court "fail[ed] to be alert to [his] disability." (*Id.* ¶¶ 15–16.) More specifically, DeFreitas again alleges that his legal blindness prevented him from reading the waiver of immunity and that his counsel was ineffective in failing to accurately relay the scope of the grand jury inquiry to him. (*Id.*)

According to the Petition, the prosecution filed a certificate of compliance and a supplemental certificate of compliance on August 21, 2023, and December 1, 2023, respectively. (*Id.* ¶¶ 5–6.) DeFreitas also alleges that the prosecution's statement of readiness was made on August 21, 2023. (*Id.* ¶ 7.) To date, however, the criminal trial has not commenced. [9] DeFreitas filed speedy trial motions pursuant to Criminal Procedure Law § 30.30 and, upon the denial of these motions in the trial court, he unsuccessfully appealed to the Appellate Division,

2024 WL 3392859

Second Department. *Id.* ¶ 14; *see also DeFreitas v. Suffolk Cnty. Sheriff*, 220 A.D.3d 829 (2d Dep't 2023); *DeFreitas v. Toulon*, 207 N.Y.S.3d 699 (2d Dep't 2024). DeFreitas alleges that he filed a notice of appeal with the New York State Court of Appeals, but does not report that the appeal has been decided. (DeFreitas IV, Pet. ¶ 20.)

9        Although the Petition alleges that a trial date had been set for May 13, 2024, (DeFreitas IV, Pet. ¶ 21), according to the information maintained by the New York State Office of Court Administration on its public website, the trial date was moved to June 5, 2024, and then adjourned without a new date. *See* New York State Office of Court Administration Indictment No. 71385-23 Page, https://perma.cc/ES89-GXKV (last visited on June 6, 2024).

For relief, DeFreitas requests an order from this Court: (1) granting him "transactional immunity"; (2) "dismiss[ing] all charges in indictment number 71385-23"; and (3) ordering that he "must automatically be released from custody." (*Id.* at 13.)

On June 3, 2024, DeFreitas filed a proposed order to show cause in *DeFreitas IV* seeking to enjoin the Defendants from "[p]roceeding to trial without reassigning counsel for Petitioner Directing new counsel to meet with petitioner and file motions pursuant to [N.Y.C.P.L.] 210.20(1)(d); 190.50(5) (c); 245.10(1)(c); 30.30(5), (2)(a) and (1)(a) ...." (DeFreitas IV, Order to Show Cause at 3.) In the affidavit filed in support of the proposed order to show cause, DeFreitas alleges that "Judge Anthony Senft has stated he is fast tracking me to trial, has set June 5, 2024 for pretrial conference has denied my application for reassignment of counsel and counsel is ineffective." (DeFreitas IV, Aff. ISO Order to Show Cause, ECF No. 8 at 5.)

**\*8** As noted above, in addition to the proposed order to show cause, DeFreitas filed a second IFP motion and a document that this Court construes as a motion to amend the *DeFreitas IV* habeas Petition. (DeFreitas IV, Second IFP Mot.; Mot. to Am.) Although DeFreitas used the Court's Section 2241 form for his motion to amend, the content of the document is largely repetitive of the original Petition. (*Compare* DeFreitas IV, Pet. *with* DeFreitas IV, Mot. to Am.) The motion to amend, however, adds a challenge to Judge Senft's May 13, 2024 denial of DeFreitas's application for the reassignment of counsel. (Mot. to Am. at 11.) For relief, DeFreitas seeks the "dismissal of the indictment and petitioner's immediate release from custody or alternatively order the court assign

new counsel to raise these grounds before the trial court." (*Id.* at 18.) [10]

10        Rule 15, Fed. R. Civ. P., governs a motion to amend a habeas petition. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). While leave to amend should be freely granted, a district court has discretion to deny leave to amend "in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive, or where amendment would be futile." *Beniquez v. Johnson*, No. 21 CIV 1467 (PAE), 2023 WL 3948738, at \*19 n.11 (S.D.N.Y. June 12, 2023). Here, amendment of the Petition would be futile because, as discussed below (*see infra* at 22–25), DeFreitas's claims are unexhausted and/or fail to allege a constitutional deprivation. *See, e.g., Beniquez*, 2023 WL 3948738, at \*19 (denying leave to amend where amendment would be futile); *Cruz v. Bureau of Prisons*, No. 10 Civ. 5460 (SHS), 2014 WL 12648510, at \*3–4 (S.D.N.Y. Mar. 24, 2014) (denying leave to amend three of four claims where doing so would be futile), *aff'd sub nom. Cruz v. Walsh*, 633 F. App'x 794 (2d Cir. 2015). For these reasons, DeFreitas's motion to amend the habeas petition is denied.

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure by which the district court first considers whether a plaintiff qualifies for IFP status and then considers the merits of the complaint under 28 U.S.C. § 1915. *See Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) ("If the plaintiff demonstrates poverty, he should be permitted to file his complaint *in forma pauperis*. Then the court may properly consider dismissing the complaint as frivolous.").

### I. *In Forma Pauperis*

Upon review of DeFreitas's IFP applications (DeFreitas II, IFP Mots.; DeFreitas III, IFP Mot.; DeFreitas IV, IFP Mots.), the Court finds that DeFreitas is qualified by his financial status to commence these actions without the prepayment of the filing fees. Therefore, the applications to proceed IFP are granted.

### II. Sufficiency of the Pleadings

DeFreitas v. Touron, Not Reported in Fed. Supp. (2024)

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 31 of 93

2024 WL 3392859

Given that DeFreitas is proceeding IFP, the Court is required to "review ... as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity ...." 28 U.S.C. § 1915A(a). [11] At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

[11]    The term "prisoner" is defined in this statute to include "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks and citation omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation marks omitted).

**\*9** Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). The factual allegations of a complaint must be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks omitted).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

### I. *Younger* and *Sprint* Abstention

As the Court made clear in the *DeFreitas I* M&O, any requests for injunctive relief enjoining or interfering with the criminal charges pending against DeFreitas in the New York State Supreme Court, Suffolk County, or otherwise intruding in those proceedings "squarely trigger the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Sprint Communications, Inc. v. Jacobs*, 571 U.S 69 (2013)." (*See* DeFreitas I, M&O at 9.) The Complaint in *DeFreitas II* seeks an order from this Court extending his time to file motions in the state case, ordering the reassignment of appointed counsel in that action, requiring such counsel to meet with DeFreitas weekly for two hours, granting him transactional immunity, and ordering the state court to comply with various sections of the state criminal procedure law. (DeFreitas II, Compl. at 10.) The Complaint in *DeFreitas III* seeks an order from this Court requiring that DeFreitas be provided with "all written notices in large print, bold type on light blue paper" or that the defendants otherwise provide "reasonable accommodations." (DeFreitas III, Compl. at 6.) As the Court explained in the *DeFreitas I* M&O:

[T]he doctrine of *Younger* abstention requires federal courts to abstain from exercising jurisdiction over claims when adjudication of those claims would interfere with any one of three types of state-level proceedings that present "exceptional circumstances": (1) "ongoing state criminal prosecutions"; (2) state "civil enforcement proceedings" that are "akin to criminal prosecutions"; and (3) proceedings that involve state courts "perform[ing] their judicial functions," including "enforcing the orders and judgments of its courts." *Sprint*, 571 U.S at 78 (defining the scope of *Younger* abstention). After applying this categorical approach, courts consider three additional, non-dispositive factors to determine whether *Younger* abstention is appropriate: 1) whether there is a "pending state proceeding," 2) whether that proceeding "implicates an important state interest," and 3) whether "the state

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 32 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

proceeding affords an adequate opportunity for judicial review of ... federal constitutional claims." *Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)); *see, e.g., Lowell v. Vermont Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), *as amended* (Dec. 15, 2020) (describing the *Younger/Sprint* abstention analysis). "[E]ven if *Younger*'s prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.' " *Lowell*, 835 F. App'x at 639 (quoting *Younger*, 401 U.S. at 54).

**\*10**  (DeFreitas I, M&O at 9–10.) *Younger*'s first category—interference with an ongoing state criminal prosecution—precludes these injunctive-relief claims in the *DeFreitas II* and *DeFreitas III* Complaints concerning the ongoing state criminal prosecution against DeFreitas. *See Sprint*, 571 U.S at 72–73; *see also Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (court should abstain from issuing declaratory relief in state criminal proceedings); *Disability Rts. New York v. New York*, 916 F.3d 129, 137 (2d Cir. 2019) (recognizing the abstention principal in state criminal proceedings and extending it to certain state civil cases).

Moreover, DeFreitas does not plead any facts from which the Court could reasonably find bad faith or harassment in the state criminal prosecution that would counsel against *Younger* abstention. The Court made clear in the *DeFreitas I* M&O that a claim of bad faith or harassment requires the pleading of factual allegations that, if true, would show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive" and that DeFreitas "ha[s] no reasonable expectation of obtaining a favorable outcome." *Diamond "D" Const. Corp.*, 282 F.3d at 199; *see* DeFreitas I, M&O at 12. DeFreitas's pending pleadings lack any such facts. (*See* DeFreitas I, SAC; DeFreitas II, Compl.; DeFreitas III, Compl., DeFreitas IV, Pet.)

DeFreitas has had ample opportunity, but has failed to point to anything in the record suggesting that his state criminal prosecution for charges of selling and possessing narcotics and unlawfully possessing a firearm is motivated by a retaliatory, harassing, or other illegitimate motive, or that he has no reasonable expectation of obtaining a favorable outcome in the state proceedings. Thus, under *Younger* and *Sprint*, this Court will not intervene in his pending state criminal prosecution.[12] *See Lowell*, 835 F. App'x at 639

(noting that "*Younger* abstention *requires* federal courts to abstain from exercising jurisdiction" over the state-level proceedings to which it applies) (emphasis added); *Diamond "D" Const. Corp.*, 282 F.3d at 197 ("[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." (citing *Colorado Water Conserv. Dist. v. United States*, 424 U.S. 800, 816 n.22 (1976))); *Player v. Sini*, No. 21-CV-5613(JS)(JMW), 2021 WL 5084172, at *2 (E.D.N.Y. Nov. 1, 2021).

[12]    Indeed, the *Middelesex* factors weigh strongly in favor of abstention because there is a pending state proceeding implicating New York's important interest in enforcing its criminal laws against the sale and possession of narcotics and unlawful possession of firearms, and there has been no showing that the state proceeding cannot afford an adequate opportunity for judicial review of DeFreitas's speedy trial claim. *See Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.*, 805 F. 3d 425, 427 (2d Cir. 2015) (describing the three factors laid out in *Middlesex*, 457 U.S. at 423).

To the extent DeFreitas's claims for injunctive relief derive from his claims that the state court judge, prosecutors, and defense counsel have, inter alia, deprived him of his right to receive a speedy trial, these claims were considered and rejected in the *DeFreitas I* M&O. (*See* DeFreitas I, M&O at 11–13.) The Section 2241 Petition filed in *DeFreitas IV* does not change this result. Although the Court made clear in the *DeFreitas I* M&O a speedy trial claim may be properly brought as a habeas petition pursuant to Section 2241, the Court also explained that such claim must *first* be properly exhausted within the New York state courts. *See* DeFreitas I, M&O at 11; *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 490–92 (1973) (habeas petition could be heard before trial where petitioner sought to be brought speedily to trial and "made no effort to abort a state proceeding, or to disrupt the orderly functioning of state judicial processes"); *see also Burns v. Valhalla*, No. 23-CV-6440 (LTS), 2023 WL 7301394, at *2–4 (S.D.N.Y. Nov. 6, 2023).

**\*11**  Once again, DeFreitas does not allege any facts in the *DeFreitas II* Complaint suggesting that he has presented his speedy trial claim to the state courts or that he has exhausted this claim; rather, he states in conclusory fashion that he filed "pro se applications to the appellate division" with no information concerning the subject, status, or outcome of any such "applications." (DeFreitas II, Compl. at 8.) Further,

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 33 of 93

there is no allegation that the speedy trial or malicious prosecution claims alleged in the Section 2241 Petition are exhausted. Apart from the absence of a ruling from the New York State Court of Appeals, DeFreitas alleges in the June 3, 2024 motion to amend the Petition that his appeal to the Appellate Division, Second Department, "is still pending." (DeFreitas IV, Mot. to Am. at 13.) Nor has DeFreitas presented a constitutional claim to the state court arising from his claimed delayed prosecution. Rather, DeFreitas claims an entitlement to relief pursuant to New York Criminal Procedure Law § 30.30 ("Section 30.30") here and in the state court. *See* DeFreitas, Pet.; *see also DeFreitas*, 220 A.D.3d 829; *DeFreitas*, 207 N.Y.S.3d 699. Further, insofar as DeFreitas challenges Judge Senft's May 13, 2024 denial of his application for the reassignment of counsel, DeFreitas does not allege that such claim is exhausted, nor could he, given that the challenged order was rendered just three weeks ago.

New York protects a criminal defendant's speedy trial right under Section 30.30 by codifying "how much time may elapse between the commencement of a criminal action and when the case is trial ready." *Parrish v. Lee*, No. 10-CV-8708 (KMK), 2015 WL 7302762, at *11 (S.D.N.Y. Nov. 18, 2015). When calculating the relevant period under Section 30.30, time is excluded for a number of reasons, including a reasonable period of time for delays resulting from proceedings concerning the defendant, such as pre-trial motions and the period during which such motions are under consideration by the court, *see* N.Y.C.P.L. § 30.30(4)(a); or a period of delay resulting from a continuance granted by the court "at the request of, or with the consent of," the defendant or his counsel, *id.* § 30.30(4)(b). In addition, Section 30.30(2) (a) requires, with certain exceptions not relevant here:

> where a defendant has been committed to the custody of the sheriff ... in a criminal action he or she must be released on bail or on his or her own recognizance, upon such conditions as may be just and reasonable, if the people are not ready for trial in that criminal action within:

> (a) ninety days from the commencement of his or her commitment to the custody of the sheriff ... in a criminal action wherein the defendant is accused of one or more offenses, at least one of which is a felony.

*Id.* § 30.30(2)(a).

"Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial."

*Gibriano v. Att'y Gen.*, 965 F. Supp. 489, 492 (S.D.N.Y. 1997). The provision "does not protect a federal constitutional right." *Parrish*, 2015 WL 7302762, at *11; *see Cadilla v. Johnson*, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) ("Because [N.Y.]C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim.").

Thus, even if properly exhausted, such claims are not cognizable on federal habeas review because, "[a]lthough [N.Y.C.P.L.] § 30.30 is entitled a 'speedy trial' statute, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense.' " *London v. Nassau Cnty. Dist. Attorney's Off.*, No. 20-CV-3988(JS)(AKT), 2020 WL 7699644, at *6 (E.D.N.Y. Dec. 28, 2020) (citation omitted); *see also Smith v. LaClair*, No. 04-CV-4356, 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008) ("Section 30.30 is not ... a statutory embodiment of the constitutional guarantee to a speedy trial."); *Dowling v. Fisher*, No. 11-CV-2025, 2014 WL 3611645, at *4 (E.D.N.Y. July 22, 2014) ("[T]o the extent Petitioner challenges his conviction pursuant to [N.Y.C.P.L.] § 30.30, New York's speedy trial statute, this Court simply does not have the power to review that claim."); *Wilson v. Goord*, No. 00-CV-4849, 2004 WL 226149, at *4 (S.D.N.Y. Feb. 6, 2004) ("[E]ven if Petitioner's statutory speedy trial right [under Section 30.30] was violated, Petitioner has failed to raise a constitutional claim that is cognizable on federal habeas corpus review.").

**\*12** The Appellate Division's April 17, 2024 decision made clear that DeFreitas "failed to demonstrate entitlement to relief pursuant to [N.Y.C.P.L.] 30.30(2)(a)." *People ex rel. DeFreitas*, 207 N.Y.S.3d at 699. Similarly, the October 16, 2023 Appellate Division decision states that DeFreitas "failed to demonstrate entitlement to relief pursuant to [N.Y.C.P.L.] 30.30(2)(a)" and that "[t]he determination of the Supreme Court, Suffolk County, did not violate constitutional or statutory standards." *DeFreitas*, 220 A.D.3d at 830 (quotation marks omitted).

Given that the *DeFreitas IV* Petition, like his state court appeals, seeks relief pursuant to state statutory law, DeFreitas has not alleged a plausible constitutional deprivation in his Section 2241 Petition. Further, even if this Court were to liberally construe the Section 2241 Petition as alleging a due process claim, [13] such claim is not ripe for review here because it was not presented to the state court and thus is unexhausted. *See DiGuglielmo v. Smith*, 366 F.3d 130, 136–

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

38 (2d Cir. 2004) (per curiam) (affirming the district court's denial of habeas petition on the ground that the petition does not present issues of federal law); *id.* at 136 (alleged "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause") (citing *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir. 1997)).

13    DeFreitas does not claim a deprivation of due process; rather, his Petition references only a "constitutional right to a speedy trial." (DeFreitas IV, Pet. at 12.)

Further, insofar as DeFreitas asks this Court to relieve his current appointed counsel, Brocato, and to appoint another attorney, the Court must abstain. DeFreitas has made this same application to the state court (*see* DeFreitas II, Ltr.), thereby demonstrating that he has an adequate opportunity for judicial review of his ineffective assistance of counsel claim in the state court. *See Sprint,* 571 U.S at 72–73. Although the motion to amend makes clear that his application to the state trial court was denied (DeFreitas IV, Mot. to Am. at 12), DeFreitas's avenue for review of that ruling is the Appellate Division, Second Department. Further, DeFreitas alleges that "the matter is pending for June 10, 2024" in state court (*id.* at 13); thus, his ineffective assistance of counsel claims are not ripe for review in this Court.

Accordingly, the Court dismisses DeFreitas's claims for injunctive relief in *DeFreitas II* and *DeFreitas III* without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1). Further, the Section 2241 Petition is denied and the claims therein are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1).

## II. Preclusion

The Court next addresses DeFreitas's remaining Section 1983 claims seeking damages in *DeFreitas I* and *DeFreitas III*. [14] *See, e.g., Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir. 2000) (claims for monetary damages should not be dismissed under *Younger* abstention).

14    There is no demand for money damages in *DeFreitas II.* (*See* DeFreitas II, Compl. at 10.)

"There are limits as to how often the Court can be asked to review the same allegations against the same parties. That limitation is manifested in the doctrine of *res judicata.*" *Baker v. Supreme Ct. for N.Y.,* No. 12-CV-5757(BMC)(LB), 2013 WL 372005, at *1 (E.D.N.Y. Jan. 29, 2013) (citing

*Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993)). The doctrine of res judicata bars a plaintiff from litigating claims that were already raised or could have been raised in a prior action decided on the merits against the same defendants or their privies. *Brown Media Corp. v. K&L Gates, LLP,* 854 F.3d 150, 157 (2d Cir. 2017). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir. 2002) (per curiam) ("Once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the first action arose.") (alterations omitted).

**\*13**  A sua sponte dismissal of an IFP complaint is a "final judgment on the merits" for the purposes of res judicata. *Weir v. City of New York,* No. 18-CV-06095 (DG) (SIL), 2022 WL 292206, at *1, *4 (E.D.N.Y. Feb. 1, 2022), *aff'd,* 2023 WL 3001136 (2d Cir. Apr. 19, 2023); *Ates v. United States,* No. 20-CV-4334(JS)(AYS), 2020 WL 6202672, at *2, *4 (E.D.N.Y. Oct. 22, 2020) (dismissing IFP complaint on res judicata grounds based on prior, identical action). "[R]es judicata applies to pro se plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action." *Bey v. City of New York,* 454 F. App'x 1, 5–6 (2d Cir. 2011) (summary order) (citing *Cieszkowska,* 295 F.3d at 205–06). Further, "a district court may raise a *res judicata* issue *sua sponte.*" *Corley v. Farrell,* 833 F. App'x 908, 909 (2d Cir. 2021).

This Court has already dismissed DeFreitas's Section 1983 claims seeking money damages against DA Tierney, ADA Kubetz, Judge Senft, Rothman, and Fitzgerald with prejudice. (*See* DeFreitas I, M&O at 30.) The *DeFreitas I* SAC and the *DeFreitas III* Complaint re-allege the same claims that were raised and adjudicated on the merits in the *DeFreitas I* M&O. (*Compare* DeFreitas I, SAC at 13 and DeFreitas III, Compl. at 6 *with* DeFreitas I, M&O.) The doctrine of res judicata bars this attempt to relitigate claims that were raised and adjudicated in a prior action. *Brown,* 854 F.3d at 157. DeFreitas's new allegations in the *DeFreitas III* Complaint that "Kubetz did not provide a waiver of immunity in large print, bold type and light blue paper, nor did he or the foreperson of the grand jury read the waiver of immunity to him" (DeFreitas III, Compl. at 4) does not change this result because these issues could have been raised in the *DeFreitas I* Complaint and FAC. DeFreitas's claim in the *DeFreitas III* Complaint that such conduct deprived him of

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 35 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)
2024 WL 3392859

his rights—presumably his rights under the ADA and/or the Rehabilitation Act—are also barred by res judicata because "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska*, 295 F.3d at 205.

Thus, for the foregoing reasons, DeFreitas's money damages claims against DA Tierney, ADA Kubetz, Judge Senft, Suffolk County, Rothman, and Fitzgerald are precluded from further adjudication by res judicata and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). *See Griffin v. Carnes*, 72 F.4th 16, 21 (2d Cir. 2023) (per curiam) (affirming sua sponte dismissal under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) on res judicata grounds); *Salahuddin*, 992 F.2d at 449 (per curiam) (affirming sua sponte dismissal on res judicata grounds).

The Court reaches a different result, however, for DeFreitas's Section 1983 claims against Brocato, Sheriff Toulon, and Warden Franchi. DeFreitas alleges that, on December 1, 2023, Brocato was his new court appointed attorney. (DeFreitas III, Compl. at 5.) The Complaint and FAC in *DeFreitas I* were filed on July 24, 2023 and August 2, 2023, respectively—before Brocato began representing DeFreitas. (*See* DeFreitas III, Compl. at 5; *see also* DeFreitas I, Compl. and FAC.) Thus, DeFreitas could not have included his ineffective assistance of counsel claim against Brocato in the *DeFreitas I* Complaint or FAC and, accordingly, this claim is not precluded. This claim fails, however, because Brocato is not a state actor for reasons set forth below and thus is not subject to liability under Section 1983. (*See infra* at 33–34.)

**\*14** Similarly, DeFreitas's Section 1983 claims against Sheriff Toulon and Warden Franchi relating to the conditions of his confinement and the alleged deliberate indifference to his medical needs are not precluded. (*See* DeFreitas I, SAC at 11–12.) In *DeFreitas I*, the Court granted DeFreitas leave to amend such claims. (*See* DeFreitas I, M&O at 29–31.) For the reasons set forth below, these claims are not plausible. (*See infra* at 34–35.)

### III. Eleventh Amendment

In addition to res judicata, the Eleventh Amendment to the United States Constitution bars adjudication of DeFreitas's claims for money damages against Judge Senft, DA Tierney, and ADA Kubetz in the *DeFreitas I* SAC and the *DeFreitas III* Complaint. As the Court made clear in the *DeFreitas I* M&O, "Eleventh Amendment immunity [ ] extends to suits for money damages against state officials in their official

capacities." (DeFreitas I, M&O at 13 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.")).) As the Court has already determined, these defendants, "are properly considered arms of the state, in their official capacities." (DeFreitas I, M&O at 15–16.) Thus, DeFreitas's money damages claims against Judge Senft, DA Tierney, and ADA Kubetz are barred by the Eleventh Amendment. *Darcy v. Lippman*, 356 F. App'x 434, 436–37 (2d Cir. 2009) (holding that the Eleventh Amendment bars "claim[s] for damages against the individual defendants in their official capacities" as state officials); *Tsabbar v. Booth*, 115 F. App'x 513, 514 (2d Cir. 2004) ("[C]laims against the New York State Defendants, challenging the conduct of New York State judges, are barred by either the Eleventh Amendment to the United States Constitution or the doctrine of judicial immunity, or both."); *Torres v. Spota*, No. 19CV00296JMAGRB, 2019 WL 3035522, at *3 n.4 (E.D.N.Y. July 10, 2019) (noting that when a district attorney decides whether to prosecute, that person is representing the State and is entitled to invoke Eleventh Amendment immunity (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

For the foregoing reasons and those set forth in the *DeFreitas I* M&O, DeFreitas's Section 1983 claims for money damages against DA Tierney, ADA Kubetz, and Judge Senft in their official capacities in the *DeFreitas I* SAC and in the *DeFreitas III* Complaint are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (quotation marks omitted).

### IV. Absolute Immunity

Similarly, DeFreitas's money damages claims against the prosecutors—DA Tierney and ADA Kubetz—and Judge Senft are barred by absolute prosecutorial immunity and judicial immunity, respectively. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery ... because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Deronette v. City of N.Y.*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007). It is well-settled that "officials acting in a judicial capacity

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 36 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)
2024 WL 3392859

are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero*, 171 F.3d at 760; *see also Mireles, 502 U.S. at 9–10* ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (citations and quotation marks omitted). This immunity applies to state court judges who are sued in federal court pursuant to Section 1983. *See Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quotation marks omitted).

**\*15** Here, DeFreitas's allegations regarding Judge Senft relate to actions he took as a judge while presiding over the state criminal prosecution against DeFreitas. (*See generally* DeFreitas I, SAC; DeFreitas III, Compl.) As a result, any money damages claims against Judge Senft are barred by absolute judicial immunity. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) ("Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction.").

Similarly, prosecutors are entitled to absolute immunity from liability in suits seeking monetary damages for acts related to prosecutorial duties. *See Burns v. Reed*, 500 U.S. 478, 486, (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case ....") (quotation marks omitted); *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) ("Absolute immunity protects a prosecutor not only from liability but also from suit.") (quotation marks omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Kroemer v. Tantillo*, 758 F. App'x 84, 86–87 (2d Cir. 2018). Here, the challenged conduct of DA Tierney and ADA Kubetz (preparing and presenting an indictment to the Grand Jury), falls squarely within the scope of their prosecutorial duties. *See Ogunkoya*, 913 F.3d at 71 ("The decision to initiate prosecution, what charges to bring, and how to perfect and consolidate those charges is a quintessential prosecutorial function.") (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)); *see also Shmueli v. City of N.Y.*, 424 F.3d 231,

236–37 (2d Cir. 2005). Thus, DA Tierney and ADA Kubetz are entitled to absolute immunity with respect to DeFreitas's claims seeking monetary damages under Section 1983.

For the foregoing reasons, DA Tierney, ADA Kubetz, and Judge Senft enjoy absolute immunity from DeFreitas's claims seeking money damages in the *DeFreitas I* SAC and in the *DeFreitas III* Complaint, and such claims are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). *See, e.g.*, *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Because [the defendant, a state-court judge] was ... clearly entitled to judicial immunity, the district court did not err in *sua sponte* dismissing the claims against her as frivolous."); *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011) (per curiam) (finding frivolous "any claim against a prosecutor for initiating a prosecution or for presenting the State's case ... that is dismissed *sua sponte* on the ground of absolute prosecutorial immunity.") (quotation marks and citation omitted).

## V. State Action

In *DeFreitas I*, the Court made clear that "Section 1983 constrains only state conduct, not the acts of private persons or entities" and that "[a]ttorneys, whether court-appointed or privately retained, are generally not state actors for purposes of Section 1983." (DeFreitas I, M&O at 20–21 (quotation marks and citation omitted).) Yet DeFreitas again brings Section 1983 claims against the defense attorneys that he alleges were appointed by the state court to represent him in the underlying criminal prosecution: Rothman, Fitzgerald, and, for the first time, Brocato. (*See* DeFreitas I, SAC at 6–11; DeFreitas III, Compl. at 4–5.)

DeFreitas has ignored the Court's guidance that "[a] private actor may, however, be considered as acting under the color of state law for purposes of Section 1983 if the private actor was a 'willful participant in joint activity with the State or its agents.' " (DeFreitas I, M&O at 21 (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)).) The Court explained that, "[i]n order to state a Section 1983 conspiracy claim, a plaintiff must allege: '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.' " (DeFreitas I, M&O at 21 (quoting *Ciambriello*, 292 F.3d at 323–24).) Further the Court advised that " '[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.' " (DeFreitas I, M&O at

22 (quoting *Ciambriello*, 292 F.3d at 324).) Wholly absent from the SAC and the *DeFreitas III* Complaint are any facts sufficient to allege a plausible conspiracy claim or that any of these attorneys acted in concert with a state actor. (*See* DeFreitas I, SAC; DeFreitas III, Compl.)

**\*16** For these reasons and those set forth in the *DeFreitas I* M&O (*see* DeFreitas I, M&O at 20–22), DeFreitas's Section 1983 claims against his defense attorneys—Rothman, Fitzgerald, and Brocato—for alleged violations of his constitutional rights are not plausible because these Defendants are not state actors. These claims are thus dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1).

### VI. Personal Involvement and Supervisory Liability

Although DeFreitas again seeks to impose Section 1983 liability upon Sheriff Toulon and Warden Franchi, his allegations in the *DeFreitas I* SAC are insufficient to support plausible claims. As the Court explained in the *DeFreitas I* M&O: "the Second Circuit has made clear, in order 'to hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability.' " (DeFreitas I, M&O at 22 (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (alterations omitted)).

Like DeFreitas's earlier pleadings, the SAC lacks allegations of any conduct or inaction attributable to either of these individuals and it appears, again, that DeFreitas has brought Section 1983 claims against them solely due to the supervisory positions they hold. Indeed, DeFreitas alleges only that Sheriff Toulon and Warden Franchi are liable for "denying me access to the courts, providing me with no material to gain access to the court and not providing me with footwear that did not cause pain and denied me outside recreation for ten months." (DeFreitas I, SAC at 11.) "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, \*2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)). Thus, the Section 1983 claims against Sheriff Toulon and Warden Franchi in the *DeFreitas I* SAC fail to state a claim and are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1). *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (holding that a plaintiff proceeding under Section 1983 must allege facts showing the defendants' personal involvement in the alleged constitutional deprivation).

### VII. Municipal Liability

Although DeFreitas again names Suffolk County as a defendant in the *DeFreitas I* SAC and the *DeFreitas III* Complaint, he has not alleged a plausible claim for municipal liability in either pleading. (*See* DeFreitas I, SAC; DeFreitas III, Compl.) The Court's *DeFreitas I M&O* explained:

> In order to prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.' " *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

**\*17** (DeFreitas I, M&O at 25.) Once again, DeFreitas has not alleged any facts from which this Court could reasonably construe that the challenged conduct was undertaken pursuant to a municipal custom, policy, or practice. Thus, the claims against Suffolk County in the *DeFreitas I* SAC and the *DeFreitas III* Complaint are implausible, and are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1).

### VIII. Deliberate Indifference Claim

In granting DeFreitas leave to amend his conditions of confinement claim in *DeFreitas I*, the Court instructed as follows:

> DeFreitas shall name as defendants, to the best of his ability, the individuals personally involved in the challenged conduct or inaction concerning his neck, back, and foot issues. *See*

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 38 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

*Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (stating that plaintiff must show deliberate indifference on the part of a "particular defendant"). While pleading these facts, DeFreitas should specify what each individual defendant did or failed to do. The Court reminds DeFreitas that it is important to link the defendants named in the caption to the events described in the body of any Second Amended Complaint. If DeFreitas does not presently know the identity of any such individual, he shall name them as a "John Doe" or "Jane Doe" and describe such individuals including the date, time, and location of the alleged constitutional violation in which each John or Jane Doe defendant was involved.

(DeFreitas I, M&O at 29.) The SAC names Defendant "John Doe #1," an alleged SCCF podiatrist, and alleges only that, on "March 12, 2023 told the medical staff the county shoes hurt my feet check my medical history with the jail." (DeFreitas I, SAC at 2, 6.) Further, DeFreitas alleges that John Doe #1 "fail[ed] to timely order proper footwear and fail[ed] to prescribe adequate medical care although I made numerous visit, he gave me two separate cortisone injections and I've filed 3 seperate grievances." (*Id.* at 11–12.)

As a pretrial detainee, DeFreitas has a Fourteenth Amendment right to be free from unconstitutional conditions of confinement including the provision of inadequate medical care. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (recognizing that deliberate indifference claims of pretrial detainees are considered under the Fourteenth Amendment). In order to state a plausible constitutional claim for deliberate indifference to serious medical needs, a detainee must satisfy two prongs, an objective component and a subjective component. *Id.* at 29.

For the objective prong, a pretrial detainee "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* at 30 (quotation marks omitted). The alleged deprivation must be, in objective terms, "sufficiently serious, in the sense that a condition of urgency, one that may produce

death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects the individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702–03 (2d Cir. 1998).

**\*18** The subjective prong requires allegations that an official "knew, or should have known, that the condition posed an excessive risk to health or safety," and intentionally or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee." *Darnell*, 849 F.3d at 35. A challenge to medical care based on the inadvertent or negligent failure to provide adequate care does not raise a constitutional claim under the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Chance*, 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.").

DeFreitas's allegations fail to satisfy either prong. First, DeFreitas claims only that the "County shoes hurt[ ] my feet" and such shoes "cause pain." (DeFreitas I, SAC at 6, 11.) He also alleges that he was denied outside recreation time presumably because he did not have proper footwear. (*Id.* at 11.) "The case law overwhelmingly holds that 'prisoner complaints about ... foot problems do not establish the objective prong of the deliberate indifference standard.' " *Vazquez v. City of New York*, No. 21-CV-01573(PAE)(VF), 2022 WL 2704763, at \*7 (S.D.N.Y. June 17, 2022), *report and recommendation adopted*, No. 21-CV-1573(PAE)(VF), 2022 WL 2704469 (S.D.N.Y. July 11, 2022) (collecting cases). Indeed, " '[c]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious to satisfy the objective prong' of the deliberate indifference standard." *Cerilli v. Bysiewicz*, No. 21-CV-01738 (SALM), 2022 WL 844557, at \*4 (D. Conn. Mar. 22, 2022) (citing *Jones v. Ng*, No. 14-CV-01350(AJP), 2015 WL 998467, at \*7 (S.D.N.Y. Mar. 5, 2015)) (collecting cases).

Even if DeFreitas had alleged a sufficiently serious injury (which he has not), he has also failed to allege facts sufficient to satisfy the second prong of his deliberate indifference

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)
Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 39 of 93
2024 WL 3392859

claim. The *DeFreitas I* SAC lacks any facts suggesting that John Doe #1 "knew, or should have known, that the condition posed an excessive risk to health or safety," and intentionally or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee." *Darnell*, 849 F.3d at 35. To the contrary, DeFreitas alleges that he was given two separate Cortizone shots. (DeFreitas I, SAC at 12.) That DeFreitas disagrees with that course of treatment is insufficient to support a deliberate indifference claim. *Cerilli*, 2022 WL 844557, at *5 ("A claim based on an inmate's disagreement with the defendant's medical judgment as to the proper course of treatment cannot support a constitutional claim for deliberate indifference.").

Thus, DeFreitas's Section 1983 claim against John Doe #1 as set forth in the *DeFreitas I* SAC is not plausible and is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) (B)(i)–(ii), 1915A(b)(1).

## IX. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure, provides, in relevant part, that a complaint "must contain ... a short and plain statement of the grounds for the court's jurisdiction, ... a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1)–(2), (d)(1). Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against it. *See id.* "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

**\*19** Here, although the *DeFreitas I* SAC seeks to impose Section 1983 liability on an unidentified Suffolk County local criminal court judge, Doe, it fails to include allegations against this defendant that would render the claim plausible or comply with the minimal requirements of Rule 8. (DeFreitas I, SAC at 3, 5, 11.) Indeed, the only allegation against this defendant is that he "fail[ed] to arraign [DeFreitas] or inform [DeFreitas] of the superseding accusatory instrument." (DeFreitas I, SAC at 11.) Thus, as is readily apparent, DeFreitas has not alleged a plausible claim against Doe, and this claim is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

## X. Leave to Further Amend the Complaint

District courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in DeFreitas's claims seeking this Court's intervention in the pending state criminal prosecution cannot presently be cured by amendment, the Court declines to grant leave to amend these claims at this time.

Further, it would be futile to permit further amendment given that DeFreitas has failed to allege a plausible claim in any of his complaints—including after the opportunity to amend— or in his Petition. Nor has he followed any of the guidance that the Court provided in the *DeFreitas I* M&O. The Court therefore denies further leave to amend the *DeFreitas I* SAC, the *DeFreitas II* Complaint, the *DeFreitas III* Complaint, and the *DeFreitas IV* Petition. The Court shall administratively close *DeFreitas I* with leave to re-open upon conclusion of the underlying state court criminal proceedings in order to afford DeFreitas an opportunity to pursue his false arrest and/ or malicious prosecution claims if warranted at that time. (*See* DeFreitas I, M&O at 26–28.)

## CONCLUSION

For the reasons stated above, the Court grants DeFreitas's IFP applications (DeFreitas II, IFP Mots., ECF Nos. 6, 12; DeFreitas III, IFP Mot., ECF No. 2; DeFreitas IV, IFP Mots., ECF Nos. 2, 8) and denies DeFreitas's motion to amend the habeas petition (DeFreitas IV, Mot. to Am., ECF No. 8). Additionally, for the reasons stated above and in the *DeFreitas I* M&O, this Court dismisses the *DeFreitas I* SAC, the *DeFreitas II* and *DeFreitas III* Complaints, and the *DeFreitas IV* Petition pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) as follows: (1) the injunctive relief claims seeking this Court's intervention in the pending state criminal prosecution are dismissed without prejudice and without leave to amend at this time; and (2) the remaining Section 1983 claims against Defendants are dismissed without leave to amend. The Clerk of the Court shall enter judgment accordingly.

Given the dismissal of the *DeFreitas II* and *DeFreitas III* Complaints and the *DeFreitas IV* Petition, DeFreitas's remaining motions in those matters—(1) the proposed order to show cause seeking a temporary restraining order and a

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 40 of 93

DeFreitas v. Toulon, Not Reported in Fed. Supp. (2024)

2024 WL 3392859

preliminary injunction and a motion for the appointment of pro bono counsel in *DeFreitas II* (DeFreitas II, ECF Nos. 5, 7), (2) the proposed order to show cause seeking a temporary restraining order and preliminary injunction in *DeFreitas III* (DeFreitas III, ECF No. 3), and (3) the proposed order to show cause seeking a temporary restraining order and preliminary injunction in *DeFreitas IV* (DeFreitas IV, ECF No. 8)—are denied as moot.

In light of DeFreitas's ongoing criminal prosecution, the Clerk of the Court shall administratively close *DeFreitas I*, No. 2:23-cv-5933 (E.D.N.Y.), with leave to re-open upon conclusion of the underlying state court criminal proceedings in order to afford DeFreitas an opportunity to pursue his false arrest and/or malicious prosecution claims if warranted at that time. (*See* DeFreitas I, M&O at 26–28.) The Clerk of Court shall dismiss *DeFreitas II*, No. 2:24-cv-02368 (E.D.N.Y.), *DeFreitas III*, No. 2:24-CV-02918 (E.D.N.Y.), and *DeFreitas IV*, No. 2:24-cv-3394 (E.D.N.Y.), without leave to amend or reopen.

**\*20** The Clerk of the Court shall mail a copy of this Order to DeFreitas at his address of record, include the notation "Legal Mail" on the envelope, and note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). A certificate of appealability shall not be issued because DeFreitas has failed to make a substantial showing that he was denied any constitutional rights. *See* 28 U.S.C. § 2253(c)(1)(a).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3392859

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Horti Americas, LLC v. Jacob's Village Farm Corp., Not Reported in Fed. Rptr. (2022)

2022 WL 38719, 2022-1 Trade Cases P 81,935

2022 WL 38719
United States Court of Appeals, Second Circuit.

HORTI AMERICAS, LLC, Plaintiff-Appellant,
v.

JACOB'S VILLAGE FARM CORP., Jacob
Yusifov, aka Yakov Yosofov, aka Yakov
Yosofou, aka Yacov Yosofov, Shy S. Yosofov,
aka Steven Yosofov, aka Junior, aka Shai Yo,
Steven Produce King, Inc., Defendants-Appellees.

21-915-cv
|
January 5, 2022

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kuntz, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the matter is **REMANDED** to the district court for further proceedings consistent with this order.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Jeffrey M. Chebot, Whiteman, Bankes & Chebot, LLC, Philadelphia, PA.

FOR DEFENDANTS-APPELLEES: Kareem E. Abdo, The Law Office of Kareem E. Abdo, New York, NY.

PRESENT: JOHN M. WALKER, JR., RICHARD C. WESLEY, JOSEPH F. BIANCO, Circuit Judges.

## SUMMARY ORDER

**\*1** Plaintiff-Appellant Horti Americas, LLC ("Horti") appeals from the March 12, 2021 judgment of the United States District Court for the Eastern District of New York (Kuntz, *J.*) dismissing Horti's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The parties to this action are in the vegetable business. Horti sued Steven Produce King, Inc. ("SPK") and Shy Yosofov in a prior lawsuit ("*Horti I*") on February 22, 2016 for breach of contract, breach of fiduciary duty, and Perishable Agricultural Commodities Act ("PACA") violations.[1] Horti alleged that

SPK contracted to purchase forty pallets of cucumbers (also referred to as "Persian pickles") on a weekly basis, accepted nine shipments but never paid for them, and wrongfully rejected a tenth shipment.

[1]     PACA was enacted in 1930 to regulate the sale of perishable commodities. It requires licensing of all entities qualifying as merchants, dealers, and brokers in perishable agricultural commodities. 7 U.S.C. § 499c(a). Section 499e(c) to PACA imposes a trust upon perishable goods buyers comprised of their inventories and the proceeds from the sales of such inventories for the benefit of all unpaid sellers of agricultural commodities with whom they have transacted business. 7 U.S.C. § 499e(c)(2). Sellers of these commodities maintain a right to recover against the purchasers superior to all creditors, including secured creditors, through this trust. *See* 7 U.S.C. § 499e(c)(1); *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995).

During the prior litigation, Horti served its First Set of Requests for Admission on SPK and Shy pursuant to Federal Rule of Civil Procedure 36. SPK and Shy never answered the requests, however, and the district court (Glasser, *J.*) granted Horti's motion for sanctions based on their failure to respond. The sanctions order deemed the following statement admitted: "[Shy] Yosofov transferred to himself SPK's proceeds of produce sales in an amount greater than $143,455.00 plus interest and any attorney's fees due to Horti during the period when Horti was unpaid for the Persian pickles at issue." *Horti Americas, LLC v. Steven Produce King, Inc.*, No. 16CIV889ILGRER, 2017 WL 398374, at \*2 (E.D.N.Y. Jan. 30, 2017). The district court later granted Horti's motion for summary judgment and awarded $143,455 in PACA trust benefits, $7,750 for breach of contract, and attorneys' fees.

Horti filed this action ("*Horti II*") in April 2019, alleging fraudulent conveyance, successor liability, de facto merger, violations of trust obligations under PACA, and RICO violations. The defendants, in addition to Shy and SPK, included Shy's father, Jacob Yosofov, and an entity he controls, Jacob's Village Farm Corporation ("JVF"). Horti alleged that after it filed the *Horti I* complaint, the defendants transferred all assets and funds out of SPK and into JVF to evade SPK's liabilities, including the judgment in the earlier action. Defendants successfully moved to dismiss the *Horti II* complaint, arguing that it was barred by *res*

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 42 of 93

Horti Americas, LLC v. Jacob's Village Farm Corp., Not Reported in Fed. Rptr. (2022)

2022 WL 38719, 2022-1 Trade Cases P 81,935

*judicata* because its claims should have been raised in the first action; the district court granted the motion. The district court concluded that the post-complaint transfer of SPK's assets to JVF was resolved in a final judgment on the merits in the previous litigation. It based this conclusion on Judge Glasser's sanctions order and his reference to that order in his decision granting summary judgment on the 2016 claims.

**\*2** On appeal, Horti argues that the district court applied an incorrect *res judicata* standard and erred in holding that the claims in *Horti II* were litigated in *Horti I*. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to vacate and remand. [2]

[2]       Horti has filed a separate motion seeking to have the Court take judicial notice of documents filed in *Horti I* in connection with discovery. Because we may take judicial notice of documents filed in the district court for purposes of analyzing a *res judicata* issue, the motion is granted. *See AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003).

### I. *Res Judicata* [3]

[3]       The standard of review is not in dispute. We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). We likewise review de novo a dismissal on *res judicata* grounds. *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018).

*Res judicata* is an equitable doctrine providing that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021) (citation omitted). For *res judicata* to bar a subsequent lawsuit, four requirements must be satisfied: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Id.* We conclude that these requirements were not met in the instant

case and the district court incorrectly dismissed Horti's claims as barred by *res judicata*.

At least some of the claims asserted in *Horti II* are not precluded by *Horti I* because they do not present the "same cause of action" asserted, or that could have been asserted, in the first action. *See id.* When analyzing the "same cause of action" requirement, we look to whether both lawsuits "arise from the same transaction, or involve a common nucleus of operative facts." *Cayuga Nation v. Tanner*, 6 F.4th 361, 375 (2d Cir. 2021) (citations omitted). We consider "whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (internal quotation marks and citation omitted). *Res judicata* bars not only the parties and their privies from relitigating claims that were actually raised in the previous action, but also claims that "could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (citation omitted).

The timeframe for assessing claims that could have been raised during the prior litigation ends when the complaint in that action is filed. "For the purposes of res judicata, '[t]he scope of litigation is framed by the complaint at the time it is filed.' " *Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 369–70 (2d Cir. 1997) (quoting *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984)). [4] In *SEC v. First Jersey Securities, Inc.* we stated:

> **\*3** If a defendant engages in actionable conduct after a lawsuit is commenced, the plaintiff may seek leave to file a supplemental pleading to assert a claim based on the subsequent conduct. *See* Fed. R. Civ. P. 15(c). But he is not required to do so, and his election not to do so is not penalized by application of res judicata to bar a later suit on that subsequent conduct[.]

101 F.3d 1450, 1464 (2d Cir. 1996). We added that "[i]f the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." *Id.*

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 43 of 93

Horti Americas, LLC v. Jacob's Village Farm Corp., Not Reported in Fed. Rptr. (2022)

2022 WL 38719, 2022-1 Trade Cases P 81,935

4

We have repeated this principle a number of different ways. *See id.* ("Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced ... he is not required to do so.") (collecting authorities); *Proctor v. LeClaire,* 715 F.3d 402, 412 (2d Cir. 2013) ("[a]cts committed after the filing of the complaint are not within the scope of the plaintiff's claim" for *res judicata* purposes).

The district court applied the wrong *res judicata* standard below. It wrote that "in their statement of 'Operative Facts,' Plaintiff only presents one fact occurring *after the prior judgment:* 'To date, Plaintiff has not been paid the sums due pursuant to the judgement [*sic*].' " J.A. at 51 (emphasis added). But Horti is not required to plead facts occurring after the prior judgment to support its new claims—only facts occurring after the filing of the prior *complaint. First Jersey Sec.,* 101 F.3d at 1464. The district court repeated this mistake later on:

> Plaintiff repeatedly points to SPK transferring most of its assets to JVF. [2019] Complaint. ¶¶ 66, 73, 91, 97. However, Plaintiff later specifies these transactions occurred 'between the spring of 2016 and February 2017,' *i.e. while the parties were litigating the 2015 Contract.*

J.A. a 51 (emphasis added). Horti had the *option* of amending its complaint to encompass these claims, but its failure to do so did not give rise to a *res judicata* bar. *First Jersey Sec.,* 101 F.3d at 1464.

The complaint in *Horti I* (filed on February 22, 2016) raised claims for breach of contract, breach of fiduciary duty, and PACA trust violations against SPK and Shy. The breach of contract claim related to the delivery of cucumbers. The breach of fiduciary duty and PACA claims alleged that the defendants transferred PACA Trust Fund assets to unnamed "third parties" in violation of their statutory duty to maintain those assets for the plaintiff's benefit. *See* Complaint at 7–14, *Horti Americas, LLC v. Steven Produce King, Inc.*, et al., No. 16-cv-889 (E.D.N.Y. Feb. 22, 2016) (the "*Horti I* Complaint").

The second complaint raises separate allegations (many occurring after the complaint was filed in *Horti I*) supporting new claims. According to the complaint, on November 22, 2016, the USDA suspended SPK's PACA license—

effectively barring it from operating in the produce industry —for failing to pay a reparation award it had granted against SPK in favor of another produce supplier. It also prohibited Shy from affiliating with the business operations of any PACA licensee, with or without compensation. On January 25, 2017, the USDA reissued a PACA license to JVF with Jacob Yosofov listed as its president, sole owner, and director (both JVF and Jacob had previously been suspended from operating in the produce industry for PACA violations). Despite his USDA bar, Shy allegedly affiliated with JVF in violation of PACA after its license was reissued. Horti claims that JVF continued the business operations of SPK "at the same location with identical management, employees, equipment and customers, and the same phone and fax numbers." J.A. at 18.

**\*4** The claims asserted in the *Horti II* complaint are based in significant part on these events (and others) occurring after February 2016. Count I of the *Horti II* complaint is for fraudulent conveyance under Section 276 of New York's Debtor and Creditor Law and raises a claim only against Defendant JVF. [5] Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DCL § 276. [6] It creates a cause of action to void intentional fraudulent conveyances. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). Count I asserts that "Defendant SPK transferred its assets to Defendant JVF for inadequate or no consideration in 2016 or 2017, except certain trucks retained by Defendant SPK to operate a freight business solely benefitting Defendant JVF's wholesale produce supply business and the Yosofov family enterprise." J.A. at 18. This purported transfer goes beyond the limited transfer of PACA Trust Fund monies alleged in the first action by encompassing all of SPK's assets save certain vehicles.

5

New York enacted a version of the Uniform Voidable Transactions Act ("UVTA") on April 4, 2020, which replaced the Debtor and Creditor Law, including the provisions related to fraudulent conveyances. *See* Uniform Voidable Transactions Act, ch. 580, sec. 2, §§ 270–281, eff. April 4, 2020. The UVTA is not retroactive; the transfer in this case is still governed by the old Debtor and Creditor Law.

Case 5:25-cv-00935-AMN-TWD   Document 8   Filed 10/14/25   Page 44 of 93

Horti Americas, LLC v. Jacob's Village Farm Corp., Not Reported in Fed. Rptr. (2022)
2022 WL 38719, 2022-1 Trade Cases P 81,935

6       These citations are to the old version of the Debtor and Creditor Law.

Count II of the *Horti II* complaint states a claim for constructive fraudulent conveyance against only JVF under N.Y. DCL §§ 273–275. These sections of the Debtor and Creditor Law create causes of action against conveyors who are insolvent, N.Y. DCL § 273, possess unreasonably small capital after a transaction, N.Y. DCL § 274, and who intend or believe that they will incur debts beyond their ability to pay, N.Y. DCL § 275. Count II alleges, *inter alia*, that "Defendant SPK's transfer of assets to Defendant JVF was part of a scheme engineered by Defendants [Jacob] and JVF, with the participation of Defendants Shy and SPK, to circumvent PACA sanctions and avoid payment of the debts of Defendant SPK, including the Judgment in favor of Plaintiff." J.A. at 19 (emphasis added). These claims are different from those in *Horti I*, are stated against a different defendant, and are premised on facts occurring after the filing of the complaint in that action.

Count III asserts a conspiracy to commit fraudulent conveyance against JVF and Jacob and alleges "an agreement" with Shy and SPK "to circumvent USDA sanctions under PACA and not pay creditors of their family wholesale produce business, including, without limitation, by means of transferring the assets of Defendant SPK to Defendant JVF for inadequate or no consideration in 2016 or early 2017." J.A. at 20. Counts V – VII state three forms of successor liability against JVF based upon the alleged fraudulent transfer of SPK's assets. Counts I – III and Counts V – VII all assert different causes of action than those raised in *Horti I* and are premised upon facts arising after the complaint in that action was filed.

New causes of action arising during an earlier litigation can have claim preclusive effect if they were fully litigated in that action. The district court seems to have believed that was the case here. It wrote that "Plaintiff had an opportunity to litigate these fraudulent transfer allegations and *did so.*" J.A. at 51 (emphasis added). As the basis for this conclusion, it cited Judge Glasser's imposition of discovery sanctions on SPK and Shy and the summary judgment order's reference to those sanctions in the 2016 litigation.

The district court's reading of Judge Glasser's order is in error. The sanctions order does not mention the purportedly fraudulent transfers from SPK to JVF. Instead, it finds that Shy had transferred an amount greater than $143,455.00 to

*himself.* There is no allegation that Shy siphoned assets from SPK to himself and then passed them on to JVF. In fact, JVF was not a party to the 2016 litigation, is not mentioned in the *Horti I* complaint, and does not appear in either the sanctions order or the order granting summary judgment. *See Kane v. Nat'l Farm Wholesale Fruit & Vegetable Corp.*, No. 16 CIV. 549 (LLS), 2016 WL 3580489, at *2 (S.D.N.Y. June 24, 2016) (finding no claim preclusion where the plaintiff had previously sued one of two defendants named in a later action in part because the second defendant "played no part" in the earlier action, and "was not a defendant" there, and "was not even mentioned in the complaint.").

**\*5** The purported fraudulent transfer to JVF is a "subsequent transaction" within the meaning of *First Jersey Securities, 101 F.3d at 1464.* The claims asserted in *Horti II* alleging a fraudulent transfer from SPK to JVF were not litigated in *Horti I* and are independent of the underlying contract claims between the parties. The *Horti II* claims allege fraudulent transfers down a line of alleged conspirators who sought to hide assets of the debtor to avoid the debt and later to avoid the judgment that memorialized that debt. They represent a separate basis for liability against parties not named in the first action.

To the extent that the defendants argue that Horti knew sufficient facts in 2016 to allege the fraudulent conveyance in its first complaint, that argument is unavailing. It is the defendants' burden to point to facts in support of a *res judicata* defense. *See Altai, Inc.*, 126 F.3d at 369 ("The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action."). They have failed to do so here. To the contrary, they deliberately ignored relevant discovery requests in *Horti I* and were sanctioned for it. Any ambiguity on the question does not inure to the defendants' benefit.

Accordingly, we conclude that the district court incorrectly determined that *res judicata* bars Horti's claims.

* * *

We **VACATE** the judgment of the district court and **REMAND** for proceedings consistent with this order.

## All Citations

Not Reported in Fed. Rptr., 2022 WL 38719, 2022-1 Trade Cases P 81,935

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 45 of 93

**Horti Americas, LLC v. Jacob's Village Farm Corp., Not Reported in Fed. Rptr. (2022)**
2022 WL 38719, 2022-1 Trade Cases P 81,935

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3592153

2023 WL 3592153
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Erika LEE, Plaintiff,
v.
DELTA AIR LINES, INC., Defendant.

22-CV-08618 (GHW) (RWL)
|
Signed April 26, 2023

**Attorneys and Law Firms**

Erika Lee, New York, NY, Pro Se.

Megan Sarah Goddard, Goddard Law PLLC, New York, NY,
for Plaintiff.

Jonathan Michael Weinberg, Ira G. Rosenstein, Morgan
Lewis & Bockius, LLP, New York, NY, for Defendant.

**REPORT AND RECOMMENDATION TO HON.
GREGORY H. WOODS: MOTION TO DISMISS**

ROBERT W. LEHRBURGER, United States Magistrate
Judge.

**\*1** Plaintiff Erika Lee ("Plaintiff" or "Lee"), proceeding
pro se, asserts claims and seeks damages for negligence,
negligence per se, defamation, defamation per se, intentional
infliction of emotional distress, breach of contract, sexual
battery, and violations of both the New York State Human
Rights Law ("NYSHRL") and the New York City Human
Rights Law ("NYCHRL"), against her former employer,
Defendant Delta Air Lines, Inc. ("Defendant" or "Delta").
Lee alleges that, while employed at Delta, she was subjected
to discrimination, sexual and racial harassment, sexual
assault, retaliation, and a hostile work environment. Delta has
moved for dismissal pursuant to Rule 12(b)(6) of the Federal
Rules of Civil Procedure on res judicata grounds based on the
dismissal of a lawsuit Lee previously filed in California. For
the reasons that follow, the motion should be DENIED.

**FACTUAL BACKGROUND**

As required on a motion to dismiss pursuant to Rule 12(b)(6),
the Court takes the facts alleged in the Amended Complaint
("AC") [1] as true and draws all reasonable inferences in favor
of Plaintiff, as the non-moving party. [2]

[1]     "AC" refers to the Amended Summons and
        Complaint, attached as Ex. 2 to Notice of Removal
        dated October 11, 2022 at Dkt. 1-2.

[2]     See *Morrison v. National Australia Bank Ltd.*, 547
        F.3d 167, 170 (2d Cir. 2008).

Lee began working for Delta in September 2005 as a customer
service agent. (AC ¶ 4.) Between 2017 and 2020, Lee alleges,
she was sexually and racially harassed, as well as sexually
assaulted, by Delta Manager Bernadette Tomasi ("Tomasi").
(AC ¶ 7.) Lee also claims that, in 2021, Delta repeatedly
denied her requests for reasonable accommodations for
her disabilities of mobility impairment, depression, anxiety,
PTSD, and obesity. (AC ¶¶ 41-42, 57.)

In April 2019, Lee filed a formal complaint with Delta's
Human Resources & Equal Opportunity Department. (AC
¶¶ 8-9.) According to Lee, immediately after making her
complaint, she was suspended by Delta without pay for
two weeks. (AC ¶ 10.) Lee claims that Tomasi's harassment
and assault continued after her return from suspension. (AC
¶¶ 11-14.) But fearing another suspension without pay or
termination, Lee did not file another formal complaint with
Delta between 2019 and 2020. (AC ¶ 15.)

On February 19, 2021, Delta's New York Human Resources
Manager David Needham ("Needham") called Lee asking
about a 2020 incident in which Tomasi had allegedly
"spanked" Lee. (AC ¶ 16.) Lee responded that, regardless of
whether Tomasi spanked her, she "had not reported this to
anyone at Delta and did not want to report it to anyone at Delta
since [she] was threatened with suspension and termination
by Delta in April 2019 if she made any more complaints." (AC
¶ 17.)

Nonetheless, on March 25, 2021, Lee filed another formal
complaint with Delta for sexual and racial harassment, which
included the allegation that she was spanked, and requested
reasonable accommodation. (AC ¶¶ 17-18.) From March 26,
2021 through June 16, 2021, Lee was suspended without
pay. (AC ¶ 21.) On June 17, 2021, Delta terminated Lee's
employment, stating that it had "lost trust in [her] ability to
perform [her] duties in a manner consistent with [its] policies

2023 WL 3592153

and expectations, including the expectation of candor in [her] relations with Delta" and citing her "failure to cooperate" with investigations and intentional misrepresentations of conversations with Delta personnel. (AC ¶¶ 29, 32; *see also* AC, Ex. B.)

**PROCEDURAL BACKGROUND**

**A. The *Lee I* Action**

**\*2** On September 21, 2020, Lee, proceeding pro se, filed suit against Delta and two of its employees in the United States District Court for the Central District of California, asserting claims for alleged violations of Title VII of the Civil Rights Act of 1963 ("Title VII"), 42 U.S.C. § 1981 ("Sec. 1981"), the California Fair Employment and Housing Act ("FEHA"), and the Americans with Disabilities Act ("ADA") arising from her employment with Delta. *See Erika L. Lee v. Delta Air Lines Inc. et al.*, No. 2:20-CV-8754 (C.D. Cal.) ("*Lee I*"). On December 28, 2020, Lee filed a 39-page First Amended Complaint ("1stAC") which asserted fourteen causes of action: (1) race, color, disability, and sex discrimination in violation of Title VII, ADA, FEHA, and Sec. 1981; (2) hostile work environment; (3) retaliation in violation of the Family and Medical Leave Act ("FMLA"); (4) failure to prevent discrimination, harassment, and retaliation; (5) intentional infliction of emotional distress ("IIED"); (6) negligent hiring, supervision, and retention; (7) violations of Title VII; (8) race discrimination under Sec. 1981; (9) failure to interact under FEHA and ADA; (10) failure to accommodate under FEHA and ADA; (11) violations of FMLA and the California Family Rights Act ("CFRA"); (12) aiding and abetting; (13) violation of Civil Code § 52.1; and (14) violation of Civil Code § 1102.5. (*Lee I*, Dkt. 11.) Lee's 1stAC was single-spaced, typed in smaller than size 14 font, included handwritten notations, and totaled 54 pages with exhibits. (*Lee I*, Dkt. 11.)

On February 22, 2021, Delta moved to dismiss the 1stAC as "shotgun pleading" in violation of Federal Rule of Civil Procedure 8 ("Rule 8") and for failing to state a claim under Rule 12(b)(6). (*Lee I*, Dkt. 22.) On March 8, 2021, Lee filed a Second Amended Complaint, which the court struck since Lee had neither obtained Delta's written consent nor leave from the court to file another amended complaint. (*Lee I*, Dkts. 28-29.)

On June 2, 2021, the California court granted in part and denied in part Delta's Motion to Dismiss Lee's 1stAC with leave to amend as to certain causes of action (the "June 2021

Order"). [3] (*Lee I*, Dkt. 56.) Although the court declined to dismiss the 1stAC pursuant to Rule 8 given Lee's pro se status, it noted that "the majority of [Lee's] factual allegations are pled in paragraphs 16 through 210 of the [1st]AC spanning over 25 pages of single-spaced text in small font, and do not refer to a particular cause of action. Therefore, as pled, it is difficult to determine which allegations support which of the fourteen causes of action asserted by [Lee]." (*Lee I*, Dkt. 56 at 5-6.) Accordingly, the court ordered that "[a]ny second amended complaint filed by [Lee] shall comply with all applicable rules, including but not limited to [Rule] 8 (a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' and '[e]ach allegation must be simple, concise, and direct') and Local Rule 11-3 (requiring 14-point font and double-spaced lines for pleadings)." (*Lee I*, Dkt. 56 at 30.)

3    The court granted Delta's Motion to Dismiss with respect to Lee's claims for: (1) violation of Title VII and ADA with prejudice as time-barred; (2) FEHA race discrimination and hostile work environment without leave to amend for lack of subject matter jurisdiction; (3) failure to prevent race discrimination and a hostile work environment without leave to amend for lack of subject matter jurisdiction based on Lee's failure to exhaust her administrative remedies; (4) FEHA disability discrimination for failure to state a claim with leave to amend; (5) failure to accommodate due to failure to state a claim but with leave to amend; (6) intentional infliction of emotional distress as related to certain misconduct with prejudice as time-barred; (7) negligent hiring, supervision, and retention as time-barred and for failure to state a claim with leave to amend; (9) FMLA and CFRA interference and retaliation for failure to state a claim but with leave to amend; (10) aiding and abetting for failure to state a claim but with leave to amend; (11) violation of Civil Code § 52.1 for failure to state a claim but with leave to amend; (12) violations of state law with prejudice to the extent they are predicated on alleged conduct that occurred outside of California. (*See Lee I*, Dkt. 56; *see also Lee I*, Dkt. 90 at 2-3)

The court denied Delta's Motion to Dismiss Lee's claims for: (1) failure to prevent sex and disability discrimination; (2) failure to engage in interactive process under FEHA; (3) intentional infliction of emotional distress based on alleged conduct that

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 48 of 93

2023 WL 3592153

occurred in 2019; and (4) violation of California Labor Code § 1102.5. (*See Lee I,* Dkt. 56; *see also Lee I,* Dkt. 90 at 2-3.)

**\*3** On June 4, 2021, Lee filed a motion for reconsideration of the court's June 2021 Order. (*Lee I,* Dkt. 57.) On June 16, 2021, Lee filed a 99-page Third Amended Complaint ("3rdAC"), asserting fourteen causes of action: (1) defamation per se; (2) hostile work environment in violation of Cal. Gov't Code § 12900, et seq, Title VII, FEHA, and Sec. 1981; (3) retaliation in violation of Title VII, ADA, Sec. 1981, FMLA, and CFRA; (4) failure to prevent discrimination, harassment, and retaliation (Cal. Gov't Code § 12900, et seq); (5) intentional infliction of emotional distress; (6) negligent hiring, supervision, and retention; (7) discrimination on the basis of race, color, disability, and sex in violation of Cal. Gov't Code § 12900, et seq, Title VII, ADA, and FEHA; (8) interference and impairment of employment contract in violation of Sec. 1981; (9) failure to interact in violation in violation of Cal. Gov't Code § 12940(n); (10) failure to accommodate in violation of ADA, Cal. Gov't Code § 12940(m)(1), and SB 400, 98.7, 230, and 230.1; (11) interference and retaliation in violation of FMLA and CFRA; (12) violations of Civil Code § 52.1; (13) violations of Labor Codes §§ 1102.5, 230 & 230.1, Cal. Gov't Code § 12945.2, 2 Cal. Code Regs. tit. 2, § 11069(c) & (d)(1), Cal. Gov't Code § 12926(p), Cal. Code Regs. tit. 2, § 11065(p)(2); and (14) violation of Labor Code § 96(k). (*Lee I,* Dkt. 62.) The 3rdAC was again single-spaced, typed in smaller than size 14 font, included numerous handwritten notations, and spanned 286 pages including exhibits.

On August 23, 2021, the court granted in part and denied in part Lee's motion for reconsideration for the June 2021 Order and issued an amended order (the "Amended Order"). [4] (*Lee I,* Dkt. 91.) The Amended Order again directed Lee that "[a]ny second amended complaint filed by Plaintiff shall comply with all applicable rules, including but not limited to [Rule] 8 (a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' and '[e]ach allegation must be simple, concise, and direct') and Local Rule 11-3 (requiring 14-point font and double-spaced lines for pleadings)." (*Lee I,* Dkt. 91 at 30.)

[4]     The court found that Lee's Title VII and ADA claims were not time-barred based on a late-submitted U.S. Equal Employment Opportunity Commission ("EEOC") right-to-sue notice and that her IIED claim should be dismissed without

prejudice to provide her with an opportunity to allege facts showing that equitable tolling applies based on her alleged workers' compensation claim. (*Lee I,* Dkt. 91.)

On October 8, 2021, Delta filed a motion to dismiss the 3rdAC pursuant to Rules 8 and 12(b)(6). (*Lee I,* Dkt. 121.) Prior to ruling on the motion, the court held a conference at which it ordered Lee to contact the Pro Se Clinic to discuss her case and to file a declaration on whether she sought further opportunity to amend. (*Lee I,* Dkt. 129.) Lee submitted her declaration on January 10, 2022, indicating that she had reviewed the pro se guidelines, met with the Pro Se Clinic about the substance and formatting of future amendments, and would be ready to file and serve an amended complaint after January 17, 2022. (*Lee I,* Dkt. 134.)

On January 18, 2022, the court granted Delta's Motion to Dismiss the 3rdAC. (*Lee I,* Dkt. 139.) In so-ordering, the court stated that the 3rdAC was "286 pages long, single spaced, and typed in smaller than 14-point font" in violation of Rule 8, Local Rule 11-3, and the Amended Order, and included 519 paragraphs of allegations in one section, rendering it "difficult to determine which allegations support which of the fourteen causes of action asserted." (*Lee I,* Dkt. 139 at 8-9.) Even so, the court gave Lee the opportunity to file a Fourth Amended Complaint ("4thAC") "which complies with [Rule] 8, Local Rule 11-3, and the Court's Amended Order" and which "shall identify the specific factual allegations in support of the specific cause of action, and shall not assert new causes of action nor assert claims which were dismissed without leave to amend or with prejudice in the [ ] Amended Order." (*Lee I,* Dkt. 139 at 10.)

On January 25, 2022, Lee filed her 4thAC, which was 100 pages long excluding exhibits, 411 pages including exhibits, and asserted ten causes of action: (1) discrimination (FEHA, Title VII, Sec. 1981, and ADA); (2) retaliation (FEHA, Title VII, Sec. 1981, ADA); (3) interference and retaliation (FMLA and CFRA); (4) intentional infliction of emotional distress; (5) negligent hiring, supervision, and retention; (6) failure to engage and reasonably accommodated (S.B. 400(1), Cal. Labor Code § 2301(f)(1)); (7) failure to prevent sex and disability discrimination; (8) Civil Code §§ 51.9, 52.1; (9) harassment and hostile work environment (Sec. 1981, Title VII, and ADA); and (10) whistleblower retaliation (Cal. Labor Code § 1102.5.) (*Lee I,* Dkt. 145.)

**\*4** On March 15, 2022, Delta filed a motion to dismiss the 4thAC with prejudice under Rules 8 and 41(b). (*Lee I,* Dkt.

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

Case 5:25-cv-00935-AMN-TWD   Document 8   Filed 10/14/25   Page 49 of 93

151.) On May 13, 2022, the court granted Delta's motion and dismissed the entire action for failure to comply with Rule 8 and pursuant to Rule 41(b) without leave to amend (the "*Lee I* Dismissal Order"). (*Lee I*, Dkt. 157 at 13-15.) Notably, the court's order did not state whether the dismissal was with or without prejudice, nor if it operated as an adjudication on the merits.

On May 23, 2022, Delta filed a Proposed Judgment in light of the court's dismissal order. (*Lee I*, Dkt. 158.) On May 23 and 24, 2022, Lee filed three motions for reconsideration of the court's dismissal order. (*Lee I*, Dkts. 162-64.) On August 3, 2022, the court denied Lee's motions for reconsideration (the "*Lee I* Reconsideration Order"). (*Lee I*, Dkt. 173.) In that same order, the court stated that it would not enter Delta's Proposed Judgment. Although the court noted that its dismissal of the 4thAC was "a final, appealable order," it **"was not an adjudication on the merits"** and, thus, "entry of a separate judgment ... is unnecessary." (*Lee I*, Dkt. 173 at 6 (emphasis added).)

**B. The Instant Action**
On June 13, 2022, while her motions for reconsideration in *Lee I* were pending, Lee commenced the instant action by filing a complaint in the Supreme Court of the State of New York, County of New York ("*Lee II*"). [5] (Dkt. 1-1.) Lee seeks $60 million in damages and asserts fourteen claims: (1) intentional race discrimination in violation of NYSHRL (N.Y. Exec. Law § 296); (2) intentional race discrimination in violation of NYCHRL; (3) intentional gender discrimination, sexual harassment, and hostile work environment in violation of NYCHRL N.Y.C. Admin. Code §§ 8-107(1); (4) retaliation in violation of NYCHRL; (5) retaliation in violation of NYSHRL (N.Y. Exec. Law § 296); (6) breach of contract; (7) failure to accommodate in violation of NYCHRL N.Y.C. (Admin Code §§ 8-101, et seq.); (8) failure to engage in cooperative dialogue in violation of NYCHRL (N.Y.C. Admin. Code § 8-107); (9) defamation; (10) defamation per se; (11) negligence; (12) negligence per se; (13) intentional infliction of emotional distress; and (14) sexual battery and battery. (Dkt. 1-2 ¶¶ 35, 57-187.) Lee's complaint totals 35 pages excluding exhibits and 70 pages including exhibits. In comparison with her filings in *Lee I*, Lee's complaint in the instant action is shorter and better organized; for example, each independent cause of action is isolated in its own section that includes the relevant facts and law.

[5] Lee initiated the New York action, Index. No. 100593-2022, pro se. On October 27, 2022, counsel appeared on behalf of Lee. (Dkt. 11.) On January 31, 2023, however, Lee's counsel moved to withdraw. (Dkts. 30-32.) The Court granted the motion to withdraw on February 2, 2023. (Dkt. 36.) Since then, Lee has proceeded pro se.

On October 11, 2022, Delta removed the New York state action to this Court. (Dkt. 1.) Following pre-motion correspondence (Dkts. 7-18), Delta filed the instant motion on January 11, 2023, seeking to dismiss the case with prejudice pursuant to Rule 12(b)(6) exclusively on res judicata grounds. (Dkts. 25-26.) On January 21, 2023, Lee responded to Delta's motion, requesting to convert the motion to dismiss into a Rule 56 motion for summary judgment. (Dkt. 27.) Delta replied on March 17, 2023, at which time the motion was fully briefed. (Dkt. 44.) The matter has been referred to me for a Report and Recommendation. (Dkt. 10.)

## LEGAL STANDARDS

**A. Motion to Dismiss on Res Judicata Grounds**
 **\*5**  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

"*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). "Res judicata [or claim preclusion] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding." *Perez v. Danbury Hospital*, 347 F.3d 419, 426 (2d Cir. 2000) (quoting *Monahan v. New York City Department of Corrections*, 214 F.3d 275, 284-85 (2d Cir. 2000)); *Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 50 of 93

2023 WL 3592153

previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' " *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan*, 214 F.3d at 284-85); *see also Truong v. Hung Thi Nguyen*, No. 10-CV-386, 2011 WL 1198254, at *3 (S.D.N.Y. March 3, 2011).

### B. Review Of *Pro Se* Pleadings

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau Of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). "[T]he Second Circuit, as a general matter, is solicitous of *pro se* litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice." *Massie v. Metropolitan Museum of Art*, 651 F. Supp.2d 88, 93 (S.D.N.Y. 2009); *see also Weixel v. Board of Education*, 287 F.3d 138, 141 (2d Cir. 2002) (reversing dismissal where district court failed to construe pro se plaintiff's complaint liberally); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel.").

That said, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (internal quotation marks omitted). "Notwithstanding the liberal pleading standards afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Torres v. Blackstone Group*, No. 18-CV-6434, 2019 WL 4194496, at *2 (S.D.N.Y. Sept. 3, 2019), *aff'd*, 836 F. App'x 49 (2d Cir. 2020) (internal quotation marks omitted).

### DISCUSSION

Delta seeks dismissal solely on the grounds that this action is barred by res judicata based on *Lee I*. In response, Lee first argues that Delta's 12(b)(6) motion should be converted to a Rule 56 motion for summary judgment. Lee then contends that Delta has not met the required elements for res judicata. The Court begins by addressing Lee's conversion request, and then proceeds to discussion of the res judicata issue.

### I. Conversion To A Rule 56 Motion Is Unwarranted

**\*6** Lee argues that Delta's motion to dismiss should be converted into a Rule 56 summary judgment motion because Delta "failed to meet it[s] burden of proof by failing to provide any authenticated court documents." (Pl. Mem. at 2. [6] ) That argument fails because it overlooks what the Court may properly consider on a motion to dismiss.

[6]  "Pl. Mem." refers to Lee's Response To Defendant's Motion To Dismiss; Request For Notice Of Conversion To Rule 56 Motion, at Dkt. 27.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When evaluating a Rule 12(b)(6) motion, however, courts can "consider any matter of which the court is permitted to take judicial notice without converting the motion to a Rule 56 motion for summary judgment." *Bey v. City of New York*, No. 99-CV-3873, 2010 WL 3910231, at *3 (S.D.N.Y. Sept. 21, 2010). Matters of which the Court takes judicial notice include "matters of public record, such as pleadings and court orders from prior litigation between the parties." *Reisner v. Stoller*, 51 F. Supp.2d 430, 440 (S.D.N.Y. 1999). "[T]he Court may therefore consider them when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Pearson Capital Partners LLC v. James River Insurance Company*, 151 F. Supp.3d 392, 401 (S.D.N.Y. 2015).

As particularly relevant here, courts can entertain a res judicata defense on a Rule 12(b)(6) motion "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *Spoleto Corporation v. Ethiopian Airlines Group*, No. 21-CV-5407, 2022 WL 329265, at *5 (S.D.N.Y. Feb. 3, 2022), *aff'd* 2022 WL 17574469 (2d Cir. Dec. 12, 2022); *see also McKoy v. Henderson*, No. 05-CV-1535, 2007 WL 678727, at *6 (S.D.N.Y. March 5, 2007) ("When a motion to dismiss is premised on the doctrine of *res judicata* a court is permitted to take judicial notice of and consider the complaints and record generated in both actions without having to convert the motion to dismiss into a summary judgment motion."). And " 'courts routinely take judicial notice of documents filed in other courts, ... not for the truth

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings.' " *Day v. Distinctive Personnel, Inc.*, 656 F. Supp.2d 331, 336 (E.D.N.Y. 2009) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

In support of its motion, Delta relies solely on court pleadings and orders from *Lee I*, documents of which the Court can and does take judicial notice. As such, converting the present Rule 12(b)(6) motion to a Rule 56 motion is unwarranted.

### II. Not All Res Judicata Requirements Are Met

Citing *Lee I*, Delta argues that res judicata bars Lee's employment-related claims against Delta and that the instant action should be dismissed with prejudice. (Def. Mem. at 9-13. [7] ) In opposition, Lee argues that her complaint is based on "new 2021 facts" unasserted in *Lee I* that the *Lee I* court could not have heard. (Pl. Mem. at 5, 10.) She also contends that the *Lee I* Dismissal Order was not an adjudication on the merits. (*Id.*) Lee's first argument does not survive scrutiny. But her second argument is correct.

[7]     "Def. Mem." refers to Defendant's Motion To Dismiss and Memorandum Of Law In Support Of Its Motion To Dismiss, at Dkt. 26.

**\*7** As outlined above, courts consider a three-factor analysis to determine whether a plaintiff's claim is precluded under res judicata. A defendant must show that " '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' " *Pike*, 266 F.3d at 91 (brackets omitted) (quoting *Monahan*, 214 F.3d at 284-85); *see also Truong*, 2011 WL 1198254, at \*3.

Since the second and third prongs of the analysis are easily met, the Court considers those first. The Court then proceeds to the first, and critical, factor – whether the *Lee I* court's dismissal of the 4thAC functions as an adjudication on the merits for res judicata purposes.

#### A. The Same Parties Are Present In The Instant Action
That both cases concern the same parties is undisputed. Lee "brought both actions at issue" and the same parties were involved in *Lee I* as in the current litigation: Erika Lee as

Plaintiff and Delta Air Lines, Inc. as Defendant. *Morales v. Suny Purchase College*, 14-CV-8193, 2015 WL 7430864, at \*3 (S.D.N.Y. Nov. 19, 2015); *see also Bussa v. A Very Special Place, Inc.*, No. 14-CV-6479, 2014 WL 7271597, at \*2 (E.D.N.Y. Dec. 18, 2014) (second element of res judicata met where "both this action and [plaintiff's] prior action involve the exact same parties").

#### B. Both Actions Share The Same Factual Predicate
Claims need not be identical to be duplicative for res judicata purposes. "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Monahan*, 214 F.3d at 285 (internal quotation marks omitted). "To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Pike*, 266 F.3d at 91 (2d Cir. 2001) (internal quotation marks omitted). " 'Transaction' must be given a flexible, commonsense construction that recognizes the reality of the situation." *Monahan*, 214 F.3d at 289 (citing *Interoceanica Corp. v. Sound Pilots Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)). "[W]hen the factual predicate upon which claims are based are substantially identical" those claims are given preclusive effect regardless of "whatever legal theory is advanced." *Berlitz Schools of Languages of America, Inc. v. Everest House*, 619 F. 2d 211, 215 (2d Cir. 1980); *see also Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992) (barring claims arising from the same transaction or occurrence although they were based upon different legal theories); *Mathews v. New York Racing Association, Inc.*, 193 F. Supp. 293, 294 (S.D.N.Y. 1961) ("It is the facts surrounding the occurrence which operate to make up the claim, not the legal theory upon which a plaintiff relies").

Lee contends that the claims asserted in this action could not have been raised in *Lee I* as they occurred in 2021, after she had filed her *Lee I* complaint. (Pl. Mem. at 5.) According to Lee, *Lee I* was initiated upon receipt of a right-to-sue notice issued to her by the EEOC in 2020, while the instant action is based on new EEOC right-to-sue letters she received in 2021. (*Id.* at 6-7.) Lee therefore argues that "[t]he factual predicate in [*Lee I*] involved a different transaction (Defendant's conduct while Plaintiff was employed in California in 2018)" while the instant action's "factual predicate is based on a

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 52 of 93

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

different, subsequent transaction (Defendant's conduct while Plaintiff was employed in New York in 2020-2021)." (*Id.* at 7.) Lee insists that the "adverse employment actions of [her] March 2021 suspension without pay and June 2021 termination" depend upon "completely different evidence and proof of [further] facts" that render res judicata inapplicable. (*Id.*) The Court does not agree – Lee not only could have, but in fact did, raise her 2021 claims in *Lee I*.

**\*8** The 4thAC itself undermines Lee's arguments. The 4thAC was filed on January 25, 2022 – over half a year ***after*** Lee's termination from Delta on June 17, 2021 – and its "short and plain statement" describes the lawsuit as "primarily based on Defendants Wrongful Termination in Violation of Public Policy." (*Lee I*, 4AC ¶ 1.) Therefore, by Lee's own admission, the 4thAC covered her employment with Delta in New York through her termination from the company. (*Id.*) Indeed, in the very first paragraph of the 4thAC, Lee expressly writes that her claims "for sex discrimination, harassment, hostile work environment, IIED, for retaliation, discrimination, harassment, hostile work environment, failure to provide reasonable accommodation, failure to engage in the informal interactive process are not time-barred because the course of conduct alleged to support [her] claim did not end until her employment was terminated on June 17, 2021." (*Id.*)

The 100 pages that follow are replete with claims arising from incidents that occurred during Lee's employment with Delta through "6/17/2021, [when] Plaintiff was terminated" that are presented as interrelated and continuous. (*Lee I*, 4thAC ¶ 35.) The 4thAC includes, inter alia, allegations related to: (1) Lee's February 19, 2021 conversation with Needham about Tomasi's conduct and her request for reasonable accommodation (*Lee I*, 4thAC ¶¶ 25-26, 28); (2) Lee's April 2021 DFEH/EEOC complaint after her March 26, 2021 suspension (*Lee I*, 4thAC ¶ 30); (3) Lee's June 2021 DFEH/EEOC complaint (*Lee I*, 4thAC ¶ 31); (4) alleged retaliation by Delta through June 2021 (*Lee I*, 4thAC ¶¶ 38-39, 77, 79); (5) alleged racial discrimination by Delta through June 2021 (*Lee I*, 4thAC ¶¶ 78, 114); Delta's failure to engage in the informal interactive process from February to June 2021 (*Lee I*, 4thAC ¶¶ 101, 107, 110-11); and (6) Lee's alleged wrongful termination (*Lee I*, 4thAC ¶ 116.)

Additionally, the same 2021 termination, suspension, and right-to-sue letters pursuant to which Lee initiated the instant action, and which she represents here are the "2021 facts" that constitute a distinct transaction from *Lee I*, are attached to the 4thAC. (*Lee I*, 4AthC Ex. 2 at ECF 50) (March 26,

2021 Suspension Letter), ECF 57 (June 17, 2021 Termination Letter); 4thAC Ex.3 at ECF 98 (June 11, 2021 right-to-sue letter). "[T]he underlying facts in [*Lee I*] and [the instant action] are not only related, they are the same: the disciplinary charges [and] suspensions ... were part of the same connected series of transactions" that Lee previously pled. *Bey v. City of New York*, 454 F. App'x 1, 5 (2d Cir. 2011). And the instant action's more precise focus on conduct occurring in 2020 and 2021 does not make its claims new. Rather, the 2021 facts on which Lee here places greater weight are "merely [more] fact[s] arising from the same series of transactions pled in [*Lee I*]." *Id.*

"Clearly, 'the facts essential to [the instant action] were already present in [*Lee I*].' " *Cameron v. Church*, 253 F. Supp.2d 611, 623 (S.D.N.Y. 2003) (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000)). That Lee now asserts different causes of actions is irrelevant; "[e]ven claims based on different legal theories are barred provided they arise from the same transaction of occurrence." *Berrios v. New York City Housing Authority*, 564 F.3d 130, 135 (2d Cir. 2009) (internal quotation marks omitted); *see also Fried v. LVI Services, Inc.*, 557 F. App'x 61, 64 (2d Cir. 2014) (that "claims may rely upon a different legal theory or seek an alternative form of relief does not affect [res judicata] analysis"). Therefore, "[b]ecause [Lee] could have raised her claims in her [4thAC] in [*Lee I*], and in fact did," the Court finds the claims sufficiently duplicative and the third res judicata prong met. *Vega v. Department of Education*, No. 19-CV-6963, 2020 WL 6727803, at *3 (S.D.N.Y. Nov. 16, 2020).

### C. The *Lee I* Dismissal Order Was Not An Adjudication On The Merits

**\*9** Delta argues that the *Lee I* Dismissal Order of the 4thAC pursuant to Rule 41(b) was a final adjudication on the merits. (Def. Mem. at 10-11.) Lee disagrees, advancing several arguments including that the *Lee I* court explicitly stated its motion to dismiss order was not an adjudication on the merits in the Reconsideration Order. (Pl. Mem. at 12.) The Court finds no basis to second-guess the *Lee I* court's express words. Accordingly, the first res judicata prong is not satisfied.

Rule 41(b) provides that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits." Fed. R. Civ. P. 41(b); *see Lopez v. Pichardo 2230 Restaurant Corp.*,

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

No. 15-CV-0648, 2017 WL 4350612, at *1 (S.D.N.Y. June 5, 2017) (same). "A dismissal under Rule 41(b) operates as an adjudication on the merits and bars a subsequent action unless it falls within an enumerated exception or the order of dismissal has been denominated to be without prejudice." *Moutsinas v. Department of Education of City of New York*, No. 05-CV-3096, 2006 WL 1997637, at *3 (S.D.N.Y. July 18, 2006). For non-enumerated dismissals, "*res judicata* would preclude a subsequent action on the same claim." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir. 1983), *cert denied* 464 U.S. 936, 104 S. Ct. 344 (1983). This remains true even where "the substantive issues of the case are never reached." *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1969); *see also PRC Harris*, 700 F.2d at 896 (finding that a dismissal for failure to comply with the statute of limitations operated as an adjudication on the merits even though it "did not entail a consideration of the substantive issues raised").

In isolation, the *Lee I* Dismissal Order appears to be an adjudication on the merits under Rule 41(b). The Dismissal Order neither definitively declared that it was a final adjudication on the merits, nor expressly set forth that it was without prejudice. It did, however, quote the express language of Rule 41(b). (*See Lee I*, Dkt. 157 at 7.) "[I]f the court does not specify that dismissal is without prejudice, as [the *Lee I* court] did not specify, and if the dismissal is not embraced within one of the three exceptions to Rule 41(b), the dismissal will be deemed to be with prejudice – i.e., an adjudication on the merits barring a second suit." *Weston Funding Corp. v. Lafayette Towers, Inc.*, 410 F. Supp. 980, 984 (S.D.N.Y. 1976); *see also Charles v. City of New York*, No. 99-CV-3786, 2007 WL 2728407, at *7 (S.D.N.Y. Sept. 17, 2007) ("[a] dismissal under Rule 41(b), unless it is expressly stated to be without prejudice, will generally bar a subsequent action on the claim under principles of res judicata").

Further, the *Lee I* court expressly "dismiss[ed] [Lee's] Fourth Amended Complaint without leave to amend," finding that "further leave to amend would be futile" given Lee's repeated failure to comply with court orders. (*Lee I*, Dkt. 157 at 14.) Lee had the opportunity to file an appeal of her dismissal with the Ninth Circuit but elected instead to pursue suit in this court. If, as is the case here, "a party fails to appeal or seek review of a lower court's decision on the merits, the doctrine of res judicata precludes relitigation of the claims." *Ercole v. Compania de Navagacao*, 585 F. Supp. 1380, 1381-82 (S.D.N.Y. 1984). Thus, standing alone, the Dismissal Order satisfies the first requirement for res judicata.

**\*10** However, the Court cannot consider the Dismissal Order separate and apart from the Reconsideration Order by which the *Lee I* judge pointedly characterized the Dismissal Order as not being a determination on the merits. *See Bay Fireworks, Inc. v. Frenkel & Co.*, 359 F. Supp.2d 257, 263-64 (E.D.N.Y. 2005) (examining "[t]he order, and the order on reconsideration" when determining if a prior action was dismissed with or without prejudice). Following the Dismissal Order, Lee filed three motions for reconsideration, and Delta filed a Proposed Judgment. (*Lee I*, Dkts. 158, 162-64.) On August 3, 2022, the *Lee I* court issued its Reconsideration Order addressing the parties' various filings and denying the relief requested, including Delta's request to file a separate judgment. In doing so, the *Lee I* court said that its "Order dismissing Plaintiff's Fourth Amended Complaint without leave to amend ... is a final, appealable order. ... Moreover, ***the Order was not an adjudication on the merits***." (*Lee I*, Dkt. 173 at 4-5) (emphasis added). A dismissal under Rule 41(b) operates as an adjudication on the merits unless the court states otherwise. Plainly, in its Reconsideration Order, the *Lee I* court expressed that its Dismissal Order was not an adjudication on the merits.

Delta argues that Lee takes the "not an adjudication on the merits" statement "out of context" and that it should otherwise be ignored as dicta. (Def. Reply at 8.[8]) Delta urges the Court to "give considerable weight to the plain language of Rule 41(b) (as cited by the *Lee I* court) instead of giving legal force to dicta in a subsequent order that in any event expressly declined to revisit the dismissal order." (*Id.* at 9.) According to Delta, the Reconsideration Order's statement that the Dismissal Order was not an adjudication on the merits was made only in reference to whether an entry of judgment should be made. (*Id.* at 8-9.) But the statement establishing that the Dismissal Order was not an adjudication on the merits was expressly part of the *Lee I* court's reasoning as to why "entry of a separate judgment ... [was] unnecessary." (*Lee I*, Dkt. 173 at 6.) It therefore was not dicta and cannot be ignored just because it was stated in the context of denying entry of separate judgment.

[8]     "Def. Reply" refers Defendant's Reply Memorandum Of Law In Support Of Its Motion To Dismiss, at Dkt. 44.

Delta asserts that the Court can decline "to find [a] judge's characterization of a complaint binding on the parties and court" and that "even if binding, [that] characterization would not preclude the application of *res judicata*" (Def. Reply at

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 54 of 93

8), citing *U.S. ex rel. Pentagen Technologies International Ltd. V. United States*, No. 00-CV-6167, 2001 WL 946375, at *1 (S.D.N.Y. Aug. 21, 2001), *denying reconsideration of* 2001 WL 770940 (S.D.N.Y. July 10, 2001). But *Pentagen* is entirely inapt.

*Pentagen* was a *qui tam* action ("Qui Tam 2"), which had been preceded by an earlier *qui tam* action ("Qui Tam 1") in which the court dismissed the relators' claims and denied leave to file a second amended complaint due to futility. 2001 WL 770940, at *2. The government moved to dismiss Qui Tam 2 on grounds of res judicata effected by the dismissal in Qui Tam 1. In opposition, the Qui Tam 2 relators argued that the court had to consider not only the Qui Tam 1 dismissal order concerning the second amended complaint, but also a summary order in which the Qui Tam 1 court had characterized additional claims brought in a proposed third amended complaint as "new." *Pentagen*, 2001 WL 946375, at *1. The relators contended that if the Qui Tam 2 court gave sufficient weight in its res judicata analysis to the Qui Tam 1 summary order characterizing the claims in the third amended complaint as "new," it should not give res judicata effect to the Qui Tam 1 dismissal order vis-à-vis the same "new" claims being asserted in Qui Tam 2. *Id.*

The Qui Tam 2 court disagreed, finding that res judicata did not apply to the Qui Tam 1 summary order because the third amended pleading at issue there had been presented to the Qui Tam 1 court ex parte, and the summary order decision "issued without the benefits of any adversarial argument." *Id.* "[S]ince none of the parties named in the [Qui Tam 2] amended complaint litigated any issue addressed in [the Qui Tam 1 summary order], it is clear that [the Qui Tam 1 judge's] characterization of the amended complaint [in the summary order] is not binding on the parties in this Action nor this Court." *Id.* The Court then stated that "even if [the characterization of the amended complaint as containing 'new' claims] were binding, it would not preclude the application of res judicata" for other reasons. *Id.*

**11** *Pentagen* is materially distinct from the facts here. Unlike the *Pentagen* parties, both Delta and Lee had an opportunity to litigate the issues in the Reconsideration Order before the *Lee I* court. The *Lee I* court's characterization of its Dismissal Order in its Reconsideration Order thus is binding on the parties. Second, the court in *Pentagen* found that, even if binding, the "new" claims asserted arose out of the same transaction as those previously dismissed, thus satisfying one of the res judicata requirements. 2001 WL

770940 at *8; *see also* 2001 WL 946375 at *1 n.2 ("[W]hile [the judge] did indicate that the ... amended complaint indeed contained 'new' claims, his Summary Order does not support [plaintiffs'] contention that the presence of these 'new' claims ... defeats the application of res judicata to the claims contained in the Complaint that this Court dismissed"). Here, in contrast, the "binding" aspect of the *Lee I* court's Reconsideration Order is that the Dismissal Order was not a decision on the merits, thus *failing to satisfy* an element of res judicata.

Delta also offers *O'Diah v. New York City*, No. 02-CV-0274, 2002 WL 1941179 (S.D.N.Y. Aug. 21, 2002) in support of its argument that the Court should find the instant action barred by res judicata even though the *Lee I* court did not issue a separate judgment. (Def. Reply at 14.) That case too is inapposite, and Delta's argument misapprehends the issue at hand. In *O'Diah*, the court found that "[t]he district court's failure [in the prior action] to enter an order dismissing all claims with prejudice ... and to enter final judgment in the action should not prevent the prior dismissal of [plaintiff's] claims ... from having res judicata effect." *O'Diah*, 2002 WL 1941179, at *5. The court explained that in the preclusion context, " 'final ... is a word of many meanings' " and that the requirement of finality "does not mandate the elevation of form over substance." *Id.* at *4 (quoting, with respect to the first quoted portion, *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). Here, unlike the court in *O'Diah*, the *Lee I* court did not simply fail to enter final judgment; rather, it made the express decision that entry of final judgment was unwarranted *because* the Dismissal Order was not an adjudication on the merits. To ignore that, as Delta would like to, elevates the form of the *Lee I* Dismissal Order over the substance of the Reconsideration Order.

As Delta correctly observes, the *Lee I* court declined, in its Reconsideration Order, to revisit or change the Dismissal Order, which was silent on the merits issue. (Def. Reply at 9.) One might infer that by not revisiting its Dismissal Order, and having recited the language of Rule 41(b), the *Lee I* court affirmatively determined to leave in place the absence of any statement that the Dismissal Order was not on the merits. But that would be squarely at odds with the express language in the Reconsideration Order – that the Dismissal Order was "not an adjudication on the merits" – and take it to mean something other than what it expressly says. There is no basis for this Court to either disregard or impute a directly contrary meaning to the *Lee I* court's words. If Delta believes the *Lee I* court meant something other than what it said, then Delta

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 55 of 93

Lee v. Delta Air Lines, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 3592153

should have sought clarification from the *Lee I* court. Not having done so, Delta is in no position to ask this Court to make such a finding.

To be sure, this Court endorses the purposes served by the res judicata doctrine. As explained by one court, the "core purposes of New York's *res judicata* doctrine [are] 'to ensure finality, prevent vexatious litigation and promote judicial economy.' " *BNF NY Realty, LLC v. Nissan Motor Acceptance Corp.*, No. 18-CV-3664, 2019 WL 140648, at *5 (S.D.N.Y. Jan. 9, 2019) (quoting *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100, 810 N.Y.S.2d 96, 98 (2005)). Delta argues that if the Court does not grant its res judicata motion, those purposes would be disserved and Lee would be "free to continually file endless complaints in contravention of the express language of Rule 41(b), notwithstanding having been afforded endless opportunities over two years of prolonged litigation to properly plead her claims." (Def. Mem. at 11.) The Court is sympathetic to Delta's position of having to engage in further litigation on issues seemingly already brought to a close in California. But, given that Delta's instant motion is for dismissal solely on res judicata grounds and that a key element of res judicata is missing, it would be improper for the Court to dismiss grant dismissal on that basis.

## CONCLUSION

**\*12**  For the foregoing reasons, Delta's motion to dismiss should be DENIED. To the extent not discussed herein, the Court has considered all of the parties' arguments and determined them to be without merit.

## PROCEDURES FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Gregory H. Woods, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, NY 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

## All Citations

Not Reported in Fed. Supp., 2023 WL 3592153

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 56 of 93

Guess v. Jahromi, Not Reported in Fed. Supp. (2017)

2017 WL 1063474

2017 WL 1063474
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Regina GUESS, Plaintiff,
v.
Dr. Babak S. JAHROMI, Cynthia A.
Zink, Susan A. Moody, Defendants.

No. 6:17-CV-06121(MAT)
|
Signed 03/21/2017

**Attorneys and Law Firms**

Regina V. Guess, Rochester, NY, pro se.

**DECISION AND ORDER**

HON. MICHAEL A. TELESCA, United States District Judge

**I. Introduction**

 **\*1** Plaintiff Regina Guess ("plaintiff"), proceeding *pro se*, has requested permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Court has reviewed plaintiff's submissions in connection with her motion to proceed *in forma pauperis*, finds that she meets the statutory requirements, and therefore grants her request to proceed as a poor person. Pursuant to the requirements of § 1915, the Court must conduct an initial screening of plaintiff's complaint to ensure that the complaint has a legal basis. For the reasons set forth below, plaintiff's complaint is dismissed in its entirety with prejudice for lack of subject matter jurisdiction. Plaintiff's motion for appointment of counsel is denied as moot.

**II. Background**

The instant action is the third in a series of *pro se* actions plaintiff has filed in relation to her former employment with the University of Rochester Medical Center ("URMC"), where she worked as a radiologist from approximately October 2008 through June 2010. Plaintiff's first action, which alleged claims of discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), was dismissed by this Court on August 17, 2015, in a Decision and Order granting defendant URMC's motion for summary judgment. See Guess v. Univ. of Rochester, 2015

WL 4891377, \*1 (W.D.N.Y. Aug. 17, 2015), reconsideration denied, 2015 WL 5824854 (W.D.N.Y. Oct. 6, 2015), appeal dismissed (2d Cir. 15-3325) (Dec. 30, 2015) (Guess I).

Plaintiff's second action, which she filed on September 19, 2016, alleged claims of fraudulent concealment, breach of contract, and medical malpractice against several defendants, who were employed at the URMC during the time frame relating to the events at issue in plaintiff's previous lawsuit. The Court dismissed that action for lack of subject matter jurisdiction on October 20, 2016. See Guess v. Jahromi, No. 6:16-CV-06637 (MAT), Doc. 8 (October 20, 2016) (Guess II). Specifically, the Court rejected plaintiff's asserted basis of supplemental jurisdiction, finding that because the Court lacked original jurisdiction over any of the matters asserted in the Guess II complaint, the Court therefore had no supplemental jurisdiction to hear the case. On November 15, 2016, the Court denied plaintiff's motion for reconsideration and for permission to file an appeal to the Second Circuit Court of Appeals, finding that any appeal would not be taken in good faith. See Guess v. Jahromi, 2016 WL 6695875, \*2 (W.D.N.Y. Nov. 15, 2016) (Guess III).

Plaintiff's instant complaint is alleged against three defendants, all of whom were named personally in Guess II. Reading the complaint liberally, plaintiff attempts to state two causes of action. In the first cause of action, which plaintiff variously describes as "fraud," "concealment," or "Title VII Civil Rights ... Employment Discrimination," plaintiff alleges that the defendants caused her "manifest injustice" in discriminating against her in the course of her employment, that they falsified statements, and that they caused her "loss of personal missing property." Doc. 1 at 4. Her second cause of action alleges, vaguely, that the defendants deprived her of "personal missing property" through a "conspiracy of fraud." See doc. 1 at 4-5. It is unclear what "personal property" plaintiff refers to, however this claim appears related to her repeated allegation, in both of her prior suits, that due to some concealment of her medical record the defendants somehow deprived her of medical treatment.

**III. Standard of Review**

 **\*2** Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements. "[T]he court shall dismiss the case at any time if the court determines that ... the action ... is frivolous or malicious; ... fails to state a claim on which relief may be granted; or ... seeks monetary relief against

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 57 of 93

Guess v. Jahromi, Not Reported in Fed. Supp. (2017)

2017 WL 1063474

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)—(iii).

"[T]he issue of '[f]ederal subject matter jurisdiction may be raised at anytime during litigation and *must* be raised *sua sponte* where there is an indication that jurisdiction is lacking.' " English v. Sellars, 2008 WL 189645, *2 (W.D.N.Y. Jan. 18, 2008) (addressing complaint at screening stage pursuant to § 1915) (quoting Hughes v. Patrolmen's Benevolent Assoc. of the City of New York, Inc., 850 F.2d 876, 881 (2d Cir. 1988), cert. denied 488 U.S. 967)) (emphasis added). Even at the screening stage, therefore, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam); see also Billard v. Rockwell Int'l Corp., 683 F.2d 51, 57 (2d Cir. 1982) (denial not abuse of discretion where plaintiff had "access to full discovery" in a related case).

## IV. Discussion

As in Guess II, plaintiff's instant complaint acknowledges that her claims are related to her prior employment discrimination suit. Reading her complaint liberally, she appears to assert grounds of both original jurisdiction based on a federal question as to a Title VII employment discrimination claim and supplemental jurisdiction as to related state-law tort claims. Thus, plaintiff ostensibly asserts that her state-law claims should be heard in this case because of the existence of original jurisdiction on the Title VII claim.

Initially, the Court notes that plaintiff's complaint fails to state a valid Title VII employment discrimination claim. A plaintiff alleging a Title VII case must allege that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." Liebowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009). Plaintiff, however, states no supporting facts other than to allege that the defendants "caused [her] manifest injustice" in the course of her employment for URMC. Plaintiff's conclusory allegation of a Title VII violation appears to be a vehicle for bootstrapping jurisdiction of her related, state-law claims, which were previously dismissed by this Court in Guess II.

To the extent that plaintiff attempts to frame her former ADA claim now as a Title VII claim, such a claim cannot go forward because principles of res judicata, or claim preclusion, bar such a claim. "[C]laims premised upon 'new legal theories

do not amount to a new cause of action so as to defeat the application of' res judicata." Tompkins v. Local 32BJ, SEIU, 2012 WL 1267876, *8 (S.D.N.Y. Apr. 12, 2012) (quoting Ningbo Prods. Imp. & Exp. Co., Ltd. v. Eliau, 2011 WL 5142756, *9 (S.D.N.Y. Oct. 31, 2011)); see also Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 206 (2d Cir. 2002) (affirming district court order dismissing complaint as barred by *res judicata* pursuant to 28 U.S.C. § 1915, where the complaint stated employment discrimination as a new legal theory but "focused on essentially the same facts as those asserted in her first federal complaint").

**\*3** "To establish claim preclusion [or res judicata], a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Businesses for a Better N.Y. v. Smith, 2010 WL 3703693, *3 (W.D.N.Y. Sept. 16, 2010) (citing Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)). Here, the elements are met. Plaintiff's ADA claim was finally decided on the merits by the Court's Decision and Order dated August 17, 2015. See Guess I. Nothing prevented plaintiff from bringing a Title VII claim along with the ADA claim in Guess I, which claim would have centered on the same facts. Therefore, the Court concludes that to the extent that plaintiff attempts to plead a claim of Title VII employment discrimination, that claim is precluded due to the Court's decision in Guess I.

The Court therefore lacks original jurisdiction over any alleged Title VII claim because this claim is barred by the doctrine of res judicata.[1] Accordingly, to the extent that this complaint raises state law claims involving fraudulent concealment, breach of contract, or medical malpractice, those claims are dismissed because, for the reasons stated in Guess II, the Court cannot exercise supplemental jurisdiction where no original jurisdiction lies.

[1]    The Court declines to grant plaintiff leave to amend because, considering the history of this case, to do so would likely be unproductive. See Ruffolo, 987 F.2d at 131; Billard, 683 F.2d at 57.

## V. Conclusion

For the reasons stated above, plaintiff's motion to proceed *in forma pauperis* (doc. 2) is granted, plaintiff's complaint (doc. 1) is dismissed in its entirety with prejudice, and plaintiff's motion requesting appointment of counsel (doc. 3) is denied

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 58 of 93

**Guess v. Jahromi, Not Reported in Fed. Supp. (2017)**

2017 WL 1063474

as moot. For the same reasons as stated in Guess III, 2016 WL 6695875, at *1-2, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith. The Clerk of the Court is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1063474

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6671559
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Brian Scott ORR, Plaintiff,
v.
UNITED STATES AIR FORCE, Air Force Research
Laboratory; United States Department of Justice,
FBI National Security Division; and Chester John
Maciag, Air Force Special Projects Chief, Defendants.

No. 6:15–CV–1132 (GTS/TWD).
|
Signed Oct. 30, 2015.

**Attorneys and Law Firms**

Brian Scott Orr, Lompoc, CA, pro se.

### DECISION and ORDER

GLENN T. SUDDABY, Chief Judge.

**\*1** Currently before the Court, in this civil rights action filed *pro se* by Brian Scott Orr ("Plaintiff") against the above-captioned entities and individual ("Defendants"), are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report–Recommendation recommending that this action be *sua sponte* dismissed, with prejudice, for failure to state a claim upon which relief can be granted on the grounds that it is barred under the doctrine of *res judicata,* and (2) Plaintiff's one-page Objection to the Report–Recommendation. (Dkt.Nos.4, 5.)

When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1).

[1] *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [2]

[2] *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducing the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

Here, liberally construed, Plaintiff's Objection asserts only three specific challenges to Magistrate Judge Dancks' Report–Recommendation: (1) that Plaintiff's claim in the current action is not identical to his claim in the prior action; (2)

that the dismissal of his first claim was not based on the merits of his claim; and (3) that the dismissal of his first claim (based on the ground of frivolousness) was not permissible, and the dismissal of his current claim (based on the doctrine of res judicata) is not permissible, because both claims are supported by medical evidence. (Dkt. No. 5.)

After carefully reviewing the relevant filings in this action, the Court can find no error in the challenged portions of the Report–Recommendation, nor any clear error in the remaining portions of the Report–Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report–Recommendation for the reasons stated therein. (Dkt. No. 4.) To those reasons, the Court would add only that it has carefully reviewed Plaintiff's Complaint in the first action and his Complaint in this action, and finds them to be virtually identical. Moreover, the Court finds that the dismissal of Plaintiff's first action was indeed on the merits.

**\*2  ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 4) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED.***

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Clerk has sent Plaintiff Brian Scott Orr's pro se civil rights complaint, brought under 42 U.S.C. § 1983, together with an application to proceed in forma pauperis ("IFP Application") and Prisoner Authorization Form to the Court for review. [1] (Dkt. Nos. 1 and 2.)

[1]      While the Prisoner Authorization Form (Dkt. No. 2 at 3) submitted by Plaintiff differs in some respects from the Inmate Authorization Form generally used in the Northern District of New York, i.e., it does not include language specifically authorizing the facility in which he is incarcerated to send certified copies of statement of his trust fund when

requested by the Clerk, it does set forth Plaintiff's understanding of his obligation to pay the full amount of the filing fees and authorize the prison officials to "assess, collect and forward to the Court the full amount of these fees, in monthly payments based on the average of deposits to or balance in [his] prison trust account in accordance with 28 U.S.C. Section 1915." *Id.* In addition, the Certificate setting forth the sum plaintiff has on account, found at the bottom of the IFP Application used in the Northern District of New York is contained in the Prisoner Authorization Form submitted by Plaintiff. The Court finds that the IFP Application and Prisoner Authorization Form submitted by Plaintiff are adequate for a determination of Plaintiff's entitlement to proceed *in forma pauperis* solely with respect to the Court's initial review.

## I. IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application and Prisoner Authorization Form (Dkt. No. 2), the Court finds that he meets the standard and his IPF Application is granted solely for purposes of this initial review.

## II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should

be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*3** Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiffs] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## III. ANALYSIS

### A. Plaintiff's Complaint in this Action

Plaintiff has sued the United States Air Force, the United States Department of Justice, and Air Force Special Projects Chief, Chester John Maciag, in his complaint submitted for filing on September 21, 2015, and now before the Court for initial review. (Dkt. No. 1.) Plaintiff has alleged the following facts in his complaint:

> 4. THE DEPARTMENT OF DEFENSE INTELLIGENCE COMMUNITY (IC) KNOWINGLY, WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT OF AN ILLEGAL DIRECTED ENERGY EXPERIMENT, WHEN BRIAN ORR SURVIVED LONGER THAN CONVENIENT, ARFL–RIGB CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND WORKED HARD TO DISCREDIT ORR STARTING RIGHT BEFORE THE TORTURE STARTED ON AUGUST 13, 2010. COL LAMAR PARKER AND LT COL WILLIAM GREGORY ALSO PLAYED A CONSPIRATORIAL ROLE AND WERE ACTIVELY INVOLVED IN PSYCHOLOGICAL OPERATIONS AGAINST ORR. PHYSICAL DAMAGE WAS APPLIED TO ORR NOT BY DIRECT CONTACT BUT BY TECHNOLOGICAL MEANS. REMOTE APPLICATION OF SAID DAMAGE WAS ALLEGEDLY FROM AIR FORCE/NATIONAL RECONNAISSANCE OFFICE SPY RADAR TECHNOLOGY. THE MAGNITUDE AND DURATION OF PAIN CAN ONLY BE ACCURATELY DESCRIBED AS TORTURE AND CAN ONLY BE UNDERSTOOD BY OTHER SURVIVORS OF CRIMES AGAINST HUMANITY. MEDICAL DOCUMENTATION THAT YOU WILL READ IN THE EXHIBITS STATE ORR'S

INJURIES WERE MICROWAVE RADIATION INDUCED. THE INJURIES ARE IRREVERSIBLE AND ARE SYSTEM WIDE. MOST DAMAGE IS TO ORR'S NERVOUS SYSTEM (BRIAN (sic) AND PERIPHERAL NERVES). THE INTENSE ELECTROMAGNETIC RADIATION ALSO DAMAGE ORR'S HEART AND CAUSED A MYOCARDIAL INFARCT AND WEAKENED OUTPUT. THE DAMAGE TO ORR'S ENDOCRINE SYSTEM HAS LEFT HIM INFERTILE (UNABLE TO BEAR CHILDREN). ORR LEFT AFRL ROME, N.Y. ONLY LATER TO BE STALKED AND TORMENTED BY FBI NATIONAL SECURITY DIVISION AGENTS. FAMILY MEMBERS WERE ALSO STALKED, HARASSED, AND HAD THEIR COMPUTERS HACKED WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 IN INQUIRIES TO SENATE MEMBERS (FEINSTEIN), A FEINSTEIN DIRECTED INVESTIGATION OF THE AIR FORCE OSI, FBI, AND POLICE REPORTS. IN 2012 THE WEBSITE HTTP:// USGOVTATROCITIES.COM WAS PUT ONLINE TO EXPOSE THE HEINOUS CRIMES AGAINST ORR.

**\*4** *Id.* at ¶ 4.

Plaintiff seeks money damages for medical bills; permanent physical damage; government theft and property damage; stalking and intimidating Orr and his family; an 2011 assassination attempt in Arizona; hacking of Orr's families' home computer networks and phones without court order; economic loss for lost wages; and damages for PTSD. Plaintiff seeks monetary damages totaling $2,713,700.00. *Id.* at ¶ 5.

**B. Plaintiff's Complaint in *Orr v. U.S. Air Force, el al.,* United States District Court, C.D. Cal., No. 2:15–cv–01800**

Prior to submitting his complaint for filing in this action, Plaintiff commenced an action against the same three Defendants asserting the identical claim and seeking essentially the same damages in the United States District Court, C.D. Cal. (*See Orr v. U.S. Air Force, et al.* ("*Orr* I"), No. 2:15–cv–01800–MMM–MRW, Dkt. No. 1.) In his complaint in *Orr* I, Plaintiff alleged:

5. THE DOD INTELLIGENCE COMMUNITY (IC), KNOWINGLY WITH INTENT TO KILL, USED BRIAN SCOTT ORR AS THE UNCONSENTING TEST SUBJECT IN AN ILLEGAL TORTURE EXPERIMENT. WHEN ORR SURVIVED LONGER THAN EXPECTED, ARFL–RIGB BRANCH CHIEF MACIAG ORDERED ORR TO TAKE HIS OWN LIFE. MACIAG ALSO THREATENED ORR AND HAD CAPT BRIAN SESSLER TAKE RR INTO THE COTF TO DISTRACT ORR TO MANAGE AN ILLEGAL IMPLANT ON ORR'S IPHONE. OTHER PSY–OP PARTICIPANTS INCLUDED AIR FORCE INTEL OFFICER WILLIAM GREGORY AND COLONEL LAMAR PARKER. PHYSICAL TORTURE WAS APPLIED BY HIGH POWER RADAR AND NOT NECESSARILY CONFINED TO ROME, NY. MEDICAL DOCUMENTATION STATES ORR'S INJURIES WERE MICROWAVE RADIATION INDUCED AND IRREVERSIBLE. DAMAGE IS TO ORR'S BRAIN, NERVOUS SYSTEM, AND HE IS INFERTILE. ORR LEFT AFRL TO BE STALKED AND TORMENTED BY DOJ AGENTS. FAMILY MEMBERS WERE ALSO STALKED AND THEIR COMPUTERS

HACKED ALL WITHOUT COURT ORDER. ORR'S ORDEAL WAS DOCUMENTED IN 2012 BY SENATORIAL INQUIRIES, AFOSI INVESTIGATIONS, POLICE REPORTS, AND, OF COURSE, HTTP:// USGOVTATROCITIES.COM. EVIDENCE CAN BE FOUND AT HTTP://TINYURL.COM/ SAVEBRIANSCOTT. ANOTHER WEBSITE THAT BRIAN SCOTT IS IN PRISON [2] AS RETALIATION FOR SPEAKING OUT: HTTP:// HUMANCIVILRIGHTSFIRST.ORG.

[2]     In *Orr* I, the court took judicial notice that Plaintiff was convicted of theft and computer hacking charges related to his former employment at the Air Force base. (*Orr* I, Dkt. No. 3 at 2 n. 1.); *see also United States v. Orr,* CR–13–872 (C.D.Cal.)

*Id.* at ¶ 5.

In *Orr* I, Plaintiff sought money damages for medical bills; permanent brain and nervous system damage; government theft, property damage and vandalism; stalking Orr and his family; failed assassination attempts in Arizona and by repeated torture; hacking without court order; being forced to leave the Country after his term of imprisonment to escape persecution; interference with employment; loss of federal assistance; and damages for PTSD. *Id.* at 6. Plaintiff sought monetary damages totaling $2,713,700.00. *Id.*

### C. Res Judicata

*Orr* I was dismissed on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) on the grounds that the action was frivolous and failed to state a claim upon which relief could be granted. (*Orr* I, Dkt. No. 3 at 1–2.) On March 18, 2015, the Hon. Michael R. Wilner, M.J., wrote that "Plaintiff's claims are too fanciful to warrant service on any of the named defendants" and recommended dismissal. *Id.* at 2. On March 19, 2015, the Hon. Margaret M. Morrow, U.S. District Judge, ordered that Plaintiff's IFP Application be denied and that the case be dismissed. *Id.* at 2.

**\*5**  "The doctrine of *res judicata,* or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corr.,* 214 F.3d 275, 284–85 (2d Cir.2000) (internal quotation marks and citation omitted). *Res judicata* precludes a party from asserting a claim in subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.*

A district court may sua sponte raise the issue of *res judicata.* See *Rollock v. LaBarbera,* 383 F. App'x 29, 30 (2d Cir.2010) (citing *Scherer v. Equitable Life Assurance Soc'y of U.S.,* 347 F.3d 394, 398 n. 4 ("[A] court is free to raise [the] defense [of *res judicata* ] *sua sponte"* )). In *Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), the Supreme Court held that, while a dismissal under § 1915(e) "does not prejudice the filing of a paid complaint making the same allegations," it "could, however, have a *res judicata* effect on frivolousness determinations for future *informa pauperis* petitions." In *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir.2002), the Second Circuit agreed with the reasoning of various circuits that had found *res judicata* applicable to subsequent actions brought *in forma pauperis. See also McRae v. Norton,* No. 12–CV–1537 (KAM), 2012 WL 1268295, at * 3, 2012 U.S. Dist. LEXIS 52494, at * 8, 2012 WL 1268295 (E.D.N.Y. April 13, 2012) [3] (finding *res judicata* applied to plaintiffs *informa pauperis* action asserting the same claims as his previous action which had been dismissed pursuant to § 1915(e)).

[3]     Copies of the unpublished decision will be provided to Plaintiff in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Copies of unpublished decisions have been deleted for Westlaw purposes.]

*Orr* I and the present action involve the same parties, and the facts alleged by Plaintiff and claims asserted in the two actions are virtually identical. Furthermore, Plaintiff seeks to bring this action *in forma pauperis.* Because *Orr* I was dismissed pursuant to § 1915(e)(2)(B) on the grounds that it was frivolous and failed to state a claim, the Court finds, based upon the *Denton* and *Cieszkowska* decisions, that this action is barred under the doctrine of *res judicata.*

"When an *informa pauperis* action is *res judicata,* it fails to state a claim upon which relief may be granted and thus § 1915(e)(2)(B) compels its dismissal." *Lopez v. Jet Blue Airways,* No. 12–CV–0057 (JG), 2012 WL 213831, at * 1, 2012 U.S. Dist. LEXIS 8162, at * 2 (E.D.N.Y. Jan.24, 2012). Therefore, the Court recommends that Plaintiff's complaint be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii).

**ACCORDINGLY,** it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED;** and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on the grounds that it is barred under the doctrine of *res judicata;* and it is further

**\*6 ORDERED,** that the Clerk send Plaintiff a copy of this Order and ReportRecommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

Filed Sept. 28, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6671559

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 604007

2001 WL 604007
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Sam CARDIELLO and Maria Cardiello, on behalf of
themselves and all others similarly situated, Plaintiff,

v.

THE MONEY STORE, INC., TMS Mortgage, Inc.,
and the Money Store/Empire State Inc., Defendants.

No. 00 CIV. 7332(NRB).
|
June 1, 2001.

**Attorneys and Law Firms**

Martin I. Kaminsky, W. Hans Kobelt, Pollack & Kaminsky,
New York City, for defendants The Money Store, Inc, TMS
Mortgage Inc., and The Money Store/Empire State Inc.

OPINION AND ORDER

BUCHWALD, District J.

**\*1**  Plaintiffs Sam and Maria Cardiello (collectively "the
Cardiellos" or "plaintiffs") bring this action for compensatory
and statutory damages against defendants The Money Store,
Inc., TMS Mortgage, Inc. and The Money Store/Empire State,
Inc. (collectively "Money Store" or "defendants") under the
Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et
seq., the Real Estate Settlement Procedures Act ("RESPA"),
12 U.S.C. § 2601 et seq., and various state causes of action.
Furthermore, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3),
plaintiffs seek to represent certain classes of persons who
purchased and/or maintained residential home equity loans
with defendants during the period from October 1, 1994 to
the present. Defendants now move to dismiss the Complaint
pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1367(c).
For the reasons stated below, defendants' motion is granted
and plaintiffs' complaint is dismissed.

BACKGROUND

In May 1985, plaintiffs obtained a home mortgage ("the
Loan") from defendants. [1]  At the time, defendants provided
plaintiffs a Truth in Lending Disclosure Statement ("the

disclosure statement" or "the statement"). The disclosure
statement stated an amount financed of $30,264, a finance
charge of $46,423, an annual percentage rate of 15.12%
and a payment total of $76,687. According to the statement,
plaintiffs would pay-off the loan through 180 monthly
payments of $426.04, due on the fifteenth of every month,
with the last payment being due on or about May 15, 2000.
The statement also provided that:

[1]      Unless otherwise indicated, all facts are drawn
        from the Complaint and documents referenced in
        the Complaint that are admissible on a motion to
        dismiss.

    "The amounts shown as the finance charge and total
    payments are based on the assumption that you will pay
    the monthly installments when due. Late payment of the
    monthly installments will increase the finance charge and
    total of payments, early payment will decrease them."
    Reply Aff. of Mark Buechner, Ex. H.

Over the course of the next fifteen years, plaintiffs made
payments of $426.04 each month. In January 2000, plaintiffs
received a notice from the Money Store that stated that
as of May 2000, the original time of the Loan's maturity,
plaintiffs would still owe $2,157.16 in principal. Plaintiffs
thereafter contacted the Money Store and questioned the
apparent discrepancy between the Loan's maturity date as set-
out in the disclosure statement and the notice of the remaining
principal due. By letter dated January 19, 2000, the Money
Store responded to plaintiffs' inquiry by explaining that the
principal balance was still due and owing, notwithstanding
the original maturity date on the disclosure statement. The
Money Store sent two additional letters, on or about April 3,
2000 and May 26, 2000, advising plaintiffs of the outstanding
balance due on the Loan and demanding that the balance be
paid promptly.

Plaintiffs retained counsel who wrote a letter to the Money
Store on or about June 8, 2000, requesting an explanation
of the monies defendants claimed plaintiffs owed. On or
about June 13, 2000, the Money Store provided a Payoff
Statement to plaintiffs' counsel that demanded payment
of $2,157.16 in unpaid principal and $56.56 in interest
accumulated on the outstanding balance. By a "standardized
debt collection letter" dated June 21, 2000, the Money Store
notified plaintiffs that unless they remitted the $2,249.07
they allegedly owed, within thirty days, the Money Store
would "invoke any and all remedies provided for in the Note

2001 WL 604007

and Security Instrument, including but not limited to the foreclosure sale of the property." Complaint at § 33.

**\*2**   On June 28, 2000, P.T. Winterbottom ("Mr.Winterbottom"), a Customer Relations Specialist at the Money Store, wrote a direct response to plaintiffs' counsel's letter of June 8, 2000. [2] In his letter, Mr. Winterbottom explained that the actual principal owed could vary from the amount originally forecast on the disclosure statement if borrowers made late payments. [3] Furthermore, Mr. Winterbottom noted, due to the Money Store's agreement with the Federal Trade Commission ("FTC") in 1991, [4] the interest calculation methodology on plaintiffs' loan was changed, effective August 1990. Mr. Winterbottom declared that the change resulted in a benefit to borrowers and that a check in the amount of $235.86 was forwarded to plaintiffs on or about February 14, 1992 to compensate them for the change in methodology. Mr. Winterbottom concluded by stating that:

[2]      Mr. Winterbottom's response specifically refers to plaintiffs' counsel's letter as the letter "received... on June 9, 2000." Reply Aff. of Mark Buechner, Ex. F.

[3]      Although plaintiffs did not include a copy of this letter in the Complaint, they explicitly referred to it. Complaint at ¶ 36–7 (note that Complaint erroneously numbers two paragraphs as paragraph 36). The Second Circuit has ruled that a court may consider documents relied upon by the plaintiff, but which are not attached to the Complaint. *See I. Meyer Pincus & Assoc. v. Oppenheimer & Co .,* 936 F.2d 759, 762 (2d Cir.1991); 5 Wright & Miller, *Federal Practice & Procedure* § 1327 at 489 and n. 15 (when "plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."). This also holds true for defendants' letter of July 17, 2000, *infra.* Complaint at ¶ 40 (*see infra,* note. 9).

[4]      According to the Complaint, defendants entered an Agreement Containing a Consent Order ("the FTC Agreement") in June 1991 "settling charges that Defendnats were violating TILA in connection with residential mortgage loan transactions." Complaint at ¶ 37. Under the Agreement, defendants were required, *inter alia,* "to make adjustments and/or refunds for each of

their customers who were impacted by the alleged violations contained in the Consent Order...." *Id.* at 38.

"although we are under no obligation to do so, in the interest of fostering amicable customer relations, the Money Store has reapplied all of the Cardiello's payments from the inception of the loan using the latter interest calculation method. As a result of this reapplication the current outstanding balance of the subject loan is now $163.21, due June 15, 2000."

The letter explained that a spreadsheet describing the reamortization was attached and invited plaintiffs to contact Mr. Winterbottom directly, at his personal extension.

On July 17, 2000, Mr. Winterbottom mailed plaintiffs a "follow-up" letter. *See* Reply Aff. of Mark Buechner, Ex. G. Mr. Winterbottom first addressed plaintiffs' concern about being unable to locate a description of the "simple interest" method by directing them to the description of the method found on their TILA disclosure statement and apparently enclosing a copy of the statement with the pertinent passage highlighted. Next, Mr. Winterbottom responded to plaintiffs' assertion that they did not receive a check from the Money Store in connection with the FTC agreement. He informed plaintiffs that he regretted that the Money Store did not have a copy of the check itself, but referred the plaintiffs to the spreadsheet enclosed in his letter of June 28 as evidence that the change in interest calculation was to plaintiffs' advantage. Finally, "in the interest of amicable customer relations," the Money Store agreed to waive the remaining balance on plaintiffs' account and release the lien on its secured property. Mr. Winterbottom stated that he was returning plaintiffs' July 6, 2000 personal check for $191.71 [5] with the letter and again invited plaintiffs to contact him directly on his personal extension.

[5]      Plaintiffs appear to have written defendants a letter on July 6, 2000 in which they submitted a check for the balance due. Since that letter is not explicitly referred to in the Complaint, however, we do not consider it on this motion to dismiss.

Plaintiffs filed this action on September 27, 2000 and defendants moved to dismiss on January 19, 2001.

STANDARD OF REVIEW

Defendants move to dismiss plaintiffs' claims, pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1367(c). In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), we accept as true all material factual allegations in the Amended Complaint, *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir.1992), and may grant the motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. DeBuono,* 101 f.3d 888, 891 (2d Cir.1996); *see Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "General, conclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085 (2d Cir.1995) (citing *Jenkins v. S & A Chaissan & Sons, Inc.,* 449 F.Supp. 216, 227 (S.D.N.Y.1978); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1363, at 464–65 (2d ed.1990). In addition to the facts set forth in the Amended Complaint, we may also consider documents attached thereto and incorporated by reference therein, *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 67 (2d. Cir.1998), matters of public record such as case law and statutes, *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d. Cir.1998), and matters of judicial notice. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991).

## DISCUSSION

### I. Federal Truth in Lending Act

**\*3**  TILA's primary purpose is to help the unsophisticated consumer understand the real costs of financing. Thus, the Act seeks "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. "To accomplish its purpose, the TILA and its implementing Regulation Z require lenders to disclose to consumers certain material terms clearly and conspicuously in writing, in a form that the consumer may examine and retain for reference." *In re Ralls,* 230 B.R. 508, 515 (E.D.Pa 1999). 15 U.S.C. § 1640 creates a private right of action for violations of TILA.

Plaintiffs allege that defendants violated § 1638 of TILA and Regulation Z, 12 C.F.R. § 226.18, in two respects. [6] First, plaintiffs allege that the disclosure statement defendants provided them in 1985 misrepresented the amount of

principle and finance charges plaintiffs were required to pay. Furthermore, plaintiffs contend that defendants took affirmative steps in the first half of 2000 to conceal these misrepresentations and coerce plaintiffs to pay the disputed sums. Second, plaintiffs allege that defendants failed to compensate plaintiffs, pursuant to the FTC Agreement, for TILA violations arising from defendants' method of calculating interest. [7]  For the purposes of deciding this motion, we will assume that the disclosure statement defendants provided to plaintiffs violated § 1638 of TILA and Regulation Z, 12 C.F.R. § 226.18.

[6]     Plaintiffs have chosen not to pursue their third and fourth claims for relief under 15 U.S.C. § 1666. *See* Plaintiffs' Opposition Brief at note 1. Accordingly, these claims are dismissed.

[7]     This allegation was not articulated in the Complaint. However, since plaintiffs raise it in their opposition papers and would be permitted to amend the Complaint to add it, we consider it on this motion.

Congress provided a one year statute of limitations for private actions based on violations of TILA. *See* 15 U.S.C. § 1640(e) ("[A]ny action under this section may be brought... within one year from the date of the occurrence of the violation."). It is well-settled law that in "closed-end credit" [8] transactions, like the one at issue, the "date of the occurrence of violation" is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs. *See Salois v. Dime Sav. Bank,* 128 F.3d 20, 25 (1st Cir.1997); *King v. State of California,* 784 F.2d 910, 914 (9th Cir.1986); *K/O Ranch, Inc. v. Norwest Bank,* 748 F.2d 1246, 1248–49 (8th Cir.1984); *In re Smith (Smith v. American Fin. Sys., Inc.),* 737 F.2d 1549, 1552 (11th Cir.1984); *Bartholomew v. Northampton Nat. Bank,* 584 F.2d 1288, 1296 (3d Cir.1978); *Stevens v. Rock Springs Nat. Bank,* 497 F.2d 307, 309–10 (10th Cir.1974); *Wachtel v. West,* 476 F.2d 1062, 1066 (6th Cir.1973); *Van Pier v. Long Island Sav. Bank,* 20 F.Supp.2d 535, 538–39 (S.D.N.Y.1998). Thus, at the latest, plaintiffs' TILA claims accrued when the mortgage was closed in 1985 and when the Money Store allegedly failed to comply with the FTC Settlement in 1991. In either case, the one year statute of limitations ran years ago unless plaintiffs can demonstrate that it should be tolled.

[8]     The distinction between "open-end" credit (i.e., an open line of credit like a credit card or revolving

credit facility) and a "closed-end credit" (i.e., a consummated loan like a mortgage or auto loan), is discussed in *Baskin v. G. Fox & Co.,* 550 F.Supp. 64, 66–67 (D.Conn.1982).

**\*4** Although the Second Circuit has yet to determine whether the doctrine of equitable tolling applies delay the commencement of the running of the statute of limitations under TILA § 1640, the weight of authority overwhelmingly suggests that it does. *See Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703, 706 (11th Cir.1998) (equitable tolling can apply to TILA § 1640 actions); *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3d Cir.1998) (same); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.,* 118 F.3d 1157, 1166–67 (7th Cir.1997) (same); *King v. State of California,* 784 F.2d 910, 914–15 (9th Cir.1986) (same); *Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037, 1039–43 (6th Cir.1984) (same); *Eubanks v. Liberty Mortgage Banking Ltd.,* 976 F.Supp. 171, 174 (E.D.N.Y.1997) (same); *Campbell v. Chandler Assoc., Inc.,* No. 95–CV–1770, 1997 U.S. Dist. LEXIS 3998, 1997 WL 151889 at \*2 (N.D.N.Y. March 28, 1997) (same); *but see Hardin v. City Title & Escrow Co.,* 797 F.2d 1037, 1039–41 (D.C.Cir.1986) (dicta suggesting that equitable tolling would not apply to a TILA § 1640 claim). We find ourselves in agreement with the essential analysis underlying the weight of precedent and, accordingly, consider whether the federal doctrine of fraudulent concealment tolls plaintiffs' TILA § 1640 claims.

The federal doctrine of fraudulent concealment tolls the statute of limitations "where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part." ' *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (*quoting Bailey v. Glover,* 21 Wall. 342, 88 U.S. 342, 348, 22 L.Ed. 636 (1874)); *see Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977)( "(r)ead into every federal statute of limitations ... is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit."); *Atlantic City Elec. Co. v. General Elec. Co.,* 312 F.2d 236, 239 (2d Cir.1962) (en banc). Specifically,

"The Second Circuit finds equitable tolling on the basis of fraudulent concealment if the plaintiff shows "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within [the applicable statutory

period] of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part." *Campbell,* 1997 U.S. Dist. LEXIS 3998 at \*5 (*citing State of New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir.1988)).

The *sine qua non* of fraudulent concealment is that the defendant fraudulently concealed from the plaintiff his cause of action *during the time in which plaintiff could have brought that action.* Absent such allegations, equitable tolling does not apply. *See In re Woolaghan,* 140 B.R. 377, 382 (W.D.Pa.1992); *Hubbard v. Fidelity Federal Bank,* 824 F.Supp. 909 (C.D.Cal.1992), *aff'd in part and rev'd in part,* 91 F.3d 75 (9th Cir.1994).

**\*5** In cases involving TILA, "the courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations." *Pettola v. Nissan Motor Accept. Corp.,* 44 F.Supp.2d. 442, 450 (D.Conn.1999) (*citing Evans v. Rudy– Luther Toyota, Inc.,* 39 F.Supp.2d 1177 (D.Minn.1999); *Jones v. Saxon Mortg.,* 980 F.Supp. 842, 846 (E.D.Va.1997); *Kicken v. Valentine Prod. Credit Ass'n,* 628 F.Supp. 1008, 1011 (D.Neb.1984), *aff'd,* 754 F.2d 378 (8th Cir.1984) (table decision); *Hughes v. Cardinal Fed. Sav. & Loan Ass'n,* 566 F.Supp. 834, 838 (S.D.Ohio 1983)). The holdings make good sense because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified. *See Hughes,* 566 F.Supp. at 838 ("otherwise the one- year statute of limitations would be tolled in almost every TILA action in which a non-disclosure violation was found and the statutory limitations provision would be a nullity"). Thus, we turn to the Complaint and look for the fraudulent conduct defendants are alleged to have undertaken, aside from the purported misrepresentation on the disclosure statement, during the one-year statute of limitations period following the loan.

The Complaint makes the generalized allegation that "[t]he foregoing acts and omissions of Defendants were undertaken by them willfully, maliciously, intentionally, knowingly, and/ or in gross or reckless disregard of the rights of Plaintiffs." Complaint at ¶ 42. However, a cursory examination reveals that all of the "acts and omissions" attributed to defendants occurred in 2000. Complaint at ¶ 23–40 (acts and omissions described allegedly occurred between January 2000—July 7, 2000). In order to make even a prima facie case for equitable tolling, plaintiffs would have to allege that defendants took actions, apart from the disclosure statement and during

the one-year statute of limitations period, in an attempt to fraudulently conceal plaintiffs' cause of action. However, the Complaint does not allege that defendants committed any act of fraud towards plaintiffs or, indeed, *any act whatsoever* during the year following the disclosure statement. Thus, equitable tolling does not apply and any questions concerning the nature of defendants' acts in the year 2000 are moot.

Turning plaintiffs' second cause of action under TILA § 1640, we find no merit in the contention that defendants violated TILA by allegedly failing to mail a check to plaintiffs pursuant to the FTC Agreement. Leaving aside the question of whether plaintiffs have any evidence to support this allegation, [9] TILA provides no relief for the Money Store's failure to pay. Failure to comply with an FTC agreement simply is not a TILA violation of TILA § 1638. Accordingly, plaintiffs have failed to state a claim under TILA § 1640.

[9]    We do not look beyond the four corners of the Complaint and the narrow range of related documents in deciding this motion. However, we do note that defendants have proffered substantial evidence to suggest that plaintiffs received and cashed a check from the Money Store as compensation from the FTC Agreement. Specifically, defendants have produced a contemporary computer print-out of a compliance report submitted to the FTC as part of the Agreement in which they reported that plaintiffs had cashed a check for $235.86 that had cleared on March 31, 1992. *See* Aff. of Mark Buechner in Motion to Dismiss, Ex. C, D. Furthermore, defendants aver that they have located a box containing the checks that the Money store sent to customers as part of its compliance with the FTC Agreement, but which were *not* cashed by customers. Defendants swear that they have reviewed the checks in the box and that the check to plaintiffs was not among them. *See* Reply Aff. of Mark Buechner at ¶ 4. Despite plaintiffs' protestations to the contrary, this evidence would likely be admissible as business records.

 **\*6** Finally, in an effort to avoid application of the one-year statute of limitations, plaintiffs raise the alternative grounds "separate accrual" and "triviality." Although plaintiffs dress their argument in the garb of the "separate accrual" doctrine, it fails for the same reason that courts have rejected a "continuing violation" theory for TILA claims—namely, it

is well-settled that TILA claims for inaccurate disclosure statements accrue at the time loans are made, not upon each payment inconsistent with the statement's terms. *See Van Pier v. Long Island Sav. Bank,* 20 F.Supp.2d 535, 538–39 (S.D.N.Y.1998) (citing numerous authorities). The doctrine of "triviality" fares no better. It provides that a plaintiff's claims generally do not accrue until his injury is sufficiently severe that he is put on notice that he may be injured. The paradigm example is someone punched in the face who does not discover until some years later that the injury has actually caused a degenerative condition whose signs have only recently become outwardly manifest. In contrast to this hidden condition, evidence of discrepancies between the disclosure statement and the underlying terms of the loan is immediately available by simply comparing the loan documents, disclosure statement and any account statements. Accordingly, courts have consistently held that TILA claims accrue at the time of the loan is made, not when events thrust evidence of the violation in front of plaintiffs' eyes. *Id.*

Taken together, plaintiffs arguments reflect a basic misunderstanding about the breadth of TILA's application. Although remedial in their purpose, TILA's disclosure requirements are precise in their focus. In the case of "closed-end credit" arrangements, as at bar, they deal almost exclusively with the time leading up to and including the loan transaction itself. The one-year statute of limitations, paucity of provisions dealing with events after the requisite disclosures, and explicit language of 15 U.S.C. § 1634 [10] only provide further evidence of Congress' intent not to extend TILA liability far beyond the loan transaction itself. Plaintiffs' TILA claims fail because they attempt to relate-back conduct temporally and causally remote from the disclosure statement. Thus, for the reasons stated above, plaintiffs' claims under TILA § 1640 for violations of TILA § 1638 and Regulation Z, 12 C.F.R. § 226.18 are dismissed.

[10]    15 U.S.C. § 1634 reads: "If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part."

## II. Real Estate Settlement Procedures Act

Congress enacted RESPA after finding "that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided

Cardiello v. The Money Store, Inc., Not Reported in F.Supp.2d (2001)
Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 70 of 93
2001 WL 604007

with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices...." 15 U.S.C. § 2601(a). To wit, Congress intended RESPA to improve disclosure of settlement costs, reduce kickbacks and costly referral fees, reduce required escrow payments for real estate taxes and insurance and improve recordkeeping of land title information. 15 U.S.C. § 2601(b).

**\*7** RESPA § 2605(e), the provision at issue, provides that when a covered mortgagor receives a "qualified written request" from a borrower "for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." RESPA § 2605(e)(1)(a). Furthermore, no later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt of the request, the servicer must:

"(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." RESPA § 2605(e)(1)

If a defendant fails to respond to a qualified inquiry in the manner prescribed by RESPA § 2605, he may be liable for plaintiffs' actual damages, costs and, "in the case of a pattern or practice of noncompliance with the requirements of this section," additional damages not to exceed $1000. RESPA § 2605(f)(1)(A) and (B), (f)(3).

Plaintiffs allege that defendants' inadequate response to plaintiffs' "qualified written request" of June 8, 2000 violated RESPA § 2605. Specifically, plaintiffs allege that defendants "knowingly and/or recklessly misrepresented the correct amount owed by Plaintiffs, [and] by failing to acknowledge that there had been a violation of the disclosure requirements...." Complaint at ¶ 53. For the purposes of this motion, we will assume that the Loan was covered by RESPA § 2605 and that plaintiffs' letter of June 8, 2000 constituted a "qualified written request." Nonetheless, plaintiffs' claim is without merit.

Defendants' letter of June 28, 2000 fulfilled defendants' RESPA § 2605(e)(1)(a) obligation to acknowledge receipt within 20 days. *See* Complaint at ¶ 36; Aff. of Mark Buechner in Motion to Dismiss, Ex. F (June 28, 2000 letter from P.T. Winterbottom to plaintiffs' counsel Paul Grobman) ("I am writing in response to your undated correspondence, which was received in our Collections Department on June 9, 2000...").

**\*8** Defendants' letter of July 17, 2000 [11] clearly fulfilled defendants' obligations under RESPA § 2605(e)(2). The letter clearly provided the "reasons for which the servicer believes the account of the borrower is correct as determined by the servicer," the "information requested by the borrower [the description of 'simple interest'] or an explanation of why the information requested is unavailable or cannot be obtained by the servicer [explaining that cashed FTC check was destroyed]," and "the name and telephone number of an individual [P.T. Winterbottom] employed by, or the office or department of, the servicer who can provide assistance to the borrower."

[11]     The Complaint describes this letter as having been sent on July 7, 2000. Complaint at ¶ 40. However, a copy of the letter was enclosed in Aff. of Mark Buechner in Motion to Dismiss, Ex. G, and is dated July 17, 2000. The difference is immaterial, however, as both dates fall well within the 60 day response time provided under RESPA § 2605(e)(2).

Furthermore, far more important than this technical compliance is the bottom-line: *defendant waived the balance of plaintiffs' loan.* The very purpose of RESPA § 2605 is to guarantee that lenders respond to borrowers concerns. Since it is difficult to imagine a greater accommodation than forgiving the entire amount of a loan in dispute, it strikes this Court that defendants went far beyond what was required of them under RESPA § 2605. Certainly, they did not violate it. Moreover, even assuming plaintiffs could allege that defendants had failed to comply with RESPA § 2605 in some technical respect, plaintiffs appear to have suffered no damages—the entire balance of the loan was waived.

To the extent plaintiffs' claim that defendants violated RESPA § 2605(e)(2) by "taking action with respect to the inquiry of the borrower" prior to providing plaintiffs with the information they requested (a claim proposed in their opposition brief but not appearing in the Complaint), they misconstrue the statute. Specifically, plaintiffs contend that defendants' demands for payment in their letters of June 13 and 21, 2000 constituted "taking action" which plaintiffs argue RESPA § 2605(e)(2) forbids. RESPA § 2605(e)(2) states, in relevant part: "Not later than 60 days... after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall [investigate and respond to plaintiff's inquiry]." Putting aside the impact of the qualification "if applicable," it does not appear that sending letters reminding customers of balances due and the consequences of failing to pay constitutes "action with respect to the inquiry of the borrower."

A review of the legislative history and relevant caselaw provides no explicit guidance as to the meaning of "action with respect to the inquiry of the borrower." In this absence, we look to the statute's plain meaning and purpose. RESPA's basic purpose is to protect borrowers from exploitation by lenders. Disclosure and timely response requirements, such as RESPA § 2605, serve to inform borrowers. However, disclosure or response is of little value if lenders have instituted some significant action involving third parties while their investigation is ongoing. It appears from the statute's language and structure that provisions such as RESPA § 2605(e)(3), which prohibits a lender from reporting to a "consumer reporting agency" any overdue payment disputed by a borrower in a qualified inquiry, guard against this risk. We read RESPA § 2605(e)(2)'s "action with respect to the inquiry of the borrower" in the same manner—i.e., a lender cannot take an adverse action against the borrower, related to a

qualified inquiry, before responding to the inquiry. Reading it to mean that lenders cannot correspond with borrowers about an inquiry at all until they have investigated it fully would create a needless technical obstacle unrelated to the statute's objectives. In the absence of any indication Congress intended this expansive reading, we will not find it.

**\*9** Although we need not decide here what precisely would constitute "action [s] with respect to the inquiry of the borrower," they might well include commencing foreclosure proceedings against the borrower or suing the borrower. However, sending standard balance due demand letters alone does not constitute an "action with respect to the inquiry of the borrower." Indeed, we take judicial notice of the fact that a great deal of correspondence from consumer lenders is standardized, computer generated notices that are routinely issued with little or no individual review. Although automation would not excuse otherwise illegal actions, elevating routine notices to statutory violation in the absence of any harm is wholly unwarranted. Thus, we find that defendants' letters of June 13 and 21, 2000 did not constitute "action[s] with respect to the inquiry of the borrower" and, accordingly, did not violate RESPA § 2605(e)(2). Accordingly, plaintiffs' RESPA claim is dismissed.

### III. State Claims

We have dismissed plaintiffs' federal claims which were the sole predicate for federal jurisdiction. When federal claims are dismissed, retention of state law claims under supplemental jurisdiction is left to the discretion of the trial court. *See* 28 U.S.C. § 1367(c)(3) (1994) ("[d]istrict courts may decline to exercise supplemental jurisdiction over a claim [if]... (3) the district court has dismissed all claims over which it has original jurisdiction."); *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994); *In re Merrill Lynch Ltd. Partnerships Litig.,* 7 F.Supp.2d 256, 258 (S.D.N.Y.1997). We decline to exercise supplemental jurisdiction over plaintiffs' New York state law claims. Accordingly, we dismiss them.

CONCLUSION

For the reasons discussed above, plaintiffs' federal claims are dismissed for failure to state a claim on which relief can be granted and we decline to exercise supplemental jurisdiction over the remaining state law claims.

IT IS SO ORDERED.

**Cardiello v. The Money Store, Inc., Not Reported in F.Supp.2d (2001)**

2001 WL 604007

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 604007

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 73 of 93

Ledgerwood v. Ocwen Loan Servicing LLC, Not Reported in Fed. Supp. (2015)

2015 WL 7455505

2015 WL 7455505
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Victory LEDGERWOOD f/k/
a Gail Ledgerwood, Plaintiff,
v.

OCWEN LOAN SERVICING LLC, et al., Defendants.

15 Civ. 1944 (BMC)
|
Signed 11/21/2015

**Attorneys and Law Firms**

Victory Ledgerwood, New York, NY, pro se.

Adam Michael Swanson, Blank Rome LLP, New York, NY, for Defendant.

### MEMORANDUM DECISION AND ORDER

COGAN, District Judge.

**\*1**    Plaintiff *pro se* brings this action to challenge alleged violations of law surrounding a residential mortgage loan that she obtained. These kind of claims are more typically asserted as defenses or counterclaims in mortgage foreclosure actions, but plaintiff has exercised her right in this Court to assert federal statutory claims under the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq.,* the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and the Fair Credit Reporting Act, 15 U.S.C. § 1681, together with state law claims under this Court's supplemental jurisdiction, see 28 U.S.C. § 1967.

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on statutes of limitation and pleading deficiencies. Defendants' motion is granted as to plaintiff's federal claims, and I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

### BACKGROUND

Plaintiff's loan, for $293,600.00, closed on September 14, 2006. New Century Mortgage Corporation was the originating lender, and the documents identified plaintiff and Jim L. Williams as the borrowers. Shortly before commencement of this action, Williams and plaintiff executed an assignment and assumption agreement, assigning Williams' interest to plaintiff.

Pursuant to a Pooling and Servicing Agreement ("PSA"), the Deutsche Bank National Trust Company, Trustee for Securitized Asset Backed Receivables LLC 2007-NC1 Trust (the "Trust"), was established January 1, 2007. After the transaction closed, the loan and note were transferred to the Trust. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee of record and nominee for New Century. On July 25, 2014, MERS assigned the mortgage to the Trust. Defendant Ocwen Loan Servicing LLC is the servicer of the Note, Mortgage, and Loan.

The complaint contains a section entitled "General Allegations." It is prolix, but in essence, it asserts that none of defendants have standing to enforce the loan or foreclose on the mortgage. A recurrent theme through it and the substantive counts is that defendants failed to disclose to plaintiff that her loan was going to be securitized. Further, because the loan was not allegedly securitized in accordance with the PSA, plaintiff alleges that defendants cannot attempt to foreclose on the property.

The substantive counts are more concise, perhaps too concise, as plaintiff's theory is not always clear. They have been augmented by plaintiff's opposition to defendant's motion to dismiss. I am reading these together as constituting plaintiff's claims. Count I alleges that defendant Ocwen violated the Real Estate Settlement and Procedures Act ("RESPA") by untimely posting plaintiff's monthly mortgage payment and then charging fees for lateness. It also alleges that Ocwen failed to adequately respond to what is known under RESPA as a "Qualified Written Request," i.e., a request for information. Count II alleges defendants violated the Truth in Lending Act by failing to make certain disclosures to plaintiff about her loan. Count III alleges that Ocwen wrongly reported one or more defaults on the mortgage to credit reporting agencies. Counts IV through IX are variously named state law causes of action against all defendants.

### DISCUSSION

**I. Standard on a Motion to Dismiss**
**\*2**    The basis for evaluating a complaint challenged under Federal Rule of Civil Procedure 12(b)(6) is well established. A complaint must plead "enough facts to state a claim to relief

Case 5:25-cv-00935-AMN-TWD     Document 8     Filed 10/14/25     Page 74 of 93

Ledgerwood v. Ocwen Loan Servicing LLC, Not Reported in Fed. Supp. (2015)

2015 WL 7455505

that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim will be considered "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678 (internal quotation marks omitted). When deciding a motion to dismiss, all factual allegations in the plaintiff's complaint are presumed to be true and viewed in a light most favorable to the plaintiff. See Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993). Additionally, the Court may only consider "the complaint as well as 'any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference.' " Alyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc., 742 F.3d 42 (2d Cir. 2014) (quoting Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001)).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. The Court is required to read the Plaintiff's *pro se* complaint liberally and interpret it raising the strongest arguments it suggests. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197 (2007); Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); Sealed Petitioner v. Sealed Defendant # 1, 537 F.3d 185, 191-93 (2d Cir. 2008).

## II. RESPA

"The purpose of RESPA is to 'insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.' " Kapsis v. Am. Home Mortg. Serv. Inc., 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013) (quoting 12 U.S.C. § 2601(a)). Plaintiff alleges that defendants violated RESPA by accepting charges for the rendering of real estate services that were different from the services actually performed under 12 U.S.C. § 2607(a). Plaintiff also alleges that defendants insufficiently responded to her Qualified Written Request ("QWR") regarding late fees that were charged to her account in 2012, under 12 U.S.C. § 2605. Defendants move to dismiss plaintiff's claim under § 2607, asserting it is time barred by a one-year limitations provision, and that, in any event, their response to the QWR was legally sufficient.

Although somewhat difficult to discern, plaintiff's allegation seems to be that defendants violated RESPA by charging her late fees and overcharges for her mortgage payments. Section 2607 provides that "no person shall accept any fee, kickback or thing of value ... incident to or a part of a real estate settlement service involving a federally related mortgage loan." A settlement service includes any service provide in connection with a real estate settlement, such as title searches, property surveys, and the origination of a federal mortgage loan. McAnaney v. Astoria Fin. Corp., 357 F. Supp. 2d 578, 588 (E.D.N.Y. 2005) (citing 12 U.S.C.A. § 2602). It is not clear that plaintiff's complaint adequately pleads a violation of 2607; her claim that defendants charged her late fees is not the type of conduct generally covered under a settlement service.

However, even if it did, plaintiff's claim is time barred. Claims under section 2607 of RESPA are subject to a one-year limitations period. See 12 U.S.C. § 2614. In a closed-end transaction, such as a mortgage loan, "the date of accrual for the statute of limitations is the date the plaintiff entered the loan agreement." Gorbaty v. Wells Fargo Bank, N.A., No. 10 Civ. 3291, 2014 WL 4742509, at *10 (E.D.N.Y. Sept. 23, 2014). Plaintiff's loan closed on September 14, 2006, so the limitations period on her claim expired a year later.

**\*3** Plaintiff also alleges that there were deficiencies in response to her August 4, 2014 QWR under Section 2605 of RESPA. Plaintiff's QWR requested documentation related to her loan and asked questions about certain late fees she had been charged for untimely mortgage payments. Defendants responded to plaintiff's QWR on August 15, 2014 and provided her with documentation. Defendants said that they had conducted an investigation and were unable to ascertain any specific errors in her account. They also objected to some of plaintiff's requests on the basis that they were overbroad and beyond the scope of a QWR. Plaintiff sent a follow-up letter on August 25, 2014, asserting that defendants had not met their obligations under RESPA. Defendants responded to this letter shortly thereafter and provided additional details regarding the alleged overcharges for plaintiff's late mortgage payments.

Plaintiff attached her first QWR and defendants' response to it to her complaint. She attached her second QWR, along with defendants' response, to her Opposition to Defendants' Motion to Dismiss. In deciding a motion to dismiss the Court may consider the facts stated in the complaint, or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Kramer v. Time

Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991). Plaintiff discusses the QWR she filed, as well as defendants' response in her complaint, and I therefore deem incorporated into the complaint all attached correspondence relating to the QWRs. Defendant argues that its response to the QWR was sufficient under RESPA.

Under § 2605(e), in responding to a QWR, defendants are obligated to:

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

Defendant is correct. In her QWR, plaintiff identified several issues she believed were associated with her account, such as late fees. Defendant Ocwen's reply letters clearly fulfilled its statutory obligations under section 2605. For example, late charges were posted to plaintiff's account in July 2012 and August 2012. Ocwen responded by explaining that plaintiff's loan payment was due on the first of every month, but mortgagors were given a fifteen day grace period. Defendant Ocwen went on to explain that in July and August 2012, plaintiff's account had insufficient funds to pay the mortgage and the payment was returned to plaintiff's account with late charges. Defendant Ocwen responded to plaintiff's QWR

comprehensively. Plaintiff has failed to state a claim that defendants violated section 2605.

### III. TILA

Congress enacted the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Plaintiff alleges that defendants violated TILA by failing to disclose certain charges to her, never disclosing that her Loan was securitized, and never giving her notice of her right to rescind. She therefore wishes to rescind her mortgage. Defendants argue that TILA does not apply to residential mortgage loans, and that the three year statute of limitations bars her claim.

**\*4** TILA provides that a borrower whose loan is secured by her "principal dwelling" and has not been provided the required disclosures has the right to rescind her loan. See 15 U.S.C. § 1635(a). However, TILA does not apply to a residential mortgage transaction as defined by the statute. 15 U.S.C. § 1635(e); see also Eubanks v. Liberty Mortg. Banking Ltd., 976 F. Supp. 171, 174 (E.D.N.Y. 1997). Plaintiff's mortgage falls within the definition of a "transaction ... to finance the acquisition ... of a dwelling." 15 U.S.C. § 1602(x).

In Grimes v. Fremont General Corp., 785 F. Supp. 2d 269, 284-85 (S.D.N.Y. 2011), the plaintiffs sought to rescind their mortgage because they alleged they never received the required rescission notices. The court denied the plaintiffs' request because the "[a]mended Complaint and attached documents undisputedly establish that the funds Plaintiffs received from Fremont were used to finance the acquisition of the Newburgh home, and that Plaintiffs planned to, and did, use the home as their dwelling." Id. at 284-85. Plaintiff's complaint, as well as the mortgage plaintiff signed, both confirm that plaintiff intended to use the property as her dwelling. Plaintiff's loan is not eligible for rescission under TILA.

Additionally, defendants' alleged failure to provide notice of the right to rescission does not change the statute of limitations. 17 U.S.C. § 1635(f). There is a three year limitations period on the rescission remedy that begins to run upon the consummation of the transaction or sale of the property, whichever occurs first. Id. Plaintiff executed the mortgage on September 14, 2006; the statute of limitations

Ledgerwood v. Ocwen Loan Servicing LLC, Not Reported in Fed. Supp. (2015)

2015 WL 7455505

had expired by September 14, 2009. Even if plaintiff had stated a valid rescission claim, it would be time barred.

Plaintiff also alleges defendants violated Regulation Z in her complaint. 12 C.F.R. § 226.39. Regulation Z, which contains amendments to TILA, requires the disclosure of certain information to a consumer who owns a mortgage property when the loan which the property secures is sold, assigned or otherwise transferred. Boniel v. U.S. Bank, N.A., No. 12 Civ. 3809, 2013 WL 458298, at *5 (E.D.N.Y. Feb. 6, 2013). Regulation Z was amended in 2009 to require these disclosures, but it is not retroactive. Urban v. JP Morgan Chase Bank, N.A., No. 12 Civ. 10303, 2013 WL 1144917, at *5 (D. Mass. Mar. 18, 2013). Since the Trust to which the property was assigned was created in 2007, plaintiff has not stated a claim for a violation of Regulation Z.

Finally, any additionally claims plaintiff may wish to assert under TILA are also time-barred. Section 1640(e) provides that "[a]ny action under this section may be brought ... within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). It is well settled that in "closed-end transactions," the "date of the occurrence of the violation" is no later than the date the plaintiff enters the loan agreement. Granucci v. Wells Fargo Bank, N.A., No. 09 Civ. 4417, 2010 WL 5475613, at *2 (E.D.N.Y. Dec. 17, 2010). A closed-end transaction includes a completed loan like a mortgage or a car loan. McAnaney v. Astoria Fin. Corp., No. 04 Civ. 1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007). As noted above, plaintiff's mortgage closed well over a year ago. Her TILA claims are time barred.

### IV. Fair Credit Reporting Act

Plaintiff alleges that defendants violated the Fair Credit Reporting Act ("FCRA") by improperly reporting negative information to the Credit Reporting agencies. Section 1618s-2(b) of the FCRA creates a private right of action – but only if "only if plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." Nguyen v. Ridgewood Sav. Bank, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014). Plaintiff has failed to meet these requirements. Defendant Ocwen is considered a "furnisher of information" to consumer reporting agencies. See Redhead v. Winston & Winston, P.C., No. 01 Civ. 11475, 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002). The duty to investigate under the FCRA only arises

when a plaintiff can show that a furnisher of information received information regarding a consumer's credit directly from a reporting agency. Id. at *4; see also Prakash v. Homecomings Fin., No. 05 Civ. 2895, 2006 WL 2570900, at *2-3 (E.D.N.Y. Sept. 5, 2006). Plaintiff asserts in her response to defendants' motion to dismiss that she notified the credit agencies of a dispute in June 2015 – several months after the complaint was filed. This does not matter. Plaintiff has failed to show that Ocwen, a furnisher of information, received notice of a credit dispute from a credit reporting agency.

### V. Plaintiff's State Law Claims

 **\*5** The decision whether to exercise supplemental jurisdiction is within the discretion of the district court. See Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90 (2d Cir. 1998). In doing so, the district court should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614 (1988). One of the grounds for declining supplemental jurisdiction, specifically listed in 28 U.S.C. § 1367, is where the district court has dismissed the claims over which it has original jurisdiction. The Second Circuit has indicated that generally, "if federal claims are dismissed before trial ... the state claims should be dismissed as well." Castellano v. Bd. Of Trustees, 937 F.2d 752, 758 (2d Cir. 1991). Plaintiff's claims for intentional misrepresentation, unjust enrichment, civil conspiracy, wrongful foreclosure intentions, cancellation of her mortgage, and an action to quiet title, are all state law claims and neither judicial economy, convenience, fairness, nor comity weighs in favor of retaining them. I therefore decline to exercise supplemental jurisdiction over plaintiff's state law claims.

### CONCLUSION

Defendants' motion to dismiss is granted as to plaintiff's federal claims. Her state claims are dismissed without prejudice. The Clerk is directed to enter judgment accordingly.

### SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2015 WL 7455505

**Ledgerwood v. Ocwen Loan Servicing LLC, Not Reported in Fed. Supp. (2015)**

2015 WL 7455505

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

2022 WL 875902
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Derry SYKES, Plaintiff,
v.
NEW YORK CITY HOUSING
AUTHORITY, Defendant.

1:22-CV-2127 (MKV)
|
Signed 03/24/2022

**Attorneys and Law Firms**

Derry Sykes, New York, NY, Pro Se.

ORDER TO AMEND

MARY KAY VYSKOCIL, United States District Judge:

**\*1** Plaintiff Derry Sykes, who is appearing *pro se*, filed this action asserting claims under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, 42 U.S.C. § 1983, and state law. He sues the New York City Housing Authority ("NYCHA"), and seeks damages as well as declaratory and injunctive relief. Plaintiff has also filed a motion seeking immediate emergency repairs to his NYCHA apartment. (ECF 4.)

By order dated March 18, 2022, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"). For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges the following: Plaintiff and the other members of his household are disabled. [1] They are NYCHA tenants, and live in a NYCHA apartment located in Manhattan. On May 16, 2019, Plaintiff filed a request with NYCHA to have his apartment's walls plastered and painted; the request "was erroneously closed and may have involved forging [P]laintiff['s] signature as signing off on the work ticket." (ECF 2, at 4.) On September 26, 2019, Plaintiff filed another request for the same repairs, but "to date[,] no repairs have [been] made on said ticket." (*Id.* at 5.) More than a year later, on November 4, 2020, Plaintiff filed yet another request for repairs "after several water leaks from tenants above ... flood[ed] [P]laintiff's apartment living room ceiling and walls severely and no repairs ha[ve] been done to date." (*Id.*) More than a year after that, on December 9, 2021, Plaintiff filed still another request for repairs associated

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

with low water pressure in Plaintiff's bathroom; those repairs never occurred. Leaking pipes in the wall behind Plaintiff's showerhead are the source of the low water pressure. These leaks have caused the electric outlets in Plaintiff's kitchen to malfunction, damaged Plaintiff's washing machine, and present a potential electrical-fire hazard in Plaintiff's kitchen.

1    Plaintiff alleges the following about the members of his household: (1) Plaintiff "suffers from major depression" (ECF 2, at 8); (2) his "common law wife," Elba Malave, is wheelchair bound (*id.* at 2); and (3) Malave's daughter suffers from "a mental disability and receives counseling and medication" (*id.* at 8).

**\*2** Plaintiff visited his NYCHA building manager's office on multiple occasions to complain about NYCHA's failure to repair his apartment. NYCHA employees came to his apartment to take photographs of the areas that required repairs and forwarded those photographs to their supervisors, but no repairs have occurred. The repairs are urgent because Plaintiff is disabled and "resides in [a] retrofitted/Section 504 apartment that demands a higher priority when it comes to completion of repairs." (*Id.* at 6.) NYCHA "is [in] violation of [P]laintiff's [right to] due process of law to adequately and timely make required major repairs to the current condition of [his] premises.... (*Id.*)

Plaintiff lists the current conditions of his NYCHA apartment in the following manner:

    a) Bathroom: (i) Water leaks from the ceiling to base board causing partial collapse; (ii) Water leaks causing the walls to collapse and paint peeling; (iii) Water leaks from shower pipes causing extreme low hot water pressure; (iv) Water leaks from shower pipes traveling to the hallway walls and to kitchen area causing unsanitary, hazardous and dangerous conditions; Water damage to bathroom sink; (v) Water damage[ ] to medicine cabinet; (vi) defective toilet which often floods apartment, do[es] not flush properly and was used when [P]laintiff moved into premises; (vii) Mold around tub, sink, medicine cabinet, shower, walls [and] ceiling; bathroom, shower, tub not draining properly; (viii) Painting [and] plastering needed;

    b) Hallway Adjacent To Bathroom: (i) Water damage causing damage[ ] to the repairs previous[ly] made in the hall ... that resulted in large section[s] of the hallway walls collapsing two (2) years prior to current conditions

complained of; Column base from the floor to ceiling peeling and cracking causing large debris from the walls to fall daily; (ii) Painting [and] plastering needed; (iii) Mold in the hallway caused by water leaks;

    c) Kitchen: (i) Holes in the ceiling and walls stemming from water leaks from shower pipes traveling to kitchen area; (ii) Electric outlets in the kitchen inoperable caused by leaks; (iii) Mold in the kitchen cause[d] by water leaks; (iv) Kitchen cabinets damaged by water leaks;

    d) Living room: (i) Water damage from causing the walls [and] ceiling to collapse in large sections; (ii) Paint [and] plastering needed; (iii) Mold in the living room area w[h]ere leaks occurred.

(*Id.* at 7-8.)

## DISCUSSION

### A. The Fair Housing Act

The Fair Housing Act ("FHA") "broadly prohibits discrimination in housing." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Specifically, it prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, ... national origin," or disability. 42 U.S.C. § 3604(b), (f). Section 3604 makes it unlawful to "discriminate in the ... rental [of], or to otherwise make unavailable or deny, a dwelling to any ... renter because of" the individual's disability. § 3604(f)(1)(A). It also prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a [disability]." § 3604(f) (2). Under the FHA, disability discrimination further includes a refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B).

"To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more ... major life activities'; (2) 'a record of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.' " *See Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015) (quoting 42 U.S.C. § 3602(h)). Generally, to state a claim

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 80 of 93
Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)
2022 WL 875902

of intentional discrimination under the FHA, a plaintiff must allege facts sufficient to show that he "was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.' " *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (emphasis in original) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). " '[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff may not need to prove that her protected status was a but-for cause of the adverse action she suffered, but only a motivating factor." *Id* at 46 (citing *Vega*, 801 F.3d at 86); *Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Coop., Inc.*, No. 10-CV-0912I, 2012 WL 762323, at *7 (S.D.N.Y. Mar. 9, 2012) ("To establish a claim under the FHA ..., Plaintiff must demonstrate that [a protected class] is a motivating factor in" the defendant's actions.).

**\*3** To state a claim under the FHA that a defendant failed to provide reasonable accommodations with respect a plaintiff's disability, however, a plaintiff must allege facts showing:

> (1) that the plaintiff or a person who would live with the plaintiff had a [disability, as defined by the FHA]; (2) that the defendant knew or reasonably should have been expected to know of the [disability]; (3) that the accommodation was likely necessary to afford the [disabled] person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation.

*Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014); *C.T. Fair Hous. Ctr. v. Corelogic Rental Prop. Solutions, LLC*, 369 F. Supp. 3d 362, 379 (D. Conn. 2019). " 'Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.' " *Olsen*, 759 F.3d at 156 (citation omitted). "Requested accommodations are reasonable where the cost

is modest and they do not pose an undue hardship or a substantial burden on the housing provider." *Id.*

Even assuming that Plaintiff has a disability within the meaning of the FHA, Plaintiff fails to allege facts sufficient to state a claim, under the FHA, that NYCHA has intentionally discriminated against him because of his disability or failed to provide reasonable accommodations with respect to his disability. Plaintiff does not provide any facts showing that his disability has been a motivating factor in NYCHA's response to any adverse action NYCHA has taken against him. *See* *Smith v. NYCHA*, 410 F. App'x 404, 406 (2d Cir. 2011) (summary order) ("Smith did not allege that NYCHA failed to provide needed repairs in her apartment because she was disabled, or that NYCHA responded differently to the maintenance requests of non-disabled tenants. Because Smith has not alleged that discriminatory animus was a factor, much less a 'significant factor,' in NYCHA's alleged failure to maintain the apartment building and Smith's apartment, she failed to state a claim for intentional discrimination."). Plaintiff also alleges no facts showing that, but for a requested reasonable accommodation for his disability, he has been denied an equal opportunity to enjoy his apartment. *See* *Higgins v. 120 Riverside Boulevard at Trump Place Condo.* No. 21-CV-4203, 2021 WL 5450205, at *4 (S.D.N.Y. Nov. 19, 2021) ("A plaintiff is not entitled to *preferential* enjoyment of her housing solely by virtue of her disability. Rather, she must show that, but for the accommodation, [she has been denied or] likely will be denied an *equal* opportunity to enjoy the housing of [her] choice.") (internal quotation marks and citations omitted, alterations and emphasis in original); *Riccardo v. Cassidy*, No. 1:10-CV-0462, 2012 WL 651853, at *6 (N.D.N.Y. Feb. 28, 2012) ("Because the amended complaint does not suggest that improvement of these conditions will afford plaintiff equal opportunity to use and enjoy [his dwelling], plaintiff cannot show that his [disability] gives rise to a duty to add a lock on the side door, to cover exposed wiring, and to fix the water meter. Therefore, defendant's motion to dismiss plaintiff's accommodation claims as to these conditions must be granted."). In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his complaint to allege facts to state a claim under the FHA of disability discrimination or failure to provide reasonable disability accommodations.

## B. The Americans with Disabilities Act and the Rehabilitation Act

**\*4** Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 81 of 93

shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." [2] 42 U.S.C. § 12132. Under the Rehabilitation Act, "no otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The definition of "disability" under the ADA and the definition of an individual with a disability under the Rehabilitation Act are nearly identical to the abovementioned definition of disability under the FHA. See 42 U.S.C. §§ 3602(h) (FHA, referred to as "handicap"), 12102(1)(A) (ADA); 29 U.S.C. § 705(20)(B) (Rehabilitation Act). Because the standards under Title II of the ADA and the Rehabilitation Act "are generally the same and the subtle distinctions between the statutes are not implicated in this case, '[the Court will] treat claims under the two statutes identically' " for the purposes of this order, except where otherwise noted. Wright v. N.Y. State Dep't of Corrs., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

[2]     NYCHA is a public entity for the purpose of Title II of the ADA. See, e.g., Williams v. N.Y.C. Hous. Auth., No. 07-CV-7587, 2009 WL 804137, at *6 n.3 (S.D.N.Y. Mar. 26, 2009), aff'd, 408 F. App'x 389 (2d Cir. 2010).

To state a claim under Title II of the ADA or under the Rehabilitation Act, the plaintiff must allege that (1) the plaintiff is a qualified individual with a disability; (2) the defendant is subject to the ADA or the Rehabilitation Act; and (3) the plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of the plaintiff's disability. [3] Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009) (quoting Henrietta D., 331 F.3d at 272). "Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendant[ ] receive[s] federal funding." [4] Henrietta D., 331 F.3d at 272.

[3]     Following the Supreme Court's ruling in Gross v. FBL Fin. Servs., Inc., 557 US 167, 176-77 (2009), in which it held that "age discrimination must be the 'but-for' cause of an adverse employment action for ... liability to attach" under the Age

Discrimination in Employment Act (ADEA), the Second Circuit has not decided whether "but-for" causation or "mixed motive" causation is required to state a claim under Title II of the ADA or a non-employment discrimination claim under the Rehabilitation Act. Bolmer v. Oliveira, 594 F.3d 134, 148-49 (2d Cir. 2010) (discussion in the context of Title II of the ADA). But cf. Natofsky v. City of New York, 921 F.3d 337 (2d Cir. 2019) (holding that "but-for" causation applies to employment discrimination claims brought under the Rehabilitation Act), cert. denied, 140 S. Ct. 2668 (2020).

[4]     NYCHA receives federal funding. See Williams, 2009 WL 804137, at *4.

Again, even assuming that Plaintiff is a qualified individual with a disability for the purpose of Title II of the ADA or the Rehabilitation Act, and is subject to the protections of either of those statutes, Plaintiff has alleged no facts showing that he was denied the opportunity to participate in or benefit from NYCHA's services, programs, or activities, or was otherwise discriminated against by NYCHA, by reason of his disability. See Smith, 410 F. App'x at 406 (discussion in the context of claims under the FHA and Title II of the ADA arising from NYCHA's failure to carry out repairs in its apartments). The Court grants Plaintiff leave to amend his complaint to allege facts to state a claim under Title II of the ADA or the Rehabilitation Act.

## C. 42 U.S.C. § 1983

When a plaintiff sues a municipality or other local government entity under 42 U.S.C. § 1983, it is not enough for the plaintiff to allege that one of the municipality's or other local government entity's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality or other local government entity itself caused the violation of the plaintiff's rights. See Connick v. Thompson, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978))); Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality or other local government entity, the plaintiff must allege facts showing: (1) the existence of a municipal or local government entity policy,

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 82 of 93

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see* *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). This standard has been applied to claims under Section 1983 brought against NYCHA. *See* *Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 576-77 (2d Cir. 1989).

**\*5** Plaintiff alleges no facts showing that a policy, custom, or practice of NYCHA has caused a violation of his federal constitutional rights. The Court grants Plaintiff leave to amend his complaint to state a claim under Section 1983 against NYCHA.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See* *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim against NYCHA under the FHA, Title II of the ADA, the Rehabilitation Act, or Section 1983, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

Plaintiff is granted leave to amend his complaint to provide more facts about his claims. In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against NYCHA. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what the defendant did or failed to do, the approximate date and

time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:22-CV-2127 (MKV). An amended complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the Court will dismiss this action for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf.* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

**\*6** The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Attachment

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.

_____ CV _____
(Include case number if one has been assigned)

-against-

AMENDED

_____

COMPLAINT

_____

Do you want a jury trial?
☐ Yes   ☐ No

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ **Federal Question**

☐ **Diversity of Citizenship**

## A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B. If you checked Diversity of Citizenship

### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

**\*7** **If the defendant is an individual:**

The defendant, _____ , is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of the State of _____ and has its principal place of business in the State of _____ or is incorporated under the laws of (foreign state) _____ and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)

2022 WL 875902

First Name            Middle Initial        Last Name

Street Address

County, City                State                Zip Code

Telephone Number          Email Address (if available)

**B. Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Defendant 2:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Defendant 3:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

Defendant 4:

First Name                Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                State                Zip Code

**III. STATEMENT OF CLAIM**

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

**INJURIES:**

**\*8** If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

Sykes v. New York City Housing Authority, Not Reported in Fed. Supp. (2022)
2022 WL 875902

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 85 of 93

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature | |
|---|---|---|---|
| First Name | Middle Initial | Last Name | |
| Street Address | | | |
| County, City | | State | Zip Code |
| Telephone Number | | Email Address (if available) | |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 875902

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 346682

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Charles V. MARCELIN, Plaintiff,

v.

Lorraine A. CORTES–VAZQUEZ, Loreen Jennifer James, Thomas J. Jordan, Annette M. Hill, Thony Marcelin, Sr., Trevor L. Powell, Defendants.

No. 09–CV–4303 (RRM)(JMA).
|
Jan. 28, 2011.

**Attorneys and Law Firms**

Charles V. Marcelin, Cambridge, MA, pro se.

Elizabeth Prickett–Morgan, New York State Office of the Attorney General, New York, NY, for Lorraine A. Cortes–Vazquez.

Deanna Defrancesco, Nisha Deshmukh, Susan Smollens, NYC Law Department, New York, NY, for Loreen Jennifer James, Thomas J. Jordan, Annette M. Hill.

Bill Tsevis, Solomon & Siris, Uniondale, NY, for Trevor L. Powell, Thony Marcelin, Sr.

***ORDER***

MAUSKOPF, District Judge.

**\*1** Plaintiff, proceeding *pro se,* commenced this action on October 7, 2009 alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 42 U.S.C. § 1983, and 18 U.S.C. § 1028, as well as several additional claims sounding in fraud. All Defendants that have appeared in this action have sought dismissal of the complaint. *See* ECF No. 24 (Defendant Jordan); ECF No. 25 (Defendant Powell); ECF No. 28 (Defendant Hill); ECF No. 32 (Defendant Cortes–Vasquez). In addition, on June 11, 2010, Plaintiff filed motions seeking default judgment against non-appearing Defendants Marcelin, Sr. and James. *See* ECF No. 34; ECF

No. 35. By Order entered June 30, 2010 this Court referred all of the above-referenced motions to the assigned Magistrate Judge, the Honorable Joan M. Azrack, for a Report and Recommendation.

On December 10, 2010, Judge Azrack issued a Report and Recommendation (the "R & R") recommending that Plaintiff's claims against all Defendants be dismissed pursuant to the doctrines of res judicata and collateral estoppel. Judge Azrack further recommended that Plaintiff's motions for default judgment be denied. Judge Azrack reminded the parties that, pursuant to Rule 72(b), any objection to the R & R was due December 24, 2010. On December 30, 2010, the Court received a letter from Plaintiff dated December 16, 2010 objecting to the R & R and requesting leave to amend the complaint.

**PLAINTIFF'S OBJECTIONS TO THE R & R**

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to conduct proceedings on dispositive pretrial matters without the consent of the parties. Fed.R.Civ.P. 72(b). Any portion of a report and recommendation on dispositive matters, to which a timely, specific objection has been made, is reviewed *de novo. Id.; see Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 340 (S.D.N.Y.2009). The district court is not required to review *de novo,* and may instead review for clear error, those portions of a report and recommendation to which no specific objections are addressed. *See Mario,* 313 F.3d at 766; *DiPilato,* 662 F.Supp.2d at 340; *see also Thomas,* 474 U.S. at 150 (1985). After review, the district judge may accept, reject, or modify any of the magistrate judge's findings or recommendations. Fed.R.Civ.P. 72(b)(3).

In light of Plaintiffs timely objections, the Court has reviewed all portions of the R & R *de novo.* Plaintiff's objections, however, ignore the principal rationale underpinning Judge Azrack's recommendation that the complaint be dismissed —*i.e.,* that all of Plaintiff's factual contentions are, and were, the subject of prior litigation in state court. Plaintiff's objections are simply an attempt to re-argue matters previously determined in another forum. As such, Judge Azrack properly concluded that Plaintiff's claims here are precluded by the doctrines of res judicata and collateral estoppel. Finally, Plaintiff's objection that Judge Azrack failed

to "use[ ][her] authority to combat crimes in this case" is also unavailing as this Court lacks the authority to prosecute criminal conduct.

### LEAVE TO AMEND

**\*2**  Plaintiff annexed to his letter objecting to the R & R an "Application to Amend Complaint for Reliefs." Plaintiff seeks to amend his complaint to include claims for damages in various amounts, sounding in fraud, against Defendants Marcelin, Sr., Hill, Jordan, and Powell. Pl.'s Appl. 1–2. For the reasons below, amendment here would be futile, and leave to amend is denied.

The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs. *See* Fed R. Civ. P. 15(a)(2); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Even under this broad standard, however, the Court maintains its discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Amendment may be denied as futile if ordinary principles of preclusion would mandate dismissal of the complaint as amended. *See Day v. Distinctive Personnel, Inc.,* 656 F.Supp.2d 331, 338 (E.D.N.Y.2009); 6 Wright, Miller, et. al., Federal Practice & Procedure § 1487 (3d ed.2010). Plaintiff's proposed amendments here center on alleged frauds committed in the execution of a durable power of attorney, and in the transfer

and recording of a real estate deed—the same claims and issues pled in the original complaint, and previously litigated in a state court. *Compare, e.g.,* Compl. ¶¶ 2, 5, 6, 8–10, ECF No. 1, *and* Pl.'s Objections to R & R 1–2, *with* Pl.'s Appl. 1–2. Judge Azrack concluded, and the Court agrees, that these claims and issues are barred by the doctrines of res judicata and collateral estoppel. Preclusion, therefore, would require dismissal of the complaint as amended. Consequently, the Court declines to grant leave to amend on grounds of futility. *See Day,* 656 F.Supp.2d at 336, 338.

### CONCLUSION

Based upon a *de novo* review of Judge Azrack's thorough and well-reasoned R & R, the factual and procedural record upon which it is based, and after consideration of Plaintiff's objections, the R & R is adopted in all material respects. Accordingly, Plaintiff's motions for default judgment are DENIED, and the complaint is DISMISSED. Leave to amend is DENIED. The Clerk of Court is directed to enter Judgment accordingly and to close the case. The Clerk is further directed to transmit a copy of this Order to Plaintiff *pro se* via U.S. Mail.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 346682

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 88 of 93

Herschaft v. New York City Campaign Finance Board, Not Reported in Fed. Supp. (2022)

2022 WL 19367051

2022 WL 19367051
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Allen S. HERSCHAFT, Plaintiff,
v.
NEW YORK CITY CAMPAIGN
FINANCE BOARD, Defendant.

22-CV-2025 (KAM) (LB)
|
Signed September 28, 2022

**Attorneys and Law Firms**

Allen S. Herschaft, Brooklyn, NY, Pro Se.

### MEMORANDUM AND ORDER

KIYO A. MATSUMOTO, United States District Judge:

**\*1** Plaintiff Allen Herschaft, proceeding *pro se*, brings this action against Defendant New York City Campaign Finance Board (the "Board"), seeking to enjoin the enforcement of certain New York City campaign finance regulations. (ECF No. 1 ("Compl.") at 3.) For the reasons set forth below, Plaintiff's motion to proceed *in forma pauperis* is GRANTED, this action is DISMISSED, and Plaintiff's motions for injunctive relief and sanctions are DENIED AS MOOT.

### BACKGROUND

Plaintiff is a resident of Brooklyn who alleges that he is running for New York City Council. (Compl. at 4; ECF No. 7.) New York City provides optional public financing in campaigns for City Council. *See* N.Y.C. Admin. Code § 3-705. Among other requirements, a candidate must periodically report information to the Board regarding his campaign contributions – including the names and addresses of all contributors – to be eligible for matching public funds. *Id.* § 3-703(6)(a), (b)(ii). [1] Although a candidate need not separately itemize contributions aggregating less than ninety-nine dollars, un-itemized contributions do not receive matching public funds. *Id.* § 3-703(6)(b)(ii). Liberally construed, the complaint claims that these measures violate Plaintiff's First Amendment rights because he "can't collect money in shuls[,] churches[,] and mosques ...

by asking [people] for [their] names[,] addresses[,] and signatures, etc. while they pray." (Compl. at 4.) Plaintiff also appears to claim that the disclosure requirements violate the First Amendment rights of his prospective contributors. (*See id.*)

[1]     Additional disclosures are required for contributions greater than ninety-nine dollars, including the contributor's occupation, employer, and business address. (*Id.* § 3-703(6)(a).)

More than twenty years ago, Plaintiff brought a materially identical lawsuit in this district challenging New York City's campaign finance disclosure laws. Judge Amon dismissed Plaintiff's prior lawsuit, finding that "New York City's campaign finance disclosure requirements pass constitutional muster" and that Plaintiff's "Free Exercise argument is also deficient, and borders on the frivolous." *Herschaft v. N.Y. City Campaign Fin. Bd.*, 127 F. Supp. 2d 164, 168, 170 (E.D.N.Y. 2000) ("*Herschaft I*"). Judge Amon denied Plaintiff's motion for reconsideration, 139 F. Supp. 2d 282 (E.D.N.Y. 2001), and the Second Circuit affirmed Judge Amon's orders "[f]or substantially the reasons set forth by the District Court." 10 F. App'x 21 (2d Cir. 2001). The Supreme Court denied certiorari. 534 U.S. 888 (2001). Plaintiff nevertheless brought this action on April 5, 2022, seeking to enjoin the same disclosure requirements on the same grounds that Judge Amon and the Second Circuit rejected. (*See* Compl. at 3-4.) [2]

[2]     Plaintiff has also brought unsuccessful challenges to other campaign-related laws and regulations. *See Herschaft v. N.Y. Bd. of Elections*, 234 F.3d 1262, 2000 WL 1655036, at *1 (2d Cir. Nov. 3, 2000) (affirming dismissal of First Amendment challenge to New York Election Law § 6-138(4)); *Herschaft v. N.Y. Bd. of Elections*, 37 F. App'x 17, 2002 WL 1225107, at *1 (2d Cir. May 13, 2002) (affirming grant of summary judgment on statutory and equal protection challenges to New York Election Law § 6-138(4)); *Herschaft v. Bloomberg*, 70 F. App'x 26 (2d Cir. 2003) (affirming denial of preliminary injunction regarding First Amendment and equal protection challenges to New York City Administrative Code § 10-119). Separately, Plaintiff brought an action in 2018 alleging unlawful surveillance by various public officials and entities, which Judge Kuntz dismissed as frivolous. *Herschaft v. N.Y. City Police Dep't*, 2018 WL 4861388 (E.D.N.Y. Sept. 28, 2018). Plaintiff's

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 89 of 93

Herschaft v. New York City Campaign Finance Board, Not Reported in Fed. Supp. (2022)

2022 WL 19367051

submissions in this action include arguments challenging Judge Kuntz's dismissal of the prior action. (ECF No. 3-1 ("Pl.'s Mem.") at 7-8.) This action is not the appropriate forum to challenge the dismissal of a prior action, however, and the court accordingly declines to consider Plaintiff's arguments regarding the prior action.

## LEGAL STANDARD

**\*2** In reviewing a *pro se* complaint, the court is mindful that Plaintiff's pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted). Nevertheless, the court shall dismiss an *in forma pauperis* action when the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Plaintiff's claims are barred by the doctrine of *res judicata*. *See, e.g.*, *Corley v. Farrell*, 833 F. App'x 908, 909 (2d Cir. 2021) (noting that the court may *sua sponte* raise *res judicata* (citing *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 398 n.4 (2d Cir. 2003)); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (applying *res judicata* to constitutional claims) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284-91 (2d Cir. 2000)). "Under the doctrine of *res judicata*, or claim preclusion, a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *MacKinnon v. City of New York/Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). *Res judicata* "applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause

of action." *Id.* (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012)).

Here, all four requirements of *res judicata* are satisfied. First, Judge Amon's dismissal of Plaintiff's prior complaint in *Herschaft I* for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) resulted in a final judgment on the merits that was affirmed by the Second Circuit. *See, e.g.*, *Exch. Nat'l Bank of Chi. V. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d Cir. 1976) (explaining that "judgments under Rule 12(b)(6) are on the merits, with *res judicata* effects"). Second, Judge Amon had jurisdiction to decide Plaintiff's federal constitutional challenges to New York City's campaign finance regulations. *See, e.g.*, 28 U.S.C. § 1331. Third, this action and *Herschaft I* involve the same parties – namely, Plaintiff and the Board. (Compl. at 1.) *See Herschaft I*, 127 F. Supp. 2d at 166. Finally, Plaintiff brings the same claims in this action as he did in *Herschaft I*. Specifically, Plaintiff claims that the Board has violated his First Amendment rights by requiring the disclosure of the names and addresses of his contributors, and that the Board has forced Plaintiff to "violate worshippers['] Freedom of Religion ... in order to get the matching funds." (Compl. at 3-4.) Judge Amon thoroughly addressed and rejected those claims in *Herschaft I*, 127 F. Supp. 2d at 167-71, and the Second Circuit affirmed the dismissal "[f]or substantially the reasons set forth by the District Court." 10 F. App'x at 22. Because all four requirements of *res judicata* are satisfied, Plaintiff is precluded from relitigating his constitutional challenges to New York City's campaign disclosure requirements in this action.

**\*3** Plaintiff asserts that his claims are not barred by *res judicata* because he "wasn't able to litigate the exclusion of lotteries provision which was enacted after that case was litigated." (Pl.'s Mem. at 2.) Plaintiff appears to be referring to Section 5-05(b) of Title 52 of the Rules of the City of New York, which provides that donations are not eligible for matching public funds when they take "the form of the purchase price paid for an item with significant intrinsic and enduring value, or [are] paid for or otherwise induced by a chance to participate in a raffle, lottery, or a similar drawing for valuable prizes." N.Y.C. Rules, Tit. 52, § 5-05(b). The complaint in this action, however, raises no claims or arguments regarding Section 5-05(b). (*See* Compl. at 3-4.) In addition, Plaintiff argues that his claims should not be precluded because he is proceeding *pro se*. (Pl.'s Mem. at 2.) "*Pro se* litigants," however, "are equally bound by the doctrine of *res judicata*." *Jones-Khan v. Westbury Bd. of*

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 90 of 93

Herschaft v. New York City Campaign Finance Board, Not Reported in Fed. Supp. (2022)

2022 WL 19367051

*Educ.*, 2022 WL 280646, at *6 (E.D.N.Y. Jan. 31, 2022). Accordingly, the court concludes that Plaintiff's claims are barred by the final judgment in *Herschaft I*.

Even if Plaintiff's claims were not precluded, dismissal of this action would still be warranted. Courts subject campaign finance disclosure requirements to "exacting scrutiny," which requires a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (quotations and citations omitted). "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest." *Ams. for Prosperity v. Bonta*, 141 S. Ct. 2373, 2383 (2021).

As Judge Amon recognized, requiring candidates to disclose the names and addresses of their campaign contributors to the Board serves important governmental interests. "Most importantly, the challenged disclosure provisions are necessary to ensure compliance with the City's campaign finance laws, in particular its rules regarding public funding, and allow the Campaign Finance Board to determine whether a candidate is eligible for matching funds and in precisely what amount." *Herschaft I*, 127 F. Supp. 2d at 168. In addition, "the City's disclosure provisions also serve the interest recognized in [*Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam)] of providing the electorate with information about the candidates for public office and their constituencies, in particular 'where political campaign money comes from and how it is spent by the candidate.' " *Herschaft I*, 127 F. Supp. 2d at 168 (quoting *Buckley*, 424 U.S. at 66-67). In the years since Judge Amon's decision, the Supreme Court has continued to uphold similar disclosure requirements in the context of political campaigns, even as it has struck down other campaign finance regulations on First Amendment grounds. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 366-71 (2010); *John Doe No. 1*, 561 U.S. at 202; *McConnell v. FEC*, 540 U.S. 93, 194-202, 230-31 (2003). Indeed, it is hard to imagine a more basic and legitimate campaign finance regulation than one requiring a candidate to disclose the names and addresses of his contributors.

New York City's disclosure requirements for optional public financing are also narrowly tailored to the government's interests. Plaintiff challenges the strength of the government's interests as applied to small-dollar donations. (Compl. at 4; *see* Pl.'s Mem. at 4.) As Judge Amon recognized, however,

the size of the contribution does not detract from the strength of the government's interests "in ascertaining the propriety of giving public funds to a candidate" and "in providing information to the electorate about the candidates" and the source of their funding. *Herschaft I*, 127 F. Supp. 2d at 168-69. In addition, the law does not require Plaintiff to separately itemize contributions aggregating less than ninety-nine dollars. N.Y.C. Admin. Code § 3-703(6)(b)(ii). Although Plaintiff must itemize such contributions if he wants to receive optional public funding, *see id.*, "[c]andidates who choose not to participate, and their contributors, are not prevented from freely expressing their political speech and associations; the legislature has merely decided not to amplify their contributions with tax dollars." *Ognibene v. Parkes*, 671 F.3d 174, 193 (2d Cir. 2011). In short, subsequent decisions from the Supreme Court and the Second Circuit have only reinforced Judge Amon's conclusion that the requirements challenged by Plaintiff "pass constitutional muster." *Herschaft I*, 127 F. Supp. 2d at 168.

**\*4** The court also fully agrees with Judge Amon that Plaintiff's free exercise claim is meritless. (*See* Compl. at 4 (claiming that Plaintiff must "violate worshippers['] Freedom of Religion Exercise [sic] in order to get the matching funds").) To the extent Plaintiff claims that New York City's disclosure requirements violate the free exercise rights of his prospective contributors, he lacks Article III standing. *See, e.g.*, *Everytown for Gun Safety Action Fund, Inc. v. Defcad, Inc.*, 2021 WL 5232581, at *2 (S.D.N.Y. Nov. 9, 2021) (finding that party lacked standing to "assert[ ] the First Amendment rights of others"); *see also, e.g.*, *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 71 (2d Cir. 2001) ("To have standing to pursue a claimed violation of the Free Exercise Clause, a plaintiff must allege that [his] own particular religious freedoms are infringed." (quotations and citation omitted)). To the extent Plaintiff claims that his own free exercise rights are somehow violated by having to collect his contributors' names and addresses in order to receive matching public funds, the court finds that New York City's disclosure regime "is a neutral law of general applicability that does not burden, even incidentally, a particular religious practice." *Herschaft I*, 127 F. Supp. 2d at 170. Accordingly, the court concludes that dismissal is warranted even if Plaintiff's claims were not barred by *res judicata*.

In light of Plaintiff's *pro se* status, the court has considered whether to grant Plaintiff leave to amend. "Although district judges should, as a general matter, liberally permit *pro se* litigants to amend their pleadings, leave to amend need

2022 WL 19367051

not be granted when amendment would be futile." *Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). Here, the court concludes that amendment would be futile. Because Plaintiff's claims are barred by *res judicata*, "the problem with his complaint 'is substantive; better pleading will not cure it.' " *MacKinnon*, 580 F. App'x at 46 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). In addition, further pleading would not change the court's conclusion that Plaintiff's First Amendment rights are not violated by New York City's requirement that he disclose the names and addresses of his contributors in order to obtain optional matching public funds. *See, e.g.*, *In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 754 (2d Cir. 2020) (affirming denial of leave to amend where "nothing in the record suggest[ed] that another complaint could remedy the legal deficiencies set forth above"). Accordingly, the court denies Plaintiff leave to amend.

## CONCLUSION

For the reasons set forth above, this action is DISMISSED based on *res judicata* and failure to state a claim. The dismissal is WITH PREJUDICE, except to the extent that Plaintiff seeks to assert the constitutional rights of other individuals, whom he is not authorized to represent. Plaintiff's [3] motion for injunctive relief and his [6] motion for sanctions are DENIED AS MOOT. The court certifies that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 19367051

---

**End of Document**© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 92 of 93

Herschaft v. New York City Campaign Finance Board, Not Reported in Fed. Rptr. (2023)

2023 WL 2770146

2023 WL 2770146
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Allen S. HERSCHAFT, Plaintiff-Appellant,

v.

NEW YORK CITY CAMPAIGN
FINANCE BOARD, Defendant-Appellee.

No. 22-2822-cv
|
April 4, 2023

Appeal from a judgment entered in the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court is AFFIRMED.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Allen S. Herschaft, pro se, Brooklyn, NY

FOR DEFENDANT-APPELLEE: No appearance

PRESENT: ROBERT D. SACK, RAYMOND J. LOHIER, JR., SUSAN L. CARNEY, Circuit Judges.

## SUMMARY ORDER

**\*1** Allen S. Herschaft, proceeding pro se, appeals from a September 29, 2022 judgment of the United States District Court for the Eastern District of New York (Matsumoto, J.) dismissing his First and Fourteenth Amendment freedom of association, freedom of speech, and free exercise claims against the New York City Campaign Finance Board as barred by res judicata, and denying leave to amend his complaint. Herschaft principally claims that the Board's reporting requirements conflict with his Orthodox Jewish beliefs and those of his potential campaign contributors. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

We begin with the District Court's dismissal of Herschaft's claims, which we review de novo. See Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018). Although we "construe a pro se complaint liberally to raise the strongest arguments it suggests," it must nevertheless "state a plausible claim for relief." Darby v. Greenman, 14 F.4th 124, 127–28 (2d Cir. 2021) (quotation marks omitted).

The District Court correctly concluded that Herschaft's claims are barred by res judicata. "The doctrine of res judicata provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Cho v. Blackberry Ltd., 991 F.3d 155, 168 (2d Cir. 2021) (quotation marks omitted). Res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." Id. (quotation marks omitted). Herschaft does not dispute that his prior lawsuit satisfies these elements. See Herschaft v. N.Y.C. Campaign Fin. Bd. ("Herschaft I"), 127 F. Supp. 2d 164 (E.D.N.Y. 2000), aff'd, 10 F. App'x 21 (2d Cir. 2001), cert. denied, 534 U.S. 888 (2001). Instead, he argues that his current complaint includes new sources of information that support his claim that the Board's reporting rules violate his First Amendment rights by requiring him to speak during prayer services and to request and provide identifying information about his campaign contributors in order to qualify for fund matching—all contrary to his faith. We are not persuaded by this argument. "[R]es judicata applies to issues that were not raised in the prior action, if they could have been raised in that action," and it "applies even where new claims are based on newly discovered evidence." Cho, 991 F.3d at 168 (quotation marks omitted). We see no reason why Herschaft could not have pointed to his new sources and claims in Herschaft I. Accordingly, the District Court did not err in dismissing his claims.

Next, we review the District Court's denial of leave to amend the complaint for abuse of discretion. See Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim." In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021) (quotation marks omitted). "To determine whether granting leave to amend would be futile, we consider the proposed amendments and the original complaint." Id.

Case 5:25-cv-00935-AMN-TWD    Document 8    Filed 10/14/25    Page 93 of 93

Herschaft v. New York City Campaign Finance Board, Not Reported in Fed. Rptr. (2023)

2023 WL 2770146

**\*2** Herschaft takes issue with N.Y.C. Rules, Tit. 52, § 5-05(b), which went into effect after Herschaft I was decided, and which provides that funds obtained through lotteries are not eligible for fund matching. But he does not specify which of his rights (if any) section 5-05(b) violates. Indeed, as the District Court recognized, he "raises no claims or arguments regarding Section 5-05(b)." App'x 14. Under these circumstances, the District Court did not abuse its discretion in denying leave to amend. [1]

[1]   We do not consider whether the District Court abused its discretion in denying leave to amend to add a Religious Freedom Restoration Act claim or an equal protection claim relating to mental illness because Herschaft did not raise those claims in his appellate brief. See Green v. Dep't of Educ., 16 F.4th 1070, 1074 (2d Cir. 2021). We also do not consider whether the District Court abused its discretion in denying leave to amend to add

a defamation claim because Herschaft did not raise the claim in the District Court. See Otal Invs. Ltd. v. M/V Clary, 673 F.3d 108, 120 (2d Cir. 2012). And we do not consider whether the District Court abused its discretion in denying leave to amend to add procedural due process claims regarding a missing memorandum in Herschaft I and the district court's decision not to hold a hearing in Herschaft v. N.Y.C. Police Dep't, No. 18-cv-4770, 2018 WL 4861388 (E.D.N.Y. Sept. 28, 2018), because questions concerning the adequacy of separate proceedings are not properly before this Court.

We have considered Herschaft's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the District Court is AFFIRMED.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 2770146

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                2